# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LINDSAY HELD, on behalf of himself and all others similarly situated, | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : <br> : |
| AAA SOUTHERN NEW ENGLAND, | : <br> : |
| Defendant. | : <br> : |

Civil Action No. 3:11-cv-0105-SRU

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION

**MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.**

1311 Mamaroneck Avenue
White Plains, New York 10605
(914) 517-5000

*Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF FACTS .....................................................................5

    AAA SNE's Backdating Policy .........................................................5

    AAA SNE's Failure To Disclose Its Backdating Policy ......................11

    AAA SNE Easily Could  Have Disclosed Its Backdating Policy
    In Clear And Unmistakable Terms ..................................................13

    Mr. Held's AAA SNE Membership ..................................................15

ARGUMENT ....................................................................................16

    I.    LEGAL STANDARDS ..........................................................16

    II.    THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a) ........18

        A.    The Class Is So Numerous That Joinder Of
            All Class Members Is Impracticable ...............................18

        B.    Common Issues Of Law Or Fact Exist .............................19

        C.    Mr. Held's Claims Are Typical Of The Class ...................22

        D.    Mr. Held And MDPCE Will Fairly And Adequately
            Protect The Interests Of The Class .................................23

            1.    Mr. Held Is Qualified To Represent The Class............24

            2.    Mr. Held Has Retained Experienced And Skilled Counsel ......26

        E.    The Class Is Ascertainable..............................................28

    III.    THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED ..............28

        A.    Common Issues Of Law Or Fact Predominate Over Individual Issues .............28

            1.    Breach Of Contract ...............................................29

**TABLE OF CONTENTS**
**(Cont'd)**

**Page**

    2.    CUTPA Violation .......................................................................32

    3.    Unjust Enrichment ....................................................................36

B.    A Class Is The Only Method For The Fair And
Efficient Adjudication Of The Controversy .......................................37

CONCLUSION ...............................................................................................40

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997)..................................................................................... 16, 29

*Argento v. Wal-Mart Stores, Inc.,*
   66 A.D.3d 930, 888 N.Y.S.2d 117 (App. Div. 2009) ..................................... 4, 21, 27

*Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.,*
   287 Conn. 208, 947 A.2d 320 (2008) ........................................................ 33, 34

*Associated Investment Co. Limited P'ship v. Williams Assoc. IV,*
   230 Conn. 148 (1994) ............................................................................... 33

*Austen v. Catterton Partners V, LP,*
   3:09CV1257 MRK, 2011 WL 1374035 (D. Conn. Apr. 6, 2011) ........................... 16

*Brown v. Strum,*
   350 F. Supp. 2d 346 (D. Conn. 2004).......................................................... 31, 34

*Chem-Tek, Inc. v. Gen. Motors Corp.,*
   816 F. Supp. 123 (D. Conn. 1993) .............................................................. 30

*Collins v. Olin Corp.,*
   248 F.R.D. 95 (D. Conn. 2008).................................................................. 30

*Cortigiano v. Oceanview Manor Home for Adults,*
   227 F.R.D. 194 (E.D.N.Y. 2005) ............................................................... 17

*Cross v. 21st Century Holding Co.,*
   No. 00 Civ. 4333(MBM), 2004 WL 307306 (S.D.N.Y. Feb. 18, 2004).................. 18

*Cruz v. Hook-Superx, L.L.C.,*
   No. 09 Civ. 7717(PAC), 2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010)................... 29

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006)...................................................................... 24

*Deposit Guar. Nat'l Bank v. Roper,*
   445 U.S. 326 (1980)................................................................................ 16

*Dupler v. Costco Wholesale Corp.,*
   249 F.R.D. 29 (E.D.N.Y. 2008) ........................................................ *passim*

## TABLE OF AUTHORITIES
### (Cont'd)

**Cases**                                                                    **Page**

*Dura-Bilt Corp. v. Chase Manhattan Corp.,*
   89 F.R.D. 87 (S.D.N.Y. 1981) ............................................................... 20

*Engel v. Scully & Scully, Inc.,*
   --- F.R.D. ----, 10 CIV. 3167 PKC, 2011 WL 4091468
   (S.D.N.Y. Sept. 14, 2011) ................................................ 19, 27, 28

*Erica P. John Fund, Inc. v. Halliburton Co.,*
   131 S. Ct. 2179 (2011) ........................................................................ 18

*Espinoza v. 953 Associates LLC,*
   *10 CIV. 5517 SAS,* 2011 WL 5574895 (S.D.N.Y. Nov. 16, 2011) ............................. 17

*Federal Paper Board Co., Inc. v. Amata,*
   693 F. Supp. 1376 (D. Conn. 1988) ................................................... 33

*Flanagan v. Allstate Ins. Co.,*
   242 F.R.D. 421 (N.D. Ill. 2007) .................................................... 31-32

*FTC v. Sperry & Hutchinson Co.,*
   405 U.S. 233 (1972) ............................................................................ 34

*Garcia v. Crabtree Imports, Inc.,*
   No. 3:05-CV-1324 (WWE), 2006 WL 1646158 (D. Conn. June 14, 2006) ....................... 33

*Gulf Oil Co. v. Bernard,*
   452 U.S. 89 (1981) .............................................................................. 16

*ICG America, Inc. v. Wine of the Month Club, Inc.,*
   No. 3:09-cv-133 (PCD), 2009 WL 2843261 (D. Conn. Aug. 28, 2009) ....................... 33

*In re Am. Exp. Merchants' Litig.,*
   06-1871-CV, 2012 WL 284518 (2d Cir. Feb. 1, 2012) ......................................... 16

*In re Blech Sec. Litig.,*
   187 F.R.D. 97 (S.D.N.Y. 1999) ......................................................... 18

*In re Cardizem CD Antitrust Litig.,*
   200 F.R.D. 326 (E.D. Mich. 2001) ..................................................... 26

## TABLE OF AUTHORITIES
### (Cont'd)

**Cases**                                                                                                    **Page**

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.,*
   256 F.R.D. 82 (D. Conn. 2009)................................................................. 16

*In re Med. Capital Sec. Litig., SAML 10-2145 DOC,*
   2011 WL 5067208 (C.D. Cal. July 26, 2011) ....................................... 31

*In re MTBE Prod. Liab. Litig.,*
   209 F.R.D. 323 (S.D.N.Y. 2002) ......................................................... 28

*In re Nassau County Strip Search Cases,*
   461 F.3d 219 (2d Cir. 2006)........................................................... 16, 38

*In re Oxford Health Plans, Inc.,*
   191 F.R.D. 369 (S.D.N.Y. 2000) ......................................................... 20

*In re PE Corp. Sec. Litig.,*
   228 F.R.D. 102 (D. Conn. 2005)......................................................... 20

*In re Pharm. Indus. Average Wholesale Price Litig.,*
   252 F.R.D. 83 (D. Mass. 2008)........................................................... 34

*In re Sadia, S.A. Sec. Litig.,*
   269 F.R.D. 298 (S.D.N.Y. 2010) ......................................................... 20

*In re Terazosin Hydrochloride, Antitrust Litig.,*
   220 F.R.D. 672 (S.D. Fla. 2004)......................................................... 37

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
   267 F.R.D. 583 (N.D. Cal. 2010)......................................................... 26

*In re U.S. Foodservice Inc. Pricing Litig.,*
   3:07-MD-1894 CFD, 2011 WL 6013551 (D. Conn. Nov. 29, 2011) ................................ 20, 39

*In re Universal Serv. Fund Tel. Billing Practices Litig.,*
   219 F.R.D. 661 (D. Kan. 2004)........................................................... 32

*In re Visa Check/MasterMoney Antitrust Litig.,*
   280 F.3d 124 (2d Cir. 2001).............................................................. 18

*Independence Ins. Serv. Corp. v. Hartford Life Ins. Co.,*
   No. 3:04-CV-1512 (JCH), 2006 WL 860676 (D. Conn. Mar. 31, 2006) ................................. 33

## **TABLE OF AUTHORITIES**
### **(Cont'd)**

**Cases**                                                                                    **Page**

*Initial Public Offering Sec. Litig.,,*
   471 F.3d 24 (2d Cir. 2006)........................................................................ 18

*Jermyn v. Best Buy Stores, L.P.,*
256 F.R.D. 418, (S.D.N.Y. 2009) ........................................................... 29, 30, 35, 36

*Kleiner v. First Nat'l Bank of Atlanta,*
   97 F.R.D. 683 (N.D. Ga. 1983)................................................................ 32

*Leider v. Ralfe,*
   01 Civ. 3137(HB), 2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003) ......................... 17

*Lewis v. Goldsmith,*
   95 F.R.D. 15 (D.N.J. 1982).................................................................... 26

*Macarz v. Transworld Systems, Inc.,*
   193 F.R.D. 46 (D. Conn. 2000)........................................................... *passim*

*Marisol A. v. Giuliani,*
   126 F.3d 372 (2d Cir. 1997)................................................................ 17, 24

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,*
   552 F.3d 47 (1st Cir. 2009) ................................................................. 36

*Matyasovszky v. Housing Auth. of the City of Bridgeport,*
   226 F.R.D. 35 (D. Conn. 2005)............................................................. 19

*Menagerie Productions v. Citysearch,*
   CV 08-4263 CASFMO, 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) ................... 31

*Menkes v. Stolt-Nielsen S.A.,*
   270 F.R.D. 80 (D. Conn. 2010)........................................................ 21, 23, 27

*Michelson v. Digital Financial Services,*
   167 F.3d 715 (1st Cir. 1999)................................................................ 30

*Moore v. PaineWebber, Inc.,*
   306 F.3d 1247 (2d Cir. 2002)............................................................... 28

## <u>TABLE OF AUTHORITIES</u>
### (Cont'd)

<u>Cases</u>                                                                     <u>Page</u>

*Narragansett Elec. Co. v. Carbone,*
   898 A.2d 87 (R.I. 2006) ........................................................................... 36

*O'Hara v. State,*
   218 Conn. 628, 590 A.2d 948 (1991) ...................................................... 30

*Petrarca v. Fid. & Cas. Ins. Co.,*
   884 A.2d 406 (R.I. 2005) ......................................................................... 30

*Petrolito v. Arrow Fin. Servcs., LLC,*
   221 F.R.D. 303 (D. Conn. 2004) ......................................................... 18, 34

*PMP Assocs., Inc. v. Globe Newspaper Co.,*
   366 Mass. 593, 321 N.E.2d 915 (1975) ................................................... 33

*Richards v. FleetBoston Fin. Corp.,*
   235 F.R.D. 165 (D. Conn. 2006) .............................................................. 17

*Rivera v. Veterans Mem'l Med. Ctr.,*
   262 Conn. 730, 818 A.2d 731 (2003) ...................................................... 17

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993) ............................................................... 18, 22

*Robinson v. Metro-North Commuter R.R. Co.,*
   267 F.3d 147 (2d Cir. 2001) ............................................................... 22, 24

*Seifman v. Stauffer Chem Corp.,*
   1986 WL 9803 (D. Conn. 1986) .............................................................. 37

*Shell Oil Co. v. Wentworth,*
   822 F. Supp. 878 (D. Conn. 1993) ...................................................... 34, 35

*Sportsmen's Boating Corp. v. Hensley,*
   192 Conn. 747 (1984) .............................................................................. 32

*Steinberg v. Nationwide Mut. Ins. Co.,*
   224 F.R.D. 67, 75 (E.D.N.Y. 2004) .................................................... 30, 31

*Tatum v. Oberg,*
   650 F. Supp. 2d 185 (D. Conn. 2009) ...................................................... 33

# TABLE OF AUTHORITIES
## (Cont'd)

**Cases**                                                                                          **Page**

*Town of New Hartford v. Connecticut Res. Recovery Auth.*,
    291 Conn. 433, 970 A.2d 592, (2009) ........................................................................ 35

*United States ex. rel. Polied Environmental Services, Inc. v. Incor Group, Inc.,*
    238 F. Supp. 2d 456 (D. Conn. 2002) ...................................................................... 33

*Vista Healthplan Inc. v. Warner Holdings Co. III, Ltd.,*
    246 F.R.D. 349 ........................................................................................................ 36

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ............................................................................................ 19

*Waters v. EarthLink, Inc.,*
    CIV.A. 2001-00628, 2006 WL 1549685 (Mass. Super. May 10, 2006) ................... 30

*Wu v. Pearson Educ., Inc.,*
    09 CIV. 6557 RJH, 2011 WL 4526078 (S.D.N.Y. Sept. 30, 2011) ......................... 31


**Statutes and Rules**

15 U.S.C. § 45(a)(1) ....................................................................................................... 34

Conn. Gen. Stat. § 42-110b ........................................................................................... 32

M.G.L.A. 93A §9 *et seq.* ................................................................................................ 21

Mass. Gen. Laws 93A § 2(a) ......................................................................................... 33

R.I. Gen. Laws § 6-13.1-2 ................................................................................. 21, 33, 34

R.I. Gen. Laws §6-13.1-1 *et seq.* ................................................................................... 21

Fed. R. Civ. P. 23 .................................................................................................. *passim*

Plaintiff Lindsay Held ("Plaintiff" or "Mr. Held"), on behalf of himself and all others similarly situated, submits this Memorandum of Law in Support of his Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23, and to designate Plaintiff as class representative and to appoint Meiselman, Denlea, Packman, Carton & Eberz P.C. ("MDPCE") as class counsel in this action against the Defendant AAA Southern New England ("AAA SNE" or "Defendant").

## PRELIMINARY STATEMENT

The AAA Southern New England is one of the largest regional affiliates of AAA, formerly the American Automobile Association. Every year, approximately 3 million motorists pay AAA SNE hundreds of millions of dollars in purportedly annual membership fees. AAA SNE promotes and markets its membership as a full year membership. AAA SNE members pay an annual fee for their memberships and expect to have the right to receive a full year (365 days) of membership benefits in return. That is what AAA SNE promises. That is what AAA SNE members pay for and reasonably expect to receive. But that is not what AAA SNE delivers.

AAA SNE deprives hundreds of thousands of consumers each year of the full benefit of their bargain. The victims of this predatory practice are repeat patrons who pay to renew their AAA SNE memberships after their prior membership terms have expired. These consumers pay AAA SNE's full annual membership fee for 365 days of membership, but they do not receive a full year of membership in return. Instead, AAA SNE backdates the renewal term to one year from the most recent expiration date.

For example, if a membership expires on January 1, and is renewed five weeks later on February 7, as was the case with Mr. Held, AAA SNE unilaterally deems the renewal term to

expire on the following January 1.  As a result, in this example, the member pays a full annual

fee but receives only 47 weeks of membership in return.

AAA SNE's practice of backdating memberships that are renewed after a prior term's

expiration date is not the result of any oversight or mistake by AAA SNE.  It is a deliberate

corporate policy that has been in place since at least as far back as 1999, but which AAA SNE

has never disclosed to its members.  As a result of its backdating policy, AAA SNE has short-

changed its members millions of dollars by curtailing their membership periods when they renew

late.

Plaintiff Lindsay Held, an AAA SNE member from 2004 to 2011, had his AAA SNE

renewal backdated in precisely this manner.  He has brought this action on behalf of a proposed

class of similarly situated AAA SNE members who have paid a full annual fee to renew their

memberships but who have received less than a full year of membership in return.

Plaintiff's Complaint (the "Complaint") states claims for (1) breach of contract; (2)

violation of Connecticut's Unfair Trade Practices Act ("CUTPA") C.G.C. § 42-110b, *et seq.* and

the substantially similar laws of Massachusetts and Rhode Island; and (3) unjust enrichment.

These claims are not based on any specific misrepresentations to Mr. Held, but rather, on AAA

SNE's failure to disclose its backdating policy to its membership as a whole.  The deceptive

practice is one of omission.  As such, the Complaint raises numerous legal and factual issues that

can readily be resolved on a class-wide basis and that predominate over any individual issues.

The evidence in support of Mr. Held's claims is overwhelming.  The terms and

conditions of AAA SNE membership do not provide for the backdating of renewal memberships.

Therefore, backdating is a breach of the standard membership contract.  Moreover, AAA SNE

has never disclosed its backdating policy in its Member Handbook, renewal notices, or any other

document that it provides to its members.  Therefore, the backdating of memberships is a deceptive practice.

But the Court need not decide the ultimate merits of the case in order to certify the class. On this motion, the crucial point is that the legal and factual issues relating to membership backdating are the same for all class members.  AAA SNE concedes that backdating is its generally applicable corporate policy.  Indeed, by definition, every class member had his or her membership backdated at least once.[1]

Claims premised on standard-form consumer contracts and standardized "disclosure" documents are ideally suited for class certification, as the courts have recognized in two recent cases involving identical membership backdating policies such as the one at issue here.  The leading decision granting class certification in connection with the backdating of annual renewal memberships is a case decided by the Honorable Joseph F. Bianco of the United States District Court for the Eastern District of New York.  The class consisted of Costco members who purchased a new annual term of membership after their prior memberships expired and who received less than a full year of membership in return.  *See Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29 (E.D.N.Y. 2008).  In granting class certification, Judge Bianco held:

> [T]he Proposed Class consists of thousands of potential class members, most of whom are likely to have suffered a small economic loss . . . .  Therefore, few individuals could even

---

[1] The Class, as defined in the Complaint, consists of "all persons who, at any time on or after January 19, 2005, purchased and paid for a new term of AAA SNE membership after their prior membership term expired, and whose new membership term was deemed by AAA SNE to have begun on or about the prior expiration date.  Excluded from the Class are AAA SNE; any parent, subsidiary, or affiliate of AAA SNE; any entity in which AAA SNE has or had a controlling interest, or which AAA SNE otherwise controls or controlled; and any officer, director, employee, predecessor, successor, or assignee of AAA SNE."  AAA SNE includes any predecessor or successor entities, including the Connecticut Motor Club which merged with AAA SNE on July 1, 2008.

> contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail, particularly when many of the putative plaintiffs have suffered economic loss of *de minimis value*.  Furthermore, a class action will save an enormous amount in litigation costs for all parties and allow them to more efficiently prosecute their claims and defenses.

*Id.* at 47 (internal citations, quotation marks and brackets omitted).  As counsel for AAA SNE admitted at the deposition of Mr. Held, "the underlying allegations in the . . . COSTCO Case are virtually identical to the allegations that you have asserted in your current case against Triple A." (Held p. 42, ln. 22-25).[2]

Similarly, in another virtually identical backdating case against Sam's Club, the Appellate Division of the New York Supreme Court certified a class of Sam's Club members who had their membership renewals backdated, holding that "the members share common questions of fact or law with regard to the defendant's alleged policy of backdating renewal memberships . . . ."  *Argento v. Wal-Mart Stores, Inc.,* 66 A.D.3d 930, 934, 888 N.Y.S.2d 117 (App. Div. 2009) (citing *Dupler*, 249 F.R.D. at 37-39).  As admitted by AAA SNE, its undisclosed backdating policy is identical to those in *Dupler* and *Argento*, and class certification is appropriate here for the same reasons set forth in the holdings in those two cases.

As demonstrated below, this action meets all of the legal requirements for class certification.  Without a class action, there would be no way to hold AAA SNE accountable and redress the losses suffered by hundreds of thousands of consumers.  Each class member's losses from an isolated incident of backdating are relatively modest and thus would not justify the time,

---

[2] References to "Berg Decl." refer to the Declaration of Robert J. Berg, dated February 15, 2012, filed herewith.  Excerpts of the deposition transcripts of Lindsay Held, Mary Wyatt, Stephen Manty, Thomas Terwilliger, Donna Fernandes, and John Martin are annexed to the Berg Declaration as Exhibits 1-6, respectively and are hereinafter cited by witness name and page number, *e.g.*, "(Held p. 42, ln. 22-25.)"  All other exhibits are cited by exhibit number, *e.g.*, "(Ex. 1.)"

expense and trouble of prosecuting an individual lawsuit.  Moreover, litigating hundreds of thousands of individual suits would swamp the courts and run the risk of potentially inconsistent outcomes.  The only practical and efficient way to litigate the claims of the multitude of AAA SNE class members who have been backdated is to certify this action as a class action, appoint Mr. Held as class representative and designate MDPCE as class counsel.

**STATEMENT OF FACTS**

**AAA SNE's Backdating Policy**

This action challenges AAA SNE's undisclosed policy and practice of backdating membership renewals that are purchased after the expiration of the prior membership term.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ For example, if a membership expires on January 15 and the member pays a full annual fee three months later, on April 15, the renewal term runs only for nine months, to the following January 15. *Id.*  As a result, the member pays the full annual fee but receives less than a full year of membership. ██████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████ AAA SNE's deposition testimony and document production leave no doubt that the backdating policy is a generally applicable corporate policy, which AAA SNE has enforced consistently against all class members throughout the relevant period.

Mary Wyatt, AAA SNE's Senior Vice President of Marketing and Publications, and the Defendant's Rule 30(b)(6) corporate designee, testified that AAA SNE's policy and practice is to deem all renewals purchased within 90 days after expiration as having begun on the expiration date.  The inevitable effect of this policy is that the renewing AAA SNE member in the Class receives less than a year of membership privileges in exchange for the payment of a full annual fee.  As Ms. Wyatt testified:

███    ████████████████████████████████
       █████████████████████████████████

███    ████████████████████████████

---

████████████████████████████████████████████
█████████████████████████████████████████████
███████████████████████████████████████





This testimony was corroborated by the testimony of four additional witnesses; AAA SNE's Chief Financial Officer Stephen Manty, former President of the Connecticut Division of AAA SNE Thomas Terwilliger, AAA SNE's Manager of Membership Call Centers Donna Fernandes, and AAA SNE's Director of Member Relations John Martin.  Discussing AAA SNE's backdating policy, these witnesses testified as follows:





9



Not only is the backdating "business rule" well established and applied equally to all AAA SNE members, the AAA SNE system is designed to ensure that there is no variance from its universal application. ████████████████████████████



no change to expiration date").

**AAA SNE's Failure To Disclose Its Backdating Policy**

Unfortunately for AAA SNE members, its policy of backdating renewal terms that are

purchased after expiration of the prior membership term is not set forth in AAA SNE's Member

Handbook, on its web site, or in any of its other communications to its membership or the public.

To the contrary, the only AAA SNE documents that set forth the policy are internal confidential

AAA SNE documents. ███████████ AAA SNE does not claim that it has ever provided

these documents to its members, prospective members or the public.  To the contrary, AAA SNE

witnesses have testified that their publicly disclosed documents <u>never</u> revealed their backdating policy to their members.



A review of AAA SNE's Member Handbook and Premier Handbook confirms that

Defendant failed to disclose its backdating policy. ████████████████████████

████████████████████████████████



█████████████████ For purposes of class certification, moreover, the crucial point is that

all members receive the same documents and information from AAA SNE.  As a result,

Plaintiff's claim that AAA SNE's failure to disclose its backdating policy violates the causes of

action set forth in the Complaint and, based on applicable holdings and class certification

standards, should be resolved on a class-wide basis.

**AAA SNE Easily Could Have Disclosed Its Backdating**
**Policy in Clear and Unmistakable Terms**

Unlike AAA SNE, many AAA affiliate clubs make appropriate disclosures relating to

their membership renewal policy, clearly informing their members that if they renew their

memberships after expiration, their 12-month renewal terms will run from the original expiration

date – not the subsequent date of purchase of the renewed membership.  For example, the AAA

New Jersey Automobile Club states in its membership handbook:

> Prior to the expiration date of your membership you will receive an
> invoice for dues for the subsequent twelve-month period.  Renewal
> membership dues are due prior to the membership expiration date.
> You are, however, granted a forty-five (45) day grace period
> during which you are entitled to all of the benefits of membership.
> **Dues payment made during that grace period renews your**
> **membership and keeps it in continuous effect for twelve**
> **months from the original membership expiration date.**

(Berg Decl. Ex. 12.) (emphasis added.)

The AAA Mid-Atlantic states in its "Member Guide" under the heading "**Important information about paying your membership dues**":

> When a membership is renewed within 59 days of the membership expiration, the original membership join date and expiration date are unchanged and the member's years of membership tenure continue to accrue.

(Berg Decl. Ex. 13.)

The AAA Northway states in its "Member Handbook" under the heading "**Membership Renewal Policy**":

> AAA Northway members are required to renew their membership on an annual basis. Memberships will expire on the last day of the month that a member originally joined AAA Northway ("expiration date"). **A member who has allowed their membership to lapse will maintain the original membership expiration date with AAA Northway by renewing within two (2) months following their expiration date.**

(Berg Decl. Ex. 14.) (emphasis added.)

The AAA Colorado states in its "Member Benefits Guide" under the heading "**Membership Renewals**":

> To ensure uninterrupted benefits, AAA recommends paying membership dues prior to your membership's expiration date. **Memberships renewed within 90 days after the expiration date will be charged Renewal rates and will be given an expiration date that is 12 months after the original expiration date.** Memberships renewed 90 days or more after the expiration date will be charged new member rates and given a new expiration date that is 12 months after the date of renewal.

(Berg Decl. Ex. 15.) (emphasis added.)

The AAA Auto Club South in its "Member Benefits Handbook" under the heading "**Member Renewal Policy**":

> **Renewal within 60 days of your expiration date extends Membership for 12 months from the original expiration date**. Renewal after that point extends Membership for 12 months from the renewal and a new expiration date will be assigned.

(Berg Decl. Ex. 16.) (emphasis added.)

AAA SNE never made any similar disclosure in its printed or online Member Handbook or any of its myriad membership communications. Thus, Plaintiff's claim that AAA SNE failed to disclose its policy can and, under applicable class certification standards enunciated by leading cases, should be adjudicated on a class-wide basis.

## Mr. Held's AAA SNE Membership

Lindsay Held was an AAA SNE member in good standing until January 1, 2011. His AAA SNE membership was designated as membership number *****7000. Mr. Held first purchased his membership in or about 2004, and he renewed it periodically, until he let it permanently expire in January 2011. (Held pp. 73, 76, 81-82.)

On January 1, 2010, Mr. Held's AAA SNE then-current membership expired. On or about February 7, 2010, Mr. Held paid AAA SNE the full annual fee for another year of AAA SNE membership privileges and services. (Held p. 153.) Mr. Held reasonably expected that his membership, and that of his wife who was an associate member on his account, would remain active for a full 12 months following the date of his renewal. (Held pp. 163-66.) Unbeknownst to Mr. Held, however, instead of providing 12 full months of membership benefits and services commencing on the transaction date – February 7, 2010 – AAA SNE backdated Mr. Held's new period of membership to the prior expiration date so that his renewed membership expired on January 1, 2011. *Id.* As a result of AAA SNE's undisclosed backdating policy, Mr. Held was charged a full annual membership fee but received only 47 weeks of membership in return. *Id.*

The backdating of Mr. Held's membership renewal term in February 2010 resulted in the early termination of his membership year on January 1, 2011 instead of on February 7, 2011. Mr. Held's backdating by AAA SNE is entirely typical of how AAA SNE treated the Class pursuant to its consistently applied membership renewal policy throughout the relevant period.

## ARGUMENT

## I.      LEGAL STANDARDS

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *Austen v. Catterton Partners V, LP*, 3:09CV1257 MRK, 2011 WL 1374035, at **3-4 (D. Conn. Apr. 6, 2011).  Just this month, the Second Circuit reemphasized that "Supreme Court precedent recognizes that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages due to any single individual or entity are too small to justify bringing an individual action."  *In re Am. Exp. Merchants' Litig.*, 06-1871-CV, 2012 WL 284518 (2d Cir. Feb. 1, 2012).  Class actions allow plaintiffs to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost."  *Id.* (*citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980).  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  *Id.* (*citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).  Because class actions provide a single forum in which to litigate the same or similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources.  *See*, *e.g.*, *In re Nassau County Strip Search Cases*, 461 F.3d 219, 230 (2d Cir.

2006); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 104

(D. Conn. 2009).

Certifying this lawsuit as a class action will serve the purposes of Rule 23 while similarly

complying with the Rule's requirements.  Rule 23(a) requires four prerequisites to be satisfied

for class certification: (1) the class must be so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ.

P. 23; *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46, 49 (D. Conn. 2000) (Arterton, J.).

In addition, once these four prerequisites are established, a court will allow an action to

proceed as a class if the action falls within one or more of the categories outlined in Rule 23(b).

*Id.*  Mr. Held seeks certification pursuant to Rule 23(b)(3), which provides for class certification

when:

> the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting
> only individual members, and that a class action is superior to any
> other available methods for the fair and efficient adjudication of
> the controversy

Fed. R. Civ. P. 23(b)(3); *Macarz*, 193 F.R.D. at 54.

The Second Circuit has emphasized that Rule 23 should be "given liberal rather than

restrictive construction."  *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *Richards v.

FleetBoston Fin. Corp.*, 235 F.R.D. 165, 169 (D. Conn. 2006).  Further, "it seems beyond

peradventure that the Second Circuit's general preference is for granting rather than denying

class certification."  *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203

(E.D.N.Y. 2005) (*quoting Leider v. Ralfe*, 01 Civ. 3137(HB), 2003 WL 22339305, at *11

17

(S.D.N.Y. Oct. 10, 2003)); *Espinoza v. 953 Associates LLC*, 10 CIV. 5517 SAS, 2011 WL

5574895 (S.D.N.Y. Nov. 16, 2011) (same).  Moreover, "when a court is in doubt as to whether

or not to certify a class action, the court should err in favor of allowing the class to go forward."

*In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999); *Rivera v. Veterans Mem'l Med. Ctr.*,

262 Conn. 730, 743, 818 A.2d 731, 740 (2003).

　　　　In determining whether a class should be certified, the question is not whether plaintiff

will prevail on the merits, but whether, based on the Court's factual and legal determinations, the

requirements of Rule 23 have been established by a preponderance of the evidence.  *See Erica P.*

*John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011); *In re Visa*

*Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001).  While the Court must

resolve factual disputes relevant to each requirement, and must assess all relevant evidence, it

"should not assess any aspect of the merits unrelated to a Rule 23 requirement."  *In re Initial*

*Public Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

　　　　For the reasons set forth below, the requirements of Rule 23 are satisfied here, and the

motion for class certification should be granted.

## II.　　THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a)

### A.　　The Class Is So Numerous That Joinder<br>Of All Class Members Is Impracticable

　　　　As required for class certification by Rule 23(a)(1), the members of the proposed Class

are so numerous that joinder of all its members would be "impracticable."  Impracticable does

not mean impossible, and "[p]laintiffs are not obligated to prove the exact class size to satisfy

numerosity."  *Cross v. 21st Century Holding Co.*, No. 00 Civ. 4333(MBM), 2004 WL 307306, at

*1 (S.D.N.Y. Feb. 18, 2004) (*citing Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).  It

should be beyond dispute that the Class here is so numerous that joinder of all class members is

impracticable.  Indeed, numerosity has been presumed at a level as low as 40 class members.

*See, e.g., Petrolito v. Arrow Fin. Servcs., LLC*, 221 F.R.D. 303, 309 (D. Conn. 2004) ("Generally

courts will find a class sufficiently numerous when it comprises 40 or more members").

      This Class has hundreds of thousands of members.  ████████████████

████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████

████████████████████████████████████

A class this size is plainly numerous enough to make joinder of all class members impracticable.

    **B.**    **Common Issues of Law or Fact Exist**

      As Rule 23(a)(2) requires, the claims of the members of the proposed Class involve

common questions of law and fact.  To establish commonality, class members must have

"suffered the same injury," and "[t]heir claims must depend upon a common contention."  *Wal-*

*Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (internal quotation and citation

omitted).  Class members' "common contention . . . must be of such a nature that it is capable of

classwide resolution—which means that determination of its truth or falsity will resolve an issue

that is central to the validity of each of the claims in one stroke."  *Id.*  Commonality simply

requires Plaintiff to identify some unifying thread among the members' claims that warrants

class treatment.  *Engel v. Scully & Scully, Inc.*, --- F.R.D. ----, 10 CIV. 3167 PKC, 2011 WL

4091468, at *9 (S.D.N.Y. Sept. 14, 2011).  The existence of just a single common legal or

factual question is sufficient to satisfy Rule 23(a)(2).  *Id.*; *see also Matyasovszky v. Housing Auth. of the City of Bridgeport*, 226 F.R.D. 35, 41 (D. Conn. 2005) (to establish commonality, "plaintiffs need not establish that all questions of law and fact among the putative class are identical"); *In re PE Corp. Sec. Litig.*, 228 F.R.D. 102, 108 (D. Conn. 2005) (test for commonality is "not demanding").[6]

Common questions of law or fact typically exist where, as here, the defendant is alleged to have committed a common scheme of misconduct.  *Dupler*, 249 F.R.D. at 37 (commonality exists where defendant "has a generally applicable policy and practice of backdating memberships that are 'renewed' after a lapse of time."); *In re U.S. Foodservice Inc. Pricing Litig.*, 3:07-MD-1894 CFD, 2011 WL 6013551 (D. Conn. Nov. 29, 2011).  Where, as here, "the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met."  *See In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 309 (S.D.N.Y. 2010) (finding that plaintiffs demonstrated commonality by alleging "a course of conduct" whereby defendants made material misrepresentations and omissions to the public).

The threshold commonality requirement is easily met here, as the Complaint alleges numerous questions of law and fact common to the class arising out of Defendant's common course of conduct, including:

> i.   Whether AAA SNE has a generally applicable policy and practice of backdating memberships that are renewed after a lapse of time following the expiration date;

---

[6] As one court observed, "individual issues will likely arise in this as in all class action cases. But to allow various secondary issues of plaintiffs' claim to preclude certification of a class would render the rule an impotent tool . . .."  *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981).

ii.      Whether AAA SNE's policy of backdating such renewal memberships was adequately disclosed to the Class;

iii.     Whether AAA SNE's Primary, Plus or Premier membership contracts authorize AAA SNE to backdate such renewal memberships;

iv.     Whether the documents provided to its members or which AAA SNE makes available on its website, including its Membership Handbook and terms and conditions of membership, or other publications, adequately disclose or explain the backdating policy;

v.      Whether AAA SNE's failure to grant 12 full months of membership in exchange for payment of a full annual fee is a breach of its membership contracts;

vi.     Whether AAA SNE has been unjustly enriched by its policy;

vii.    Whether AAA SNE's policy and practice of granting less than 12 months of membership in exchange for a full annual membership fee is deceptive, misleading, unfair, unlawful or improper;

viii.   Whether AAA SNE's actions alleged herein constitute violations of the Connecticut Unfair Trade Practices Act and the substantially similar unfair trade practices statutes of Massachusetts (M.G.L.A. 93A §9 *et seq.*) and Rhode Island (R.I. Gen. Laws §6-13.1-1 *et seq.*);

ix.     Whether members of the Class have sustained damages and, if so, the proper measure of damages to be applied to the Class members' claims; and

x.      Whether AAA SNE should be enjoined from continuing the unlawful and uniformly applied policy and practice of backdating memberships that are renewed after the expiration of the prior membership period.

These questions are common to all Class members because they involve the existence of a generally applicable corporate policy and the same purported disclosures (or lack thereof) made in generally applicable corporate communications with AAA SNE members. *See Dupler*, 249 F.R.D. at 37 (common questions of law or fact predominated because all members were bound by the same Costco membership contract and were subject to Costco's practice of

backdating memberships renewals); *Argento*, 888 N.Y.S.2d at 119 (class members shared

commons questions of fact or law with regard to Sam's Club's membership backdating policy).

Accordingly, it is abundantly clear that common issues outweigh any individual issues

with respect to each of Mr. Held's claims.

### C.      Mr. Held's Claims Are Typical Of The Class

As Rule 23(a)(3) requires, "the claims . . . of the representative parties are typical of the

claims . . . of the class."  Here, Plaintiff satisfies Rule 23(a)(3)'s typicality requirement because

his claims arise from the same course of events as the claims of other class members, and each

class member makes similar legal arguments to prove the defendant's liability.  *See, e.g.*, *Menkes*

*v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 92 (D. Conn. 2010).  Thus, "[w]hen it is alleged that the

same unlawful conduct was directed at or affected both the named plaintiff and the class sought

to be represented, the typicality requirement is usually met irrespective of minor variations in the

fact patterns underlying individual claims." *Id.* (*citing Robidoux v. Celani*, 987 F.2d 931, 937 (2d

Cir. 1993).

The Second Circuit has held:

> Typicality requires that the claims of the class representative be
> typical of those of the class, and is satisfied when each class
> member's claim arises from the same course of events, and each
> class member makes similar legal arguments to prove defendant's
> liability.

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001).

Plaintiff easily clears the typicality hurdle.  Mr. Held's claims and those of the Class

unquestionably share the same essential characteristics because their claims arise out of the same

undisclosed corporate backdating policy and the same standard-form consumer contract.  As

AAA SNE conceded in discovery, the manner in which it treated Mr. Held's late renewal (*i.e.*,

setting his membership expiration date to be one year from the prior term's expiration date, rather than the actual renewal date), is precisely how AAA SNE handled all Class member renewals made within 90 days after the prior term's expiration.  (Wyatt p. 66; Manty pp. 24-25; Terwilliger p. 11, ln. 9-14; Fernandes p. 28, ln. 3-12; Martin pp. 13-14.)

Here, as in *Dupler*, it is "important to emphasize that plaintiffs' theory of the case is not one of misrepresentations in the Privileges and Conditions of Membership; rather, it is one of omission and nondisclosure."  *Dupler*, 249 F.R.D. at 40.  Thus, here, as in *Dupler*, there is no need for an individualized inquiry into whether each plaintiff "actually reviewed the terms of the Privileges and Conditions of Membership" (*id.*) because Mr. Held's claims are based on AAA SNE's failure to disclose its backdating policy to its members.  It makes no difference whether a class member read AAA SNE's terms of membership or purported "disclosure" documents because none of these corporate communications disclosed the backdating policy.  *Id*; *see also Macarz*, 193 F.R.D. at 50-51 (typicality was satisfied where plaintiff received the same communication and suffered the same injury as that suffered by other members of the class and plaintiff's vocation as an attorney and his prior relationship with class counsel was irrelevant); *In re U.S. Food Service Inc.*, 2011 WL 6013551, at *5 (typicality satisfied where there was "no question that the plaintiffs' claims arise from the same set of events as other members of the class.").

The relief sought is the same relief that could be sought by each individual member of the Class.  All damages arise out of the same course of conduct engaged in by AAA SNE.  Thus the typicality requirement is easily satisfied.

### D.  Mr. Held and MDPCE Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4)'s adequacy requirement and Rule 23(g)'s class counsel requirement are met here because, (i) Plaintiff's interests are not antagonistic to those of other Class members, and (ii) proposed class counsel are qualified, experienced, and eminently able to conduct this litigation. *Menkes*, 270 F.R.D. at 92 (*citing Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Under well-established case law, this requires that the chosen class representatives will fairly and adequately represent the interests of the remaining class members and that class counsel is qualified, experienced, and generally able to conduct the litigation. *Macarz*, 193 F.R.D. at 51 (*citing Marisol*, 126 F.3d at 378).

### 1.  Mr. Held Is Qualified to Represent the Class

Mr. Held is more than capable of fairly and adequately representing the interests of the Class. The Second Circuit has held that "[t]wo factors generally inform whether class representatives satisfy the Rule 23(a)(4) requirement: '(1) absence of conflict and (2) assurance of vigorous prosecution.'" *Robinson*, 267 F.3d at 170 (*quoting* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3.22 (3d ed. 1992)). There is no conflict or divergence of interests between Mr. Held and the other Class members. All Class members, including Mr. Held, will derive similar benefits from the vigorous prosecution of this action, including damages for the membership periods lost to AAA SNE's backdating policy. By pressing his claim, Mr. Held will benefit all Class members.

Mr. Held also will actively promote the interests of the Class. As his deposition testimony indicates, he is familiar with the facts and legal theories underlying this action.

> Q:     What I'd like you to do is explain, in your own words, your complaint
>        against my client.
>
> A:     The complaint generally is that upon expiration of a 12 month
>        membership, a member who chooses to allow that membership to lapse
>        and subsequently purchases a new 12 month membership has that
>        membership backdated.  And what I mean by backdated would be that the
>        initiation of that new 12 month membership, rather than beginning on the
>        day that the customer/member chooses to purchase and begin that
>        membership, the Triple A is creating a date that is prior to that period.
>        Specifically the date of the old membership, and therefore giving that
>        member less than 12 months of membership.
>
> Q:     Do you believe you personally have been wronged by my client?
>
> A:     If you mean wronged, as in deprived of a 12 month membership that I
>        paid for and not given 12 months, yes.

(Held pp. 64-65.)  He reviewed the complaint and discussed it with counsel before it was filed

and is aware of his responsibilities as the Class representative.  (Held pp. 67-72.)  Mr. Held has

actively participated in the litigation and he was deposed in a day-long deposition by

Defendant's counsel.

Mr. Held is an attorney himself and understands the litigation process generally.

Moreover, Mr. Held brings an intangible benefit to the Class in this case:  his strong commitment

to redressing the wrongs committed by AAA SNE through its backdating policy.  At his

deposition, Mr. Held testified that he decided to bring this suit for "[t]he satisfaction of simply

righting a wrong.  I don't like consumer fraud.  I don't like corporations that take things from

individuals and I think class actions are a very effective remedy."  (Held p. 69.)  He explained:

> I have no expectation from a monetary compensation or award,
> other than what I would otherwise get as a member of the Class,
> otherwise what you other members of the Class would get.  My
> expectation is hopefully that, as a named plaintiff, I expect to be
> able to serve in that role, at least as good.  I don't want to sound
> like having an ego, but hopefully, as well as anyone could possibly
> represent the Class.

(Held p. 72.)

This strong belief in the rights of the Class and his commitment to zealously represent its interests surpasses the standard set by Rule 23(a)(4).  *Macarz*, 193 F.R.D. at 54.[7]

### 2.   Mr. Held Has Retained Experienced and Skilled Counsel

As for the adequacy of class counsel, a court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).  These requirements are similar to those analyzed by the Court pursuant to Fed. R. Civ. P. 23(a)(4).

---

[7] While Mr. Held is clearly qualified to represent the Class, based on the questions asked, and the tenor of, Mr. Held's deposition, Plaintiff anticipates that AAA SNE will present the makeweight argument that Mr. Held is an inadequate class representative based on his prior relationship with MDPCE.  However, "[a]s the courts routinely observe, a named plaintiff will not be disqualified simply because of a close or familial relationship with one of the attorneys representing the class."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 595 (N.D. Cal. 2010) (*citing In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 337 (E.D. Mich.2001); *see also Lewis v. Goldsmith*, 95 F.R.D. 15, 20 (D.N.J.1982) (observing that "it would seem a bit anomalous that an individual whose uncle has developed a reputation as a competent securities lawyer should be prohibited from turning to his uncle for assistance if he has a legitimate claim").  While Mr. Held was briefly employed at MDPCE well before this Complaint was filed, he has no financial interest in any attorneys' fees that may result from the case, and he will only receive his *pro rata* share of any recovery.  (Held pp. 69-72.)  Furthermore, while Mr. Held learned that some companies may have engaged in backdating during his tenure at MDPCE, he did not discover that AAA SNE engaged in this nefarious practice until December 2010, more than two years after his relationship with MDPCE had ended.  (Held pp. 32, 65.)  The Court in *Macarz* rejected similar attacks on plaintiff's adequacy based on plaintiff's business relationship with class counsel and plaintiff's profession as an attorney, holding that "Mr. Macarz appears to be a fair and adequate representative of the class, notwithstanding his profession and his business relationship with one of his attorneys in this case." *Macarz*, 193 F.R.D. at 54.  With respect to turning to MDPCE as his counsel, since he had a relationship with the firm and knew its excellent work product and abilities, why would he have turned anywhere else for representation? *Goldsmith*, 95 F.R.D. at 20.  To the extent that AAA SNE raises any of these issues in support of a threadbare argument challenging Plaintiff's typicality, the same analysis applies. *Macarz*, 193 F.R.D. at 51.

Plaintiff has retained MDPCE as class counsel.  MDPCE's attorneys are highly qualified and have extensive experience in complex litigation and consumer class actions, as described more fully in the accompanying Declaration of Jeffrey I. Carton.  The MDPCE attorneys who are primarily prosecuting this case graduated from Columbia and University of Chicago law schools and previously practiced at prominent New York firms such as Cravath, Swaine & Moore and Dewey & LeBoeuf and Skadden, Arps, Slate, Meagher & Flom.  (*See generally* Carton Decl.) They have successfully litigated numerous consumer class actions, including the Costco and Sam's Club membership backdating cases.  (*Id.*)  MDPCE and its attorneys understand the duties of lead counsel in consumer fraud class actions, and have proven adept at all phases of such litigation, from discovery and motion practice to trial and appeal or settlement.  (*Id.*)  MDPCE's qualifications were recognized by the courts in *Argento, Dupler*, and other cases in which the firm was named class counsel, and also by Sam's Club and Costco, which did not challenge the firm's competence or experience to represent the classes in those cases.

In sum, MDPCE is clearly competent, experienced, and "adequate" to serve as Class counsel.  That result holds true under the Rule 23(a)(4) analysis traditionally employed by the courts to evaluate class counsel, and also when that analysis is supplemented by consideration of the specific factors set out in Rule 23(g).  Fed. R. Civ. P. 23(a)(4); Fed. R. Civ. P. 23(g).  *Engel*, 2011 WL 4091468, at **11-12 (citing Fed. R. Civ. P. 23(a)(4) and Fed. R. Civ. P. 23(g), and appointing class counsel who invested and actively litigated the case and was experienced in nationwide class action.).  As demonstrated above, MDPCE clearly has the requisite experience and legal knowledge to prosecute this action.

E.      **The Class Is Ascertainable**

Apart from the four requirements set forth in the text of Rule 23(a), "a distinct implied requirement of ascertainability must be satisfied for certification of class actions pursuant to Rule 23. *Menkes*, 270 F.R.D. 80, 93 (D. Conn. 2010) (collecting cases). Ascertainability simply requires that "[c]lass membership must be readily identifiable such that a court can determine who is in the class and bound by its ruling." *Id.* "An identifiable class exists if its members can be ascertained by reference to objective criteria." *In re MTBE Prod. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002).

The Class here can be ascertained by retrieving data from AAA SNE's computerized membership database. AAA SNE maintains a comprehensive database that includes all members' transaction histories. ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

Moreover, the "contours of the class are clearly set forth [in the class definition] and class membership can easily be determined." *Engel*, 2011 WL 4091468, at *9; *Macarz*, 193 F.R.D. at 49, 57 (certifying class composed of all Connecticut residents who were sent a letter from defendant concerning their debt, holding such a class was ascertainable).

III.    **THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED**

A.      **Common Issues of Law or Fact Predominate
        Over Individual Issues**

Under Rule 23(b)(3), questions of law or fact common to the members of a class must

"predominate" over any questions affecting individual members.  The Second Circuit has stated that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also Cruz v. Hook-Superx, L.L.C.*, No. 09 Civ. 7717(PAC), 2010 WL 3069558, at *3 (S.D.N.Y. Aug. 5, 2010).  This test is readily met in cases alleging consumer fraud.  *Macarz*, 193 F.R.D. at 54 (citing *Amchem*, 521 U.S. at 625).

As demonstrated in Section II.B, *supra*, there are numerous common questions of law or fact in this case.  These overwhelm any issues affecting individual Class members, which consist of nothing more than the mechanical calculation of each member's damages, which does not preclude certification.  *Jermyn*, 256 F.R.D. at 429.

In the seminal decision in *Dupler*, which involved an undisclosed membership backdating policy indistinguishable from AAA SNE's policy, the court held that the common questions of law or fact predominated over any individual issues for two main reasons:

> (1) all putative class members are bound by the same Privileges and Conditions of Membership; and (2) Costco's practice of backdating memberships for all memberships renewed within six months of the expiration date is a common course of conduct that has been applied to all putative class members . . . .

*Dupler*, 249 F.R.D. at 37-38; *see also id*. at 42-47.   The same analysis applies and the same conclusion should be reached here where the same generally applicable corporate policy is at issue and the same common questions and facts are raised.

Throughout discovery, AAA SNE has made it clear that all memberships that are renewed within 90 days after expiration are deemed to run for one year from the original

expiration date.  (Wyatt p. 66; Manty pp. 24-25; Terwilliger p. 11, ln. 9-14; Fernandes p. 28, ln.

3-12; Martin pp. 13-14.)  Thus, because AAA SNE's backdating policy was applied universally

to all members, all factual and legal questions regarding the backdating policy and whether that

policy breached the uniform member contract or was disclosed, can be resolved on a class-wide

basis, as in *Dupler* and *Argento*.  By contrast, the only individual issue in this case involves the

calculation of each class member's damages.  It is well settled that the need to determine each

individual class member's damages does not justify denying a motion for class certification.

*Collins v. Olin Corp.*, 248 F.R.D. 95, 105 (D. Conn. 2008); *Jermyn v. Best Buy Stores, L.P.*, 256

F.R.D. 418, 429 (S.D.N.Y. 2009).

Each of the substantive claims set forth in the Complaint hinges on questions of law or

fact that are common to all Class members and as such common issues of law and fact

predominate, and the individual issues, if any, relate only to damages.

### 1.    Breach of Contract

Common issues predominate with respect to Plaintiff's breach of contract claim.  The

well-known elements of this claim are "1) the existence of a contract or agreement; 2) the

defendant's breach of the contract or agreement; and 3) damages resulting from the breach."

*Chem-Tek, Inc. v. Gen. Motors Corp.*, 816 F. Supp. 123, 131 (D. Conn. 1993) (*citing O'Hara v.

State*, 218 Conn. 628, 590 A.2d 948 (1991).[8]  Whether AAA SNE failed to perform according to

---

[8] The common laws of Massachusetts and Rhode Island on breach of contract are identical.
*Waters v. EarthLink, Inc.*, CIV.A. 2001-00628, 2006 WL 1549685 (Mass. Super. May 10, 2006)
("The essential elements of a cause of action for breach of contract are the existence of a valid
agreement, a breach of that agreement, and harm that results from that breach.") (*citing
Michelson v. Digital Financial Services*, 167 F.3d 715, 720 (1st Cir. 1999)); *Petrarca v. Fid. &
Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005) (same); *see also Steinberg v. Nationwide Mut. Ins.
Co.*, 224 F.R.D. 67, 75 (E.D.N.Y. 2004) (certifying class action alleging breach of contract
because contracts at issue were substantially similar and contract law is materially same
throughout United States).  Therefore, because the laws of Connecticut, Rhode Island, and

the contract's terms involves common questions as to all Class members.  For example, whether AAA SNE is required to provide a full year of membership privileges in exchange for the annual fees it collected from the Class members – or, conversely, whether the membership contract authorizes AAA SNE to backdate memberships so that its members receive less than a full year's membership (which it does not) – are common questions as to all Class members.

The contract here is a standard form contract that was drafted and issued unilaterally by AAA SNE.  The terms of AAA SNE's membership contract are set forth in the Membership Handbook mailed to each member upon his or her initiation and available online on AAA SNE's website.  (Wyatt p. 84.)  Because the terms and conditions of membership are uniform and apply to each and every Class member in the same manner, the claim that AAA SNE breached the membership contract is suitable for class certification.  As the court concluded in *Dupler*, an "overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment."  249 F.R.D. at 37-38 (collecting cases). *Accord Steinberg*, 224 F.R.D. at 74 ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such."); *Wu v. Pearson Educ., Inc.*, 09 CIV. 6557 RJH, 2011 WL 4526078 (S.D.N.Y. Sept. 30, 2011).[9]

---

Massachusetts are the same for breach of contact, the Court need not engage in an individualized conflict-of-laws analysis for each member of the proposed class to determine which state's law applies to his or her claim.  *Brown v. Strum*, 350 F. Supp. 2d 346, 348 (D. Conn. 2004) (absent "outcome determinative conflict between the applicable laws of the states with a potential interest in the case . . . there is no need to perform a choice of law analysis, and the law common to the jurisdictions should be applied.").

[9] *In re Med. Capital Sec. Litig.*, SAML 10-2145 DOC, 2011 WL 5067208 (C.D. Cal. July 26, 2011) (same) (collecting cases); *Menagerie Productions v. Citysearch*, CV 08-4263 CASFMO, 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) (same); *Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 428 (N.D. Ill. 2007) ("Claims arising out of form contracts are particularly appropriate for

In *Dupler*, the complaint alleged that Costco breached its membership contract by backdating renewal memberships without consumers' agreement.  The court held that common issues predominated over any individual issues on the breach of contract claim because "[a]ll members of the Proposed Class are bound by the same membership agreement . . . ."  249 F.R.D. at 46.  *Dupler* reaffirmed that "the alleged breach of standard-form contracts are particularly appropriate for class action."  *Id.* (citation omitted).  The court held:  "Common questions exist as to the meaning of terms contained within the Privileges and Conditions of Membership, and whether Costco breached those terms.  These two questions predominate over any individual questions that may present themselves with regard to the breach of contract class claim."  *Id.* Here, as in *Dupler*, determining whether AAA SNE's uniform membership contract and generally applicable corporate policies give rise to liability for breach of contract presents a classic case for class treatment.  *Dupler*, 249 F.R.D. at 37-38.

Whether a valid contract exists between AAA SNE and its members, whether the contract authorized the backdating policy and whether AAA SNE breached the contract are questions common to all Class members, which predominate over any individual questions.  *Id.*

### 2.    CUTPA Violation

CUTPA provides, in pertinent part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). Given its explicit designation as a "remedial" statute, CUTPA is intended to be "liberally construed in an effort to effectuate its public policy goals." *Sportsmen's Boating Corp. v. Hensley*, 192 Conn. 747, 756 (1984) (quoting Conn. Gen. Stat. § 42-110b(d)).

---

class action treatment."); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 667 (D. Kan. 2004); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D. Ga. 1983) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action").

It is intended that there will be "no . . . unfair or deceptive act or practice that cannot be reached under CUTPA." *Associated Investment Co. Limited P'ship v. Williams Assoc. IV*, 230 Conn. 148, 158 (1994) (citation and internal alterations omitted); *ICG America, Inc. v. Wine of the Month Club, Inc.*, No. 3:09-cv-133 (PCD), 2009 WL 2843261, at *12 (D. Conn. Aug. 28, 2009).

CUTPA is "broader in scope than traditional common law remedies for fraud." *Federal Paper Board Co., Inc. v. Amata*, 693 F. Supp. 1376, 1390 (D. Conn. 1988) (citations omitted). CUTPA requires neither reliance nor "proof of intent to deceive, to defraud or to mislead." *Associated Investment*, 230 Conn. at 158. Thus, fraud is not an element of CUTPA. *See, e.g., Tatum v. Oberg*, 650 F. Supp. 2d 185, 195 (D. Conn. 2009) (citation omitted).[10]

Plaintiff alleges that AAA SNE engaged in unlawful and unfair business practices by providing less than 12 months of membership to consumers who pay a full annual fee to purchase a term of AAA SNE membership after the expiration of their prior membership term. To prevail on a CUTPA claim, the Plaintiff must prove that "(1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce; General Statutes § 42-110b (a); and (2) each class member claiming entitlement to relief under CUTPA has suffered an ascertainable loss of money or property as a result of the defendant's acts or practices." General Statutes § 42-110g (a). *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 236, 947 A.2d 320, 340 (2008) (predominance requirement was satisfied with respect to defendant's

---

[10] *Garcia v. Crabtree Imports, Inc.*, No. 3:05-CV-1324 (WWE), 2006 WL 1646158, at *2 (D. Conn. June 14, 2006); *Independence Ins. Serv. Corp. v. Hartford Life Ins. Co.*, No. 3:04-CV-1512 (JCH), 2006 WL 860676, at *2 (D. Conn. Mar. 31, 2006) (citations omitted); *United States ex. rel. Polied Environmental Services, Inc. v. Incor Group, Inc.*, 238 F. Supp. 2d 456, 463 (D. Conn. 2002) (citations omitted).

liability under CUTPA).[11]

Significantly, this is an objective standard. A practice is deceptive "if it has a tendency or capacity to deceive." *Shell Oil Co. v. Wentworth*, 822 F. Supp. 878, 884-885 (D. Conn. 1993). "In evaluating tendency or capacity [to deceive], the court should look to the least rather than most sophisticated readers." *Shell Oil*, 822 F. Supp. at 885 (citation omitted).

In *Petrolito v. Arrow Fin. Services, LLC*, 221 F.R.D. 303 (D. Conn. 2004), the Court certified a CUTPA claim, where, as here, the action challenged a uniform corporate practice. *Id.* at 315; *Artie's Auto Body*, 287 Conn. at 236 (certifying CUTPA claims holding common questions predominated on issue of liability because almost all of the proposed evidence on whether insurer had engaged in unfair or deceptive acts consisted of data and information provided by insurer's own documents, records and employees and, therefore, would be common to the class.).

---

[11] Again, the laws of Massachusetts and Rhode Island are identical. Under the Massachusetts Consumer Protection Act "unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . declared unlawful." Mass. Gen. Laws 93A § 2(a) (2008). The court is "guided by the interpretations given by the Federal Trade Commission" in determining whether an act or practice is unfair or deceptive. *Id.* at § 2(b). Massachusetts courts, following federal jurisprudence under the Federal Trade Commission Act, have employed the following factors in evaluating whether conduct is unfair: (i) whether the practice is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (ii) whether it is immoral, unethical, oppressive or unscrupulous; and (iii) whether it causes substantial injury to consumers, competitors or other business people. *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 595, 321 N.E.2d 915, 917 (1975) (*citing FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972)). The Rhode Island Unfair Trade Practices and Consumer Protection Act ("UTPCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." R.I. Gen. Laws § 6-13.1-2 (2009). In construing the UTPCPA, courts shall give "due consideration" and "great weight" to the interpretations of the FTC and federal courts relating to 15 U.S.C. §45(a)(1). R.I. Gen. Laws § 6-13.1-3. *See, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008) (certifying classes pursuant to twenty-six states unfair trade practices acts, including Connecticut and Rhode Island (the court had previously certified a Massachusetts only class), recognizing the similarities of Connecticut, Massachusetts, and Rhode Island's statutes). Because the laws of Connecticut, Rhode Island, and Massachusetts are the same, the Court need not engage in an individualized conflict-of-laws analysis. *Brown*, 350 F. Supp. 2d at 348.

Similarly, the Court in *Dupler*, interpreting an identical claim brought under New York's substantially similar deceptive trade practices act, held that "courts have certified Section 349 [claims] where the claim is based on an omission, rather than an actual misrepresentation." *Dupler*, 249 F.R.D. at 44; *see also Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 435 (S.D.N.Y. 2009) (certifying GBL 349 claim based on Best Buy's failure to fully and adequately disclose its Anti-Price Matching Policy, noting that courts have "repeatedly held that that section 349 claims based upon omissions, non-disclosures and deceptive corporate policy are well suited to class certification.").

Applying these standards, it is abundantly clear that common issues outweigh any individual issues with respect to the CUTPA claim.  AAA SNE's backdating policy was a generally applicable corporate policy that was applied to all Class members that was not disclosed to its members.  Simply put, a reasonable person paying an annual fee for the ostensibly annual membership would have no reason to suspect – because AAA SNE does not disclose – that the membership will run for less than a full year from the transaction date, but instead is backdated to the prior expiration date.

Thus, whether this was an unfair or deceptive act or practice can easily be resolved on a class-wide basis.  That is especially true here where plaintiff must only prove that this practice "has a tendency or capacity to deceive."  *Shell Oil*, 822 F. Supp. at 885.  Moreover, because CUTPA does not require proof of reliance, there is no need for any individualized inquiry into how the Class members might have subjectively understood the terms of their membership.  The only individualized question is that of damages, which can easily be calculated and, as a matter of law, will not defeat a finding that common issues predominate.  *Jermyn*, 256 F.R.D. at 429.

### 3.   Unjust Enrichment

The Connecticut Supreme Court has held "Plaintiffs seeking recovery for unjust enrichment must prove that (1) the defendants were benefited, (2) the defendants unjustly did not pay the plaintiffs for the benefits, and (3) the failure of payment was to the plaintiffs' detriment." *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 433, 451-52, 970 A.2d 592, 609 (2009) (Citations omitted; internal quotation marks omitted.).  "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another."  *Id.*

There is no doubt that a benefit was conferred on AAA SNE (the receipt of annual membership fees), and that the Class members did not receive a full year of membership in return.  In *Dupler*, the court held that whether Costco "was unjustly enriched at the Class members' expense when members paid renewal membership fees for periods of time that had already elapsed" predominated over any individual questions relating to the unjust enrichment claim.  *Dupler*, 249 F.R.D. at 37.

Whether equity requires AAA SNE to make restitution is therefore a common question because the circumstances of each Class member are in all material respects identical.  *See, e.g.*, *Jermyn*, 256 F.R.D. at 436 (certifying unjust enrichment claim holding the "predominant issue for the unjust enrichment claim is whether Best Buy was enriched at the class' expense by using an undisclosed policy of aggressively discouraging and denying customers' valid price match requests.").[12]

---

[12] Again, the laws of Massachusetts and Rhode Island are identical.  *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009) ("unjust enrichment requires: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or

B.     A Class Action Is The Only Method For the Fair
       and Efficient Adjudication Of The Controversy

The resolution of the claims of all Class members in a class action is "superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(3), four nonexclusive factors are pertinent to the superiority determination: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of the class action. *Macarz*, 193 F.R.D. at 54-55.

Each of these factors weighs heavily in favor of certifying the Class. Here, as in *Dupler*, "[f]ew individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail[,] particularly when many of the putative plaintiffs have suffered economic loss of *de minimis* value." 249 F.R.D. at 47; *Macarz*, 193 F.R.D. at 55 (where "class

---

knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value"); *Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 99 (R.I. 2006) (same). In fact, the elements of an unjust enrichment claim are virtually identical throughout the United States. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) ("Courts have recognized that state claims of unjust enrichment are universally recognized causes of action that are materially the same throughout the United States") (quotation marks omitted). Recognizing the similarity among the states' unjust enrichment laws, many courts have certified nationwide class actions alleging unjust enrichment; *Vista Healthplan Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349. 359 (D.D.C. 2007) (certifying nationwide class because all states "require a showing that Defendants were unjustly enriched at the expense of the Class Members").

members may recover smaller damages amounts" there is a "remote likelihood that such individuals actions actually would be brought.").

The Class members have little or no incentive to maintain separate actions since their individual recovery will be nominal.  The importance and superiority of the class action mechanism is never more evident than in cases like this, where the individual damage claims are too small to justify individual litigation.  *Seifman v. Stauffer Chem Corp.*, 1986 WL 9803 (D. Conn. 1986) (superiority is met where "a large number of persons is alleged to be injured by defendants conduct and where their claims are too small to warrant separate suits.").  In cases like this, where most of the class members are individuals and the time spent litigating this case far outweighs any potential recovery, the class action vehicle is the *only* effective means of adjudicating this matter.  *See, e.g.*, *In re Nassau County Strip Search Cases*, 461 F.3d at 229 ("[a]bsent class certification and its attendant class-wide notice procedures, most of these individuals . . . likely never will know that defendant violated their . . . rights, and thus never will be able to vindicate those rights.  As a practical matter, then, without use of the class action mechanism, [class members] may lack an effective remedy altogether."); *Macarz*, 193 F.R.D. at 55 ("[d]efendant would no doubt benefit from [individual rather than class treatment of claims], as the vast majority, if not all, of those potential plaintiffs would fail to pursue [their] claims.").

As for the second element of superiority, there is no other pending case that could resolve the backdating claims of AAA SNE's members.  Moreover, it is desirable to concentrate these claims in a single court in Connecticut.  *Macarz*, 193 F.R.D. at 57 ("concentrating litigation in this District will assist Connecticut Residents who might otherwise be unwilling to travel to distant fora for a relatively small sum.").  A class action would also serve judicial economy and the interest of the parties; each claim turns on the same common issues (as described above), and

all Class members are or were AAA SNE members, making it appropriate to resolve all claims in this Court.  Even if the amount at controversy made the prospect of separate cases feasible, the superiority requirement is met because holding separate trials for hundreds of thousands of separate claims that could be tried together would be costly, inefficient, and would burden the court system by forcing individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts.  *In re U.S. Foodservice Inc. Pricing Litig.*, at *17 (managing 75,000 class members is "certainly preferable and superior to litigating 75,000 lawsuits.").  Finally, there are no obstacles to managing this case as a class action.  The Class is clearly defined and identifiable from AAA SNE's membership records.  As a result, there is no impediment to resolving the issues on a class-wide basis.

For these reasons, a class action is the superior method for adjudicating the issues in dispute.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion for class certification, designate Mr. Held as the class representative and approve Meiselman, Denlea, Packman, Carton & Eberz P.C. as class counsel, together with such other and further relief as the Court deems just and proper.

Dated:  White Plains, New York
       February 15, 2012

                                   MEISELMAN, DENLEA, PACKMAN,
                                   CARTON & EBERZ P.C.

By:       _____
                                   Jeffrey I. Carton
                                   Robert J. Berg
                                   1311 Mamaroneck Avenue
                                   White Plains, New York 10605
                                   (914) 517-5000
                                   (914) 517-5500 (facsimile)

*Attorneys for Plaintiff and the Class*