# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

LINDSAY HELD, on behalf of himself and all
others similarly situated,

        Plaintiff,

        v.

AAA SOUTHERN NEW ENGLAND,

        Defendant.

Civil Action No. 3:11-cv-0105-SRU

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.**
1311 Mamaroneck Avenue
White Plains, New York 10605
(914) 517-5000

*Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ................................................................................................................................1

    I.    COMMON ISSUES OF LAW OR FACT PREDOMINATE
        OVER INDIVIDUAL ISSUES..................................................................................1

        A.  Whether Class Members Availed Themselves Of Services During
            The 90 Day Period Following Expiration Is Not An Individual Inquiry
            Sufficient To Defeat Class Certification....................................................3

        B.  Injury To All Class Members Is An Easily Proven Common Issue ...........5

        C.  AAA SNE Does Not Disclose Its Backdating Policy — Whether
            Class Members Were Aware Of The Club's Backdating Policy
            Is Irrelevant.................................................................................................9

        D.  *Dupler* and *Argento* Support A Finding That Common Issues
            Predominate ...............................................................................................11

        E.  Defendant's Hypothetical Undeveloped Defenses Do Not Defeat
            Class Certification.....................................................................................14

    II.   PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLASS..........................................15

    III.  A CLASS ACTION IS THE SOLE AND SUPERIOR MEANS OF
         TRYING THIS CASE ...........................................................................................18

    IV.  THE CLASS IS PLAINLY ASCERTAINABLE.........................................................19

CONCLUSION...........................................................................................................................20

## TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*Argento v. Wal-Mart Stores, Inc.,*
    66 A.D.3d 930 , 888 N.Y.S.2d 117 (App. Div. 2009) ......................................................*passim*

*Bryan v. Amrep Corp.,*
    429 F. Supp. 313 (S.D. N.Y. 1977) ................................................................................ 14

*Budrow v. Dave & Buster's of California, Inc.,*
    171 Cal. App. 4th 875 (2009) ........................................................................................ 13

*Collins v. Olin Corp.,*
    248 F.R.D. 95 (D. Conn. 2008)........................................................................................ 3

*Dupler v. Costco Wholesale Corp.,*
    249 F.R.D. 29 (E.D.N.Y. 2008)...............................................................................*passim*

*Duprey v. Connecticut Dept. of Motor Vehicles,*
    191 F.R.D. 329 (D. Conn. 2000)................................................................................... 16

*Engel v. Scully & Scully, Inc.,*
    --- F.R.D. ----, 10 CIV. 3167 PKC, 2011 WL 4091468
    (S.D.N.Y. Sept. 14, 2011) ............................................................................................. 20

*In re Nassau County Strip Search Cases,*
    461 F.3d 219, (2d Cir. 2006)......................................................................................... 19

*In re Visa Check/MasterMoney Antitrust Litig.,*
    280 F.3d 124 (2d Cir. 2001).......................................................................................... 14

*Jermyn v. Best Buy Stores, L.P.,*
    256 F.R.D. 418 (S.D.N.Y. 2009) ............................................................................... 3, 5

*Krueger v. N.Y. Tel. Co.,*
    163 F.R.D. 433 (S.D.N.Y. 1995) ................................................................................... 8

*Macarz v. Transworld Systems, Inc.,*
    193 F.R.D 46 (D. Conn. 2000)..................................................................................... 19

*Menkes v. Stolt-Nielsen S.A.,*
    270 F.R.D. 80 (D. Conn. 2010)............................................................................... 15, 20

*Pro v. Hertz Equip. Rental Corp.,*
    72 Fed. R. Serv. 3d 485 (D.N.J. 2008)......................................................................... 15

## TABLE OF AUTHORITIES
## (CONT'D)

**CASES**                                                                                              **PAGE**

*Smilow v. Sw. Bell Mobile Sys., Inc.,*
   323 F.3d 32 (1st Cir. 2003) ................................................................................. 14

*Steinberg v. Nationwide Mut. Ins. Co.,*
   224 F.R.D. 67 (E.D.N.Y. 2004) ........................................................................... 16

*Wu v. Pearson Educ., Inc.,*
   277 F.R.D. 255 (S.D.N.Y. 2011) ......................................................................... 19

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 1, 20

## PRELIMINARY STATEMENT

In responding to Plaintiff's motion for class certification, Defendant AAA SNE misrepresents the factual record, the applicable law, and Plaintiff's theory of the case. Simply put, for the reasons proffered in Plaintiff's opening brief and further expounded upon below, the proposed Class is ripe for certification.

This action challenges Defendant's uniform and undisclosed business practice of backdating annual membership renewals, thereby depriving AAA SNE members of up to 3 months of prospective membership benefits for which they have otherwise paid. Indeed, AAA SNE's "opposition" concedes that *any member* who renews his or her prior membership within 90 days after its expiration receives *less than* a 365-day renewal term, despite paying a full annual fee. As a result, Plaintiff's claims raise numerous common factual and legal issues that easily predominate over any purported individual questions. Accordingly, Plaintiff's motion for class certification should be granted.

## ARGUMENT

### I. COMMON ISSUES OF LAW OR FACT PREDOMINATE OVER INDIVIDUAL ISSUES

Plaintiff explained in his opening brief that issues common to all Class members predominate over any individual issues. AAA SNE does not deny that numerous and substantial common questions exist, failing to challenge commonality.[1] These common questions include:

> i.  Whether AAA SNE has a generally applicable policy and practice of backdating memberships that are renewed after a lapse of time following the expiration date;

---

[1] Defendant similarly fails to refute that Plaintiff has met the numerosity and adequacy requirements of Fed. R. Civ. P. 23(a)(1) and (4). Rather, Defendant only challenges the predominance requirement and Plaintiff's typicality.

ii.     Whether AAA SNE's policy of backdating such renewal memberships has been adequately disclosed to the Class;

iii.    Whether AAA SNE's Primary, Plus or Premier membership contracts authorize AAA SNE to backdate such renewal memberships;

iv.     Whether the information provided to AAA SNE members or which AAA SNE makes available on its website, adequately discloses or explains the backdating policy;

v.      Whether AAA SNE's failure to grant 12 full months of membership on post-expiration date renewals in exchange for payment of a full annual fee is a breach of its membership contracts;

vi.     Whether AAA SNE's policy and practice of granting less than 12 months of membership on post-expiration date renewals in exchange for a full annual membership fee is deceptive, misleading, unfair, unlawful or improper;

vii.    Whether AAA SNE's actions constitute violations of the Connecticut Unfair Trade Practices Act and the substantially similar unfair trade practices statutes of Massachusetts and Rhode Island.

AAA SNE does not deny that these questions are central to the outcome of this case or that they can be resolved on a class-wide basis. AAA SNE argues, however, that other purported "individualized" inquiries will predominate over these concededly common questions. Def. Br. at 20. In making this argument, AAA SNE misrepresents the nature of Plaintiff's claims, cites no case law to support its arguments, and unsuccessfully seeks to distinguish the virtually identical *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29 (E.D.N.Y. 2008) and *Argento v. Wal-Mart Stores, Inc.*, 66 A.D.3d 930, 934, 888 N.Y.S.2d 117 (App. Div. 2009) cases, relying instead on an erroneously-decided, non-precedential California state court order which is currently on appeal.

Despite Defendant's tortured attempt to argue against predominance, the inescapable fact

2

remains that AAA SNE's backdating policy is applied universally to all Class members, and that

all factual and legal questions regarding the backdating policy and whether that policy breaches

the uniform member contract can be resolved on a class-wide basis, as was the case in *Dupler*

and *Argento*.  By contrast, the only individual issue to be tried is the calculation of each Class

member's damages – a simple calculation based on the applicable membership fee paid and the

period of time for which the member was charged retroactively.  It is well settled that the need to

determine each individual Class member's damages does not justify denying a motion for class

certification.  *Collins v. Olin Corp.*, 248 F.R.D. 95, 105 (D. Conn. 2008); *Jermyn v. Best Buy

Stores, L.P.*, 256 F.R.D. 418, 429 (S.D.N.Y. 2009).

> The so-called "individualized" inquiries concocted by AAA SNE are entirely immaterial

for the purposes of deciding class certification.  Here, as in *Dupler*, common questions of law or

fact predominate because "(1) all putative class members are bound by the same Privileges and

Conditions of Membership; and (2) [Defendant's] practice of backdating memberships for all

memberships renewed within [90 days] of the expiration date is a common course of conduct

that has been applied to all putative class members . . . ."  *Dupler*, 249 F.R.D. at 37.

**A.     Whether Class Members Availed Themselves Of Services
During The 90 Day Period Following Expiration Is Not An
Individual Inquiry Sufficient To Defeat Class Certification**

> AAA SNE contends that it offers services to class members during the 90-day period

after a membership has expired (the period during which it backdates renewals) and that

individualized inquiries are necessary to determine whether Class members avail themselves of

such services during that 90-day period.  Def. Br. at 21.  There is no need for any such inquiry.

When AAA SNE members call for roadside assistance after their memberships have expired

(following a 15-day grace period), they are told: *"Agree to pay the annual renewal fee*

*immediately, or no tow truck will be dispatched.*"  In other words, no service is being provided to members on account of membership fees *previously paid* to AAA SNE for the prior period of membership which has expired.  This is confirmed by the transcript of Mr. Held's call that Defendant trumpets throughout its brief.  (Wyatt Aff. Ex. K.)  Those who call for roadside assistance during the 90-day period after the membership has expired and opt to renew, such as Mr. Held, are backdated in precisely the same manner as any other member who renews within the 90-day period after expiration.  And for those few members who elect to start a "new" membership and are charged additional fees such as a $35 same day service fee, such members are not, *by definition*, members of the proposed class as they are granted a full 365 days of membership in exchange for their payment of the annual fee.

Here, every Class member has paid a full annual "renewal" fee and received less than a full year of membership from that date forward.  When these renewals are purchased, the Class members have every right to expect that their renewal terms will run for a full year.  That is true regardless of whether or not expired AAA SNE members have availed themselves of any AAA SNE services during the 90-day period following expiration.  In *Dupler*, Judge Bianco rejected the same argument raised herein by Defendant.  His reasoning applies with equal force here:

> [T]he theory of injury and damages is not based upon how many times a person was denied the ability to shop during the expired period, but rather is based on the alleged *prospective* denial of a full 12-month membership at the time of renewal of their annual membership. In other words, *the theory of injury and damages relates to the membership fee itself*, rather than denial of shopping on a particular day. . . .   Thus, defendant's policy of overlooking expired cards in limited circumstances does not pose an insurmountable legal barrier to a Section 349 [deceptive and unfair trade practices] claim.

*Dupler*, 249 F.R.D. at 44, n.4 (emphasis added).  AAA SNE does not cite to a single case (outside of the *Thompson* order cited elsewhere in Defendant's brief) to support its argument that

use of any AAA SNE services post-membership expiration, but pre-renewal, defeats a class

member's claim. Instead, Defendant's brief is laden with aspersions against Plaintiff, which

simply amount to noise designed to obfuscate the simple truth that is the gravamen of this case –

AAA SNE made a straightforward business choice to backdate (but not disclose the practice) that

impacted all consumers in the proposed Class in an equal and deceptive manner.

**B.      Injury To All Class Members Is An Easily Proven Common Issue**

Issues regarding the amount of damages in breach of contract and consumer protection

claims are not issues that preclude class certification. *See Jermyn*, 256 F.R.D. at 435 ("The

individualized nature of the potential damages does not preclude a finding that common

questions of law and fact predominate over individualized damages.") (quoting *Dupler*).

Unsurprisingly, Defendant offers no case law in support of its position that damage calculations

somehow preclude class certification.

Moreover, despite Defendant's attempt to hide behind its purported lack of record-

keeping, proving that Class members have been injured by AAA SNE's backdating policy is

easily accomplished. AAA SNE maintains a comprehensive database that includes all

membership renewal transaction histories. In discovery, AAA SNE produced internal

documents that set forth the number of membership renewals it received for each day after

expiration between 1-90 days, for the years 2005 through September 2011. (Berg Decl. Ex. 17.)[2]

The documents, titled "AAA Southern New England Membership Renewal Dues Collected after

---

[2] References to "Berg Decl." refer to the Declaration of Robert J. Berg, dated February 15, 2012.
Excerpts of the deposition transcripts of Stephen Manty are annexed to the Berg Declaration as
Exhibit 3 and are hereinafter cited "(Manty p. ___.)" All other exhibits to the Berg Declaration
are cited by exhibit number, *e.g.*, "(Ex. 17.)" Additional excerpts of the deposition of Lindsay
Held are annexed as Exhibit 1 to the Supplemental Declaration of Robert Berg, dated April 16,
2012, filed herewith and are hereinafter cited ("Held p. ___.").

the Membership Expiration Date," include the number of members who "renewed" each day during the 90-day period after expiration during which AAA SNE backdates membership renewals.  Defendant's Chief Financial Officer, Stephen Manty, testified that the documents "reflect[] renewal membership[s] that were paid subsequent to the expiration date for a specific year identifying the number of memberships as well as the dollars, the full dollars associated with that number of memberships for each day subsequent to the expiration date." (Manty p. 48.) Mr. Manty further testified that "the membership system maintains the detailed data." (Manty p. 56.) The amount of each Class member's damages can easily be determined by dividing the Class member's annual membership fee by 365 and multiplying the result (the quotient) by the number of days the Class member was backdated.  The same formula applies regardless of what level of membership the Class member enjoyed.[3]

Despite having actually estimated the amount of the Class members' injuries in the aggregate, AAA SNE argues that whether each Class member suffered any loss at all must be resolved on an individual basis. Def. Br. at 22. This argument is sorely misplaced. These types of issues and defenses to class certification in the context of membership renewal and calculation of damages are, in fact, the same issues rejected by the courts in the *Dupler* and *Argento* cases.

AAA SNE tries to justify its backdating policy by arguing that some Class members receive services and benefits after their memberships have expired but before they renew. Def. Br. at 21. This argument is a red herring. Sooner or later these Class members rejoin AAA SNE and are granted less than a full year of *prospective* membership privileges. As such, they are victims of the backdating policy because their memberships expire less than 12 months from the

---

[3] This is true regardless of whether the AAA SNE member was a Connecticut Motor Club member or an AAA SNE member, regardless of membership tier, and regardless of any discounts the member received.  It is simple math.

dates on which they "renew."   The issue is not whether AAA SNE grants special dispensation to some of its expired members – by providing some services while their memberships are expired -- but whether as a matter of an undisclosed corporate policy, these members receive less than a full year of membership going forward when they rejoin AAA SNE and pay their "annual" fee.[4]

Thus, a post-expiration service call is not a benefit of the expired term; it is one of the benefits of the new term of membership, provided the member pays a full annual fee to renew. Of course, that renewal term runs for less than a full year (and for as little as nine months).  As a result, all Class members are similarly situated.  All pay AAA SNE's full annual membership fee during the 90-day period after expiration, and all receive less than a full year of membership in return.  That is true regardless of whether each member receives roadside assistance during the 90-day period or not.  It makes no difference whether a member renews 90-days after expiration because he misplaced his renewal notice or because he needed help changing a flat tire.  Either

---

[4] Defendant cites a purported "expert" report prepared by Professor Thomas J. Maronick for two irrelevant propositions.  Even assuming, *arguendo*, that Dr. Maronick's report meets the standard under *Daubert v. Merrill Dow*, 509 U.S. 579 (1993), Dr. Maronick's report does nothing to defeat class certification or to illuminate any issues in this case.  Defendant cites Dr. Maronick's report for the proposition that (1) members value their longstanding relationships with the Club; and (2) only a relatively small percentage of individuals recall receiving and reading the Member Handbook.   Plaintiff does not dispute that some AAA SNE members value their relationships with the Club.  AAA SNE, however, misconceives the purpose of this action.  Mr. Held does not seek to enjoin AAA SNE's backdating policy, but to ensure that the policy is adequately disclosed and to compensate consumers whose AAA SNE memberships have been backdated without adequate disclosure.  Whether or not AAA SNE's backdating policy is justified, there is no justification for concealing this material policy and cheating Class members out of the full membership term for which they paid.  As to whether AAA SNE members recall receiving and reviewing the Member Handbook, here, as in *Dupler*, there is no need for an individualized inquiry into whether each class member "actually reviewed the terms of the Privileges and Conditions of Membership" (*id.*) because Mr. Held's claims are based on AAA SNE's failure to disclose its backdating policy to its members. *See Jermyn*, 256 F.R.D. at 435-36 (class certification granted where central issue was whether alleged omissions violated the law).

way, the member pays a full annual fee in exchange for as little as nine months of membership.

AAA SNE cannot establish that common issues do not predominate based on its fanciful notion that some Class members may have saved money by being backdated because they avoid the $35 same day service fee. First, to the extent that AAA SNE would defend this action by claiming that not charging the $35 same day service fee benefitted the Class members, it is a class-wide defense that would apply equally to each class member. As such, contrary to AAA SNE's argument, the assertion of this common defense supports class certification. *See, e.g., Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 433, 441 (S.D.N.Y. 1995) (certifying a class, stating "common defenses which may be asserted against nearly all members of the class . . . would support a class action certification rather than argue against it.").

Moreover, at the most basic level, the $35 fee is a diversion from the real issue. AAA SNE is free to adopt whatever membership policies it pleases relating to membership renewal and length of membership, provided those policies are clearly disclosed. This action does not seek to prohibit backdating. Rather, the action challenges AAA SNE's deceptive practice of backdating memberships without adequate disclosure and without contractual permission to do so. In short, whether or not AAA SNE chooses to backdate memberships or charge same day service fees is of no moment. What is important is that AAA SNE easily could disclose, but does not disclose, its backdating policy in clear and unmistakable terms. Unlike AAA SNE, many AAA affiliate clubs *do* make appropriate disclosures relating to their membership renewal policies, clearly informing their members that if they renew their memberships during a certain period after expiration, their 12-month renewal terms will run from the original expiration date – not the subsequent date of purchase of the renewed membership. Pl. Br. at 14-16. Here, unlike

8

the other AAA affiliates, AAA SNE has failed to inform its members that it routinely backdates memberships that are renewed after expiration.

**C.     AAA SNE Does Not Disclose Its Backdating Policy -- Whether Class Members Were Aware Of The Club's Backdating Policy Is Irrelevant**

Defendant argues that determining whether each Class member is aware of AAA SNE's backdating policy requires individual analyses sufficient to defeat class certification. Def. Br. at 24. As is the case throughout its brief, Defendant cites no case law to support its erroneous proposition. The fact is that Defendant's "awareness" argument is created out of whole cloth.

Here, as in *Dupler*, it is "important to emphasize that plaintiffs' theory of the case is not one of misrepresentations in the Privileges and Conditions of Membership; rather, it is one of omission and nondisclosure." *Dupler*, 249 F.R.D. at 40. Thus, here, as in *Dupler*, there is no need for an individualized inquiry into whether each plaintiff "actually reviewed the terms of the Privileges and Conditions of Membership" (*id.*) because Mr. Held's claims are based on AAA SNE's failure to disclose its backdating policy to its members. It makes no difference whether a class member read AAA SNE's terms of membership or purported "disclosure" documents because none of these corporate communications disclosed the backdating policy. *Id.*

AAA SNE tries to defeat a finding that common issues predominate over individual issues by noting that AAA SNE offers three distinct tiers of membership. Def. Br. at 5. But it is undisputed that the backdating policy applies equally to all AAA SNE memberships. AAA SNE also claims that individual issues will predominate because AAA SNE has distributed different renewal notices during the class period. Def. Br. at 9. This would only matter if the Complaint alleged that AAA SNE's renewal notices contained affirmative misrepresentations concerning the backdating policy. They do not. Instead, this is a case of omission and non-disclosure. As a

9

result, AAA SNE cannot show that individual issues predominate by claiming that it used a variety of renewal notices. Any distinctions among the various notices are immaterial, because *none of the notices* disclosed the backdating policy.

For the same reason, there is no need to determine which class members read each notice. This case "is one of omission and nondisclosure[.]" *Dupler*, 249 F.R.D. at 40. As such, it is unimportant whether the class members saw the purported (but entirely uninformative) "disclosure" documents. *Id.* AAA SNE easily could have disclosed its backdating policy by following the example of the various other automobile clubs referenced in Plaintiff's opening brief. Pl. Br. at 14-16. Those clubs, unlike AAA SNE, clearly and conspicuously disclose their backdating policies in their membership guides. AAA SNE cannot explain or justify its failure to make any similar disclosure. Whether AAA SNE's conduct amounts to a breach of contract and violation of Connecticut, Massachusetts and Rhode Island unfair trade practices statues is thus a class-wide issue.

AAA SNE also contends that renewal notices sent to members advise the members of their memberships' expiration dates. Def. Br. at 9. But merely printing the expiration date on a renewal notice is a far cry from disclosing AAA SNE's policy of backdating renewals after expiration. Tellingly, AAA SNE does not claim that its renewal notices disclose or describe its backdating policy. Any such claim would be contrary to the plain language of the renewal notices, which do not refer to the policy at all, much less explain it. On this motion, however, the Court need not decide whether AAA SNE's purported disclosures are adequate. Furthermore, each of AAA SNE's purported "disclosures" on the renewal notices are the same for all AAA SNE members, and therefore their adequacy or lack thereof can be determined on a class-wide basis.

10

AAA SNE's reliance on purported oral disclosures (Def. Br. at 25) is equally far-fetched. AAA SNE's claim that Mr. Held learned of the backdating policy during his February 2010 renewal telephone call misrepresents the unambiguous transcript of the call, during which at no time was the issue of backdating Mr. Held's membership discussed or even implied. (Wyatt Aff. Ex. K.) Aside from its false portrayal of Mr. Held's 2010 renewal, AAA SNE emphasizes that it speaks with some AAA SNE members orally and it will be impossible to determine whether an individual class member communicated verbally with AAA SNE and if so, whether AAA SNE disclosed its backdating policy. But AAA SNE has no general policy of orally informing its members of the backdating policy. The one internal corporate document that AAA SNE cites in opposition to class certification reveals that, at best, AAA SNE orally discloses its backdating policy to a minuscule percentage of members who have already been subject to backdating and suffered harm and who then call to complain. (Wyatt Aff. Ex. I.)

Moreover, even if the policy is disclosed on some extremely limited *ad hoc* basis prior to membership renewal, the law does not preclude class certification based on the mere supposition that a small number of determined class members could have uncovered the undisclosed corporate policy, but only if they called to complain. As Judge Bianco explained in the *Dupler*, "there is always the possibility that a particular plaintiff, despite a nondisclosure by the defendant, somehow stumbled upon the non-disclosed fact at issue on his or her own and continued to make payments." *Dupler*, 249 F.R.D. at 45. That did not preclude certification in *Dupler*, and it should not here.

### D.    *Dupler* and *Argento* Support A Finding That Common Issues Predominate

AAA SNE urges the Court to turn a blind eye to the *Costco* and *Sam's Club* backdating cases, but those precedents are directly on point. *Dupler*, 249 F.R.D. 29; *Argento v. Wal-Mart*

*Stores, Inc.*, 888 N.Y.S.2d 117. As counsel for AAA SNE admitted at the deposition of Mr.

Held, "the underlying allegations in the . . . COSTCO Case are virtually identical to the

allegations that you have asserted in your current case against Triple A." (Held p. 42, ln. 22-25).

Moreover, AAA SNE's attempts to distinguish *Dupler* and *Argento* reflect its misunderstanding

of those decisions. For example, AAA SNE claims that unlike AAA SNE members, Costco

members do not receive any membership benefits until they renew. But Costco argued, as AAA

SNE argues here, that its members did receive membership benefits prior to renewing, claiming

that its members were entitled to shop at least once after expiration without renewing their

memberships. The court rejected this argument as a barrier to class certification, holding:

> [D]efendant argues that, in the Spring of 2002, Costco had the
> policy of allowing a shopper with an expired membership to
> complete one shopping transaction following expiration.
> However, the Court does not believe this issue precludes class
> certification. First, as plaintiff points out, the theory of injury and
> damages is not based upon how many times a person was denied
> the ability to shop during the expired period, but rather is based on
> the alleged prospective denial of a full 12-month membership at
> the time of renewal of their annual membership. In other words,
> the theory of injury and damages relates to the membership fee
> itself, rather than denial of shopping on a particular day. Thus,
> defendant's policy of overlooking expired cards in limited
> circumstances does not pose an insurmountable legal barrier to a
> Section 349 claim. Second, even assuming arguendo that damages
> could be impacted by defendant's policy, it appears that there are
> large groups of putative class members who are similarly situated
> and that it is an issue that can be dealt with in a systematic way,
> rather than requiring mini-trials.

*Dupler*, 249 F.R.D. at 44, n.4. Similar claims were raised by Sam's Club in *Argento*[5] but again

proved no obstacle to class certification. By certifying classes in both cases, the courts

---

[5] *See Francine Argento's Reply Memorandum of Law in Support of Class Certification*, 2008
WL 7950298 (N.Y. Sup. Sept. 4, 2008) ("Moreover, even assuming Sam's Club occasionally
allows former members to shop on their expired cards, that would be entirely irrelevant to this

determined that the opportunity to shop after expiration does not preclude class certification. The same is true here, where AAA SNE claims expired members may still receive some Club services for a limited time prior to renewal.

Like a drowning man clinging to a piece of driftwood, AAA SNE has grabbed onto the Superior Court of California's order denying class certification in *Thompson v. Automobile Club of Southern California,* in seeking to have this Court deny certification. Defendant makes much of the fact that Plaintiff did not cite the *Thompson* order in its opening brief. Def. Br. at 30. Plaintiff, however, did not cite the *Thompson* order because (1) it has no precedential value, even under California law; (2) it was brought under California law and under California's state class certification procedures; (3) it was wrongly decided; and (4) it is being appealed.

In California, "a written trial court ruling in another case has no precedential value." *See, e.g., Budrow v. Dave & Buster's of California, Inc.*, 171 Cal. App. 4th 875, 885 (2009). In addition to being of no precedential value, the *Thompson* order was wrongly decided under a different state's laws and procedures. The order is premised almost entirely on the erroneous proposition that the action requires individual inquiries into whether class members received services after their prior membership terms expired. AAA SNE advances the identical erroneous proposition in this case. As discussed above, no such individual inquiries are necessary. In fact, the *Thompson* order is based on a complete misapprehension of plaintiff's claims in that case.

Furthermore, the *Thompson* order should be met with great skepticism by this Court because (1) it is issued from a trial level state court from a state outside of this district; (2) it was decided under a different legal standard and applying different state law, which directly conflicts with a well-considered district court decision from within this Circuit as decided by the

---

case. At some point after expiration, every Class member paid a full annual 'renewal' fee and received less than a full year of membership privileges from that date forward.")

13

Honorable Judge Bianco in *Dupler*; (3) it conflicts with a published decision from the New York State Appellate Court in *Argento*; (4) while "so ordered" by the state court in California, the *Thompson* order was drafted, not by the court, but by Defendant's counsel in that action, as can be seen from the watermark identification of Defendant's counsel Manatt, Phelps, & Phillips, LLP in the lower left hand corner of each page of the order; and (5) the order is currently on appeal to California Court of Appeal, where Plaintiff anticipates an outcome that more properly reflects the state of the law in the State of California.

### E.  Defendant's Hypothetical Undeveloped Defenses Do Not Defeat Class Certification

Defendant's argument that various defenses require individualized inquires is, in a word, fanciful. Once again failing to cite a single case to support its argument, AAA SNE baldly states without explanation that its intention to assert defenses such as voluntary payment, waiver, and statute of limitations somehow defeats predominance. Def. Br. at 26. Defendant is incorrect.

The existence of affirmative defenses (and individualized application thereof) does not defeat class certification. 2 Newberg on Class Actions § 4:26 (4th ed.) ("the presence of affirmative defenses against various class members . . . will not usually bar a finding of predominance of common issues . . . .") (*citing Bryan v. Amrep Corp.*, 429 F. Supp. 313 (S.D. N.Y. 1977) (class certification granted even though some class members may be subject to affirmative defenses). "Instead, where common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39-40 (1st Cir. 2003) (*citing In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138-40 (2d Cir. 2001).

Thus, speculation that some class members' claims may be barred on the basis of voluntary payment, waiver, or statute of limitations and the mere articulation of affirmative

defenses does not defeat predominance in a case presenting common issues. The purported

"defenses" cited by AAA SNE do not apply to Plaintiff and, even if they did, they would not

become the focus of the litigation, and so they provide no reason to deny class certification.[6]

## II.    PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLASS

It is undisputed that Plaintiff's claims arise from the same set of factual and legal

questions as the Class members' claims. Like every other Class member, Plaintiff had his AAA

SNE membership backdated, and was denied a prospective period of membership. The relief

sought is the same relief that is sought by each individual member of the Class. All damages

arise out of the same course of conduct engaged in by AAA SNE. In sum, the typicality

requirement is easily met. *See, e.g., Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 92 (D. Conn.

2010) ("[w]hen it is alleged that the same unlawful conduct was directed at or affected both the

named plaintiff and the class sought to be represented, the typicality requirement is usually met

irrespective of minor variations in the fact patterns underlying individual claims.").

Nonetheless, AAA SNE challenges Plaintiff's typicality. First, AAA SNE argues that

Mr. Held's claims are not typical because Mr. Held knew of the theoretical existence of

backdating in 2007 when he was involved in a backdating lawsuit against Costco. Def. Br. at 28.

It is unclear from Defendant's brief how Mr. Held's knowledge in 2007 relating to backdating by

another company has any impact on any of Mr. Held's claims in this case. Indeed, as Mr. Held

testified at his deposition, he first learned about the backdating action against the Automobile

Club of Southern California in late October or November 2010 (Held p. 49-51), and this

triggered his inquiry into whether or not he had been backdated by AAA SNE, a fact that he first

---

[6] *See, e.g., Krueger v. N.Y. Tel. Co.*, 163 F.R.D. at 441; *Pro v. Hertz Equip. Rental Corp.*, 72
Fed. R. Serv. 3d 485 (D.N.J. 2008).

confirmed when he called AAA SNE to check on his membership in December 2010. (Held p. 65.)[7] At his deposition, Mr. Held was asked if he "first came to the realization in December 2010 that you arguably had been harmed by Triple AAA." (Held p. 67.) Mr. Held responded "the answer is yes." *Id.*[8]

AAA SNE's next gambit is to claim that it can defeat typicality by rehashing, once more, its erroneous claim that Mr. Held renewed his membership in February 2010 after being told of the backdating policy. Def. Br. at 29. The transcript of his call with AAA SNE belies this claim. Yet, according to AAA SNE, merely asserting (truthfully or otherwise) that he had such knowledge is enough to defeat typicality. AAA SNE does not cite a single case to support this grandiose assertion, and with good reason. It is not the law. To the contrary, the clear law in this Circuit is precisely the opposite: "[A] court . . . need not deny certification merely because of the presence of a colorable unique defense." *In re Omnicom Group, Inc. Sec. Litig.*, No. 02 Civ. 4483 (RCC), 2007 WL 1300781, at *4 (S.D.N.Y. May 1, 2007).

Nor will litigating such a defense detract from other Class members' claims, particularly since AAA SNE has no evidence to support its theory that Mr. Held knew about the backdating policy before he rejoined AAA SNE and Mr. Held specifically testified he did not discover AAA SNE's backdating until December 2010. (Held p. 67, 113.) Relating to his other interactions

---

[7] If Defendant is alluding to a potential statute of limitations defense against Mr. Held, as discussed above, such a defense is meritless and clearly has no bearing on Mr. Held's claim relating to AAA SNE's backdating of his membership in 2010. The argument further does not impact class certification as "[c]ourts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintif[f], do[] not preclude certification." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004); *Duprey v. Connecticut Dept. of Motor Vehicles*, 191 F.R.D. 329, 340 (D. Conn. 2000) (same).

[8] *See also* Held p. 113 ("But in early December and mid December [2010] I called and asked, inquired about when I paid, how I paid and when my membership was expiring.").

with AAA SNE, Mr. Held testified that "there were some times where a customer service representative indicated my membership had expired, *et cetera, but nothing specific on policies at that time*." (Held p. 113.) The undisputed record evidence is that nowhere during his telephone call to AAA SNE on or about February 27, 2010 did AAA SNE inform Mr. Held that if he renewed his membership on the phone, his membership would be backdated. The only disclosure made by AAA SNE on the February 2010 call with Mr. Held was that if he failed to renew more than 90 days after the stated renewal date, AAA SNE would charge a $30.00 same day service fee if he needed roadside assistance. This is hardly a disclosure of AAA SNE's backdating policy. Moreover, it is irrelevant in deciding whether Mr. Held's claims are typical of the Class. It would be the worst kind of bootstrapping, and would undermine the purposes of Rule 23, if corporate defendants could defeat class certification merely by asserting a frivolous defense and then arguing that litigating such a defense will render the plaintiff's claim atypical.

In *Dupler*, the defendant similarly argued that each class member's individual knowledge of Costco's renewal policy should defeat class certification because a particular class member with full knowledge may have made a "voluntary payment." *Id.* at 45. The *Dupler* court rejected the defendant's argument, stating that it would "bar almost all class actions involving alleged nondisclosures" and concluding that "even if some portion of the class may have some non-common factual issues as to their independent knowledge of the Renewal Policy in the context of the voluntary payment doctrine or the issue of damages, such issues are not so complex or overwhelming to defeat the predominance requirement." *Id.*

Finally, AAA SNE argues that Mr. Held was not damaged by AAA SNE's conduct and, therefore, he cannot prevail on his individual claims. Def. Br. at 29. This argument plainly lacks merit. It is undisputed that on or about February 7, 2010, Held paid AAA SNE the full annual

17

renewal fee for both himself and his wife for another year of membership privileges and services

totaling $88.00. However, instead of providing 12 full months of membership commencing on

the transaction date, AAA SNE backdated Mr. Held's new period of membership to the prior

expiration date such that his renewed memberships expired on January 1, 2011, not twelve

months following the renewal transaction date – on or about February 7, 2011. As a result of

AAA SNE's backdating policy, Mr. Held paid membership fees for a 52 week period, although

he only received approximately 47 weeks of membership privileges in return. On at least this

occasion, AAA SNE deprived Mr. Held of a portion of the annual membership renewal that he

had purchased. As a result, Mr. Held lost approximately $8.82 of the $88 cost of the 2010-2011

memberships for himself and his wife. Def. Br. at 23.

The relief sought by Mr. Held is the same relief being sought by each individual member

of the Class. All damages arise out of the same course of conduct engaged in by AAA SNE.

Thus, the typicality requirement is easily satisfied.

## III.  A CLASS ACTION IS THE SOLE AND SUPERIOR MEANS OF TRYING THIS CASE

Plaintiff demonstrated in his opening brief that a class action is not merely the superior

method, but the only method, of doing justice in this case. Ignoring the law in this Circuit, as

well as Plaintiff's analysis of the factors pertinent to the superiority determination, AAA SNE

instead relies on the same misconceptions about the nature of the case that infect AAA SNE's

entire presentation and merely restates its unsound arguments contesting predominance. Thus,

AAA SNE argues that a class action is not superior because the Court will need to determine

which members "(1) availed themselves of Club services and/or other benefits during the 90 days

following their stated renewal date; (2) were damaged as a result of the Club's renewal policy;

and/or (3) otherwise were aware of the Club's policy and voluntarily elected to renew their membership." Def. Mem. at 27-28.

Each of these arguments is a mere diversion from the real issues to be tried, as summarized above. (*See supra*, at 1-2.) The fact is each of the relevant factors courts look to in determining superiority weighs heavily in favor of certifying the Class. Pl. Br. at 37-40.[9] Given the costs and burdens of prosecuting individual consumer protection cases a class action is not only superior to any alternative, but the only way to prosecute the Class members' claims.

## IV.    THE CLASS IS PLAINLY ASCERTAINABLE

Defendant applies a misplaced analysis in arguing that Plaintiff cannot prove that the Class is ascertainable. AAA SNE argues that the proposed class is not reasonably ascertainable because some Class members may not prevail on the merits of their claims. For example, AAA SNE asserts that some class members may have known about the backdating policy when they renewed, and others may have received services during the period after their memberships expired. Def. Br. at 27. These defenses are meritless, but more to the point, they are irrelevant to whether the Class is ascertainable.

This argument was specifically addressed and rejected in *Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 273 (S.D.N.Y. 2011), where the defendant argued "that the class is not sufficiently ascertainable because the Court will have to make a determination about the merits of each claim in deciding whether a particular individual is a class member." *Id.* The Court held that "the

---

[9] *See, e.g., In re Nassau County Strip Search Cases*, 461 F.3d 219, 229 (2d Cir. 2006) ("[a]bsent class certification and its attendant class-wide notice procedures, most of these individuals . . . likely never will know that defendant violated their . . . rights, and thus never will be able to vindicate those rights. As a practical matter, then, without use of the class action mechanism, [class members] may lack an effective remedy altogether."); *Macarz v. Transworld Systems, Inc.,* 193 F.R.D. 46, 55 (D. Conn. 2000) (same).

mere fact that class membership overlaps with an element of the plaintiff's legal claim does not

mean that the class is not ascertainable." *Id.* As set forth in Plaintiff's opening brief,

ascertainability simply requires that "[c]lass membership must be readily identifiable such that a

court can determine who is in the class and bound by its ruling." *Menkes*, 270 F.R.D. 80, 93 (D.

Conn. 2010) (collecting cases). Fed. R. Civ. P. 23 does not require a plaintiff to establish the

defendant's liability to each and every prospective class member in order to certify the class.

Were that the case, no class could ever be certified, and the class action procedure would be

nullified. Here, the Class can be ascertained by retrieving data from AAA SNE's computerized

membership database, and the "contours of the class are clearly set forth [in the class definition]

and class membership can easily be determined." *Engel v. Scully & Scully, Inc.*, --- F.R.D. ----,

10 CIV. 3167 PKC, 2011 WL 4091468, at *9 (S.D.N.Y. Sept. 14, 2011).

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiff's prior submissions, Plaintiff

respectfully requests that the Court should grant Plaintiff's motion for class certification,

designate Mr. Held as the class representative, and approve Meiselman, Denlea, Packman,

Carton & Eberz P.C. as class counsel, together with such other and further relief as the Court

deems just and proper.

Dated:    White Plains, New York
          April 16, 2012
                          MEISELMAN, DENLEA, PACKMAN,
                          CARTON & EBERZ P.C.
                          By:    */s/ Jeffrey Carton*
                                    Jeffrey I. Carton
                                    Robert J. Berg
                                    1311 Mamaroneck Avenue
                                    White Plains, New York 10605
                                    (914) 517-5000
                                    (914) 517-5500 (facsimile)

                                    *Attorneys for Plaintiff and the Class*

20

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of April, 2012, I caused the foregoing Plaintiff's

Reply Memorandum of Law in Support of Motion for Class Certification and the Supplemental

Declaration of Robert J. Berg and accompanying exhibit to be served upon counsel for Defendant

by email and by first class mail, postage fully-prepaid at the following addresses:

> Daniel M. Blouin
> SEYFARTH SHAW LLP
> 131 South Dearborn, Suite 2400
> Chicago, Illinois  60603
> E-mail: dblouin@seyfarth.com

_____
Robert J. Berg