## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LINDSAY HELD, on behalf of himself and all others similarly situated, <br>       Plaintiff, <br><br>     v. <br><br> AAA SOUTHERN NEW ENGLAND, <br> Defendant. | No. 3:11cv105 (SRU) |

### RULING AND ORDER ON MOTION FOR CLASS CERTIFICATION

Plaintiff Lindsay Held filed this action against the American Automobile Association of Southern New England ("AAA SNE" or the "Club") claiming that the motor club's policy of backdating membership renewals breached customers' contracts with the Club, violated consumer protection laws, and resulted in the Club's unjust enrichment. Plaintiff then moved to certify a class of similarly situated consumers pursuant to Federal Rules of Civil Procedure 23(b)(3).

As explained more fully below, at base, this case is about the legality of a general policy applied with equal force to each member of a large class of people. AAA SNE admits that it has a blanket policy of backdating memberships renewed after old memberships lapse. According to plaintiff, this rule exacts a small toll on each person affected by it. That is the classic posture of a claim suitable for trial as a class action: each member has too little stake in the case to bring suit on their own, and, even if they did, each suit would challenge the lawfulness of the same policy. Rule 23 is designed to spare parties and the court the cost of that sort of duplicative litigation, and, thus, the proposed class should be certified.

1

I.      Standard of Review

In order to succeed on a motion for class certification, the plaintiff must prove that the proposed class meets all of the requirements set forth in Rule 23. *In re Initial Public Offering Secs. Litig.,* 471 F.3d 23, 41 (2d Cir. 2006).  Rule 23(a) sets forth four conditions for class certification: numerosity, commonality, typicality, and adequacy. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201– 02 (2d Cir. 2008).  In addition to those conditions, the plaintiff must also demonstrate that the class he seeks to certify is ascertainable; although that requirement is not inscribed in Rule 23(a), the need for a class to be ascertainable—i.e., the need for the class to "be readily identifiable so that the court can determine who is in the class, and thus, who is bound by the ruling"—is implicit in, and fundamental to, Rule 23's operation. *McBean v. City of New York*, 228 F.R.D. 487, 492 (S.D.N.Y. 2005).

Once the conditions of Rule 23(a) have been met, the plaintiff must demonstrate that the proposed class satisfies Rule 23(b)(3), which requires him to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The burden remains on the plaintiff to show that its proffered class satisfies all of the requirements of Rule 23. *McBean*, 228 F.R.D. at 492 (citing *Caridad v. Metro–N. Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999)).  Furthermore, the plaintiff must prove that the proposed class meets those requirements by a preponderance of the evidence, regardless of whether those requirements coincide with the merits of their claims. *Teamsters*, 546 F.3d at 202.

II.   Background

A.   AAA SNE and Policy Renewal

AAA SNE operates a travel company in Connecticut, Massachusetts, and Rhode Island.  AAA SNE offers its members a range of assistance with travel, from sending tow trucks when a car breaks down to arranging discounts at hotels.  To become a member, consumers fill out a simple form and pay an annual fee.  The Club sells three different levels of service—basic, plus, and premium.

Memberships last for exactly one year.  As the end of a membership year approaches, AAA SNE sends each member a series of notices warning of their membership's impending expiration. *See Defendant's Opposition to Class Certification ("Def. Opp."), Ex. C Mary Wyatt Affidavit,* ¶ 22-26.   These notices state the date that a membership will end.  *Def. Opp., Ex. D. Membership Renewal Notice.*  Once a membership lapses, AAA SNE continues to provide full benefits for a 15-day "grace period." *See Plaintiff's Memorandum of Law ("Plain. Memo."), Ex. 7 AAA Internal Policy.*  Members can still renew old memberships for ninety days after they expire without paying a fee or losing the benefits that accrue to longtime members.  After ninety days, customers must apply for a new membership and pay an initiation fee. *See Plain. Memo., Ex. 8 Internal Business Rule.*   If a member renews their membership at some point during the ninety-day window, AAA SNE treats the renewal as if it had occurred the day the old subscription expired. *Id.*  By way of example: If a membership lapsed on January 1, 2012, and a member renewed on February 1, 2012, AAA SNE will register the new membership as having commenced on that original expiration date, January 1, 2012. Members may renew by mail, over the phone, online, or in-person. *Wyatt Affidavit ¶ 14.* But in each instance, AAA SNE's policy is always the same; AAA SNE representatives

must follow uniform rules that they can access through an internal Club system called
"Navigator." *See Plain. Memo., Ex. 5 Donna Fernandes Deposition 12, 20.*  After
members renew, they receive new cards with new expiration dates. *See Def. Opp., Ex. C
New Membership Card*.

According to plaintiffs, members have no idea that their policy will be deemed to
have commenced on the day their old membership expires; they expect to receive twelve
full months of benefits from the day they pay for their memberships' renewal.  AAA
SNE's policy flouts that expectation because, in essence, it deprives members of some
portion of a full year of prospective benefits.  According to plaintiffs, AAA SNE never
explicitly informs members of its practice:  Its handbook sets out the terms of a
membership policy and never mentions the possibility of backdating, stating only that
after ninety days a member must pay an enrollment fee to renew.  *See Plain. Memo., Ex.
10 AAA SNE Handbook*.

### B.  Lindsay Held

Lindsay Held is the named plaintiff in this case, and he seeks certification of a
class of plaintiffs that "purchased and paid for a new term of AAA SNE membership
after their prior membership term expired, and whose new membership term was deemed
by AAA SNE to have begun on or about the prior expiration date."  Held first joined
AAA SNE in 2004. *See Def. Opp., Ex. A. Held Deposition at 76*.  On January 1, 2010, his
membership lapsed.  In February of that year, Held's car battery died.  He called AAA
SNE and asked if they would come to his home to jump start his car. *See Def. Opp., Ex. K
Held Renewal Call*.  The customer service representative advised him that his

membership had lapsed, and that he would have to renew his membership to receive service.

"That account is cancelled," she told Held, "[it] expired last month. We gave you 15 days." *Id.*

"What are the different options?" Held inquired.

"Pay today, get it out of the way," the representative replied and continued "you … will get four [service calls] the next following year." *Id.*

Held then provided his credit card and renewed his membership. *Id.*  When he received his new membership card, the stated expiration date of his membership was not in February of 2011—one year from the date of his call—it was in January of 2011—one year from the day his original policy expired. *See Def. Opp., Ex. C New Membership Card*.

Held has previous experience with retroactive renewal policies.  He briefly worked for plaintiff's counsel, Meiselman, Denlea, Packman, Carton & Eberz.  While there, Held worked on a similar class action case filed against Costco.  Held knew the named plaintiff in that case rather well – she was his sister, Rhonda. *See Def. Opp., Ex. A. Held Deposition at 43*.

III.   <u>Discussion</u>

As stated above, plaintiff must prove each of the requirements of both Rule 23(a) and Rule 23(b)(3).  Here, plaintiffs have made a simple but substantial factual showing: AAA SNE has a uniform, blanket policy that it applies to all members who attempt renewals after their prior memberships have expired. *Plain. Memo., Ex. 8 Internal Business Rule*.  AAA SNE advises its members of its renewal policy in form letters and

notices that are nearly identical, save for the personal information pasted in for each member. *Def. Opp. Ex. D. Membership Renewal Notice*.  And all Club representatives handling membership renewals follow a uniform business rule accessible through an internal system. *Plain. Memo., Ex. 8 Internal Business Rule* , *Plain. Memo., Ex. 5 Donna Fernandes Deposition 12, 20.*

Defendant does not contest these facts, but points to three factual problems that it argues should defeat class certification:  First, according to AAA SNE, some members of the class may have availed themselves of services between the time an old policy expired and the time of renewal.  Those members will not have suffered the alleged harm.  Second, because members renew in myriad ways, some will have learned of the backdating policies and some will have remained ignorant.  Those members who knew of the policy will have willingly renewed their membership despite the policy.  Third, Held has too much history with backdating lawsuits, and his prior experience will compromise his ability to adequately represent the class.  None of these arguments is supported by the record before me, nor would any of them present insurmountable hurdles.

A.  <u>Rule 23(a) Factors</u>

1.  <u>Numerosity</u>

The Second Circuit has previously noted that "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  In discovery, AAA SNE provided a tally of the number of members who renewed late. *See Plain. Memo., Ex. 17 Numbers of Late Renewals*.  The potential class members number in the hundreds of thousands. *Id.*  AAA SNE argues that this includes members that may not have been harmed – but that argument only relates to whether common

issues predominate. For the purposes of numerosity, courts take plaintiffs' claim as both meritorious and true, and assess whether the claims affect a class so large that joinder is impracticable. A six-figure class clearly satisfies that test.

### 2. Common Questions of Law or Fact

"Plaintiffs need not establish that all questions of law and fact among the putative class are identical." *Matyasovsky v. Hous. Auth. Of Bridgeport*, 226 F.R.D. 35, 41 (D. Conn. 2005). Instead, a plaintiff must only show that class members "suffered the same injury" and "their claims . . . depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). Here, plaintiff has identified a general policy that is applied across a class of people, and affects members of that class in a similar way: AAA SNE backdates every membership that is renewed within ninety days of an old membership's expiration, and, according to plaintiffs, it never explicitly informs members of the policy. *See Dupler v. Costco*, 249 F.R.D. 29, 37 (S.D.N.Y. 2008) (collecting cases holding that claims arising out of form contracts are especially appropriate for class actions).

Defendant points to two ways that class members' claims might differ from one another. First, as mentioned above, AAA SNE contends that some class members may have suffered no harm at all. The Club posits that there are two sub-classes of people within the proposed class. On the one hand, there are people who never used services during the gap between their expired membership and their new membership. Those members may have suffered a financial loss if they did not receive a full year of benefits from the day they renewed. On the other hand, there may be people who used their membership to get discounts after their membership lapsed but before they renewed.

Such benefits would be limited to standard rebates at hotels or discounts on tickets:  AAA SNE forces members with expired accounts to renew their memberships before they can receive roadside assistance or other Club-provided services. *See Plain. Memo., Ex. 2 Wyatt Depo at 201*.  And any AAA SNE representative who checked the company's records would presumably see that a membership lapsed fifteen days after the expiration date. *Plain Memo., Ex. 8 Internal Business Rule*.  But AAA SNE asserts that members might flash their AAA card to a third party and receive the benefits of membership. The Club argues that those members will have received benefits during the contested time period, and cannot argue that they have been harmed.

AAA SNE's dichotomy, however, is based entirely on speculation.  Maybe a customer representative working a Hertz desk, or a ticket seller at an Amtrak counter was handed a card, ignored the expiration date, and awarded a member a discount.  But there is no evidence in the record that any member received such a windfall.  Indeed, it is hard to see how that could happen:  AAA SNE would have to have some company practice or policy that created a loophole wide enough for members to exploit, like, for example, not taking their ID number off of a database checked by third parties, or instructing third parties to honor expired cards.  AAA SNE has provided no documentary evidence to support such a finding-- Mary Wyatt, head of customer service, asserts in her affidavit "Show Your Card" services remain available after the expiration date, but does not back-up her assertion with any corroborating evidence. *Def. Opp., Ex. C Wyatt affidavit at ¶ 30*.  This omission is especially striking given the detailed records of the backdating policy, which themselves make no mention of a grace period for "Show Your Card Services." *See Plain. Memo. Ex. 7 Internal Policy, Ex. 8 Internal Business Rule.*  Nor has

AAA SNE submitted any testimonial evidence from either a AAA SNE employee or a third party employee that documents some widespread understanding that expired cards should be treated as valid.  Absent some specific evidence, it is far more likely that an expired membership is always treated as expired.

Even if AAA SNE had evidence that members continue to receive discounts, it is not clear that such discounts would moot plaintiff's claim.  If some members received discounts from third parties using expired membership cards, then by definition they received extra benefits for a prior membership rather than prospective benefits for a membership that had yet to be renewed.  As a district court recently noted, in a backdating case "the theory of injury and damages is not based upon how many times a person was denied [benefits[ during the expired period, but rather is based on the alleged prospective denial of a full 12-month membership at the time of renewal of their annual membership." *Dupler*, 249 F.R.D. at 44 n4.  In other words, plaintiffs allege that they suffered a financial harm when they were deprived membership at the end of a 12-month membership, not when they were denied services during the time they had no membership at all.

Second, the Club argues that some members must have known about the policy of backdating.  Members can renew their policies through several avenues.  They can input information online.  They can call a service rep.  Or they can go to AAA SNE office and register in person.  Defendant asserts that this results in divergent experiences.  A service representative may have disclosed to some customers that their memberships would be deemed to have commenced in the past, while another may have omitted the fact.  Some members may have received a membership notice that disclosed the backdated renewal

date, and some may not have.  According to the defendant, in order to determine whether

a customer obtained such knowledge, the court would have to engage in fact-intensive

analysis of each member's history with AAA SNE.[1]

But as with its first argument, AAA SNE offers no evidence that class members

received different information regarding backdating.  Customer service representatives all

are given the same instructions on how to handle renewals; they find those instructions on

an internal system called "Navigator." *See Plain. Memo., Ex. 5 Donna Fernandes Depo.*

*at 12, 20*.  Given identical instructions, representatives likely gave identical advice to

members.  And AAA SNE has provided no basis to belie this reasonable conclusion: No

service representative submitted an affidavit stating that she does not hew to the

instructions provided to her.  In fact, the only transcript of a phone call reveals that

customer service representatives might not disclose the policy; when Held called for a

renewal, the representative did not inform him that his policy would be backdated.[2] *See*

*Def. Opp.*, *Ex. K Held Renewal Call*.  Defendant's evidence regarding written

communications also proves too little.  AAA SNE points out that every notice of renewal

contains the stated expiration date and renewal date, and that some members may have

imputed the policy from those terms.  Assuming this is true, it still does not prove that

members of the class had different experiences.  All would have received identical

---

[1] At oral argument, defendant's counsel compared this case to the facts in *Wal-Mart v. Dukes*, 131 S. Ct. 2541. *Transcript of Oral Argument* at 44:14, Doc. 62. But *Wal-Mart* presented the opposite set of facts. Because of Wal-Mart's peculiar corporate structure, local stores enjoyed broad discretion to determine personnel policy, almost like a franchisee. *Id* at 2554 .  Here, however, AAA SNE followed uniform rules set by a core group of managers.

[2] In addition, AAA SNE provided a call log documenting complaints and points to this log as evidence that members have disparate experiences.  But, with one exception, in every entry in the log that relates to backdating, customers appear to have called after they renewed to complain that they had no idea their expiration date would remain the same. *See Def. Opp., Ex. I Complaint Log* at 175452, 175771, 197205, 350475, 3960536, 390750, and 130626.   And in the one call in which a member was informed of the backdating policy, he refused to renew. *Id.* at 196808.

notices with identical disclosures.  The defendant simply has not provided any evidence that members received qualitatively different information.

In sum, the record contains no evidence that class members had variegated experiences such that a court must conduct a mini-trial into the specific way each member renewed a membership.  Plaintiffs have presented sufficient evidence to support a finding of commonality.

### 3.  Typicality

Plaintiff's claims must be typical of the class. Fed. R. Civ. P. 23(a)(3). This requirement is satisfied if the plaintiff shows that "the representative plaintiff's claims are based on the same legal theory and arise from the same practice or course of conduct as the other class members." *In re Playmobil*, 35 F. Supp. 2d 231, 241 (S.D.N.Y. 1998).  As discussed above, plaintiff has identified a policy that affected a class of people in a similar way, and that is sufficient to support a finding of typicality.

AAA SNE argues, however, that Held's claims are not "typical" because he knew too much about the issues involved prior to filing suit.  Held worked on several backdating cases as an attorney at the Meiselman firm, and must have known that companies routinely back date renewals.  He also renewed late several times, and must have noticed the problem each time he renewed.

Neither of these facts renders Held's case atypical.  Held has two basic claims in this case:  First, that the offer he accepted from AAA SNE was for a membership that ran for 12 months from the date of payment, and second, that AAA SNE failed to adequately disclose the backdating policy.  Held's previous knowledge has no effect on the second claim; either AAA SNE gave its customers adequate information or it did not.  To test the

11

first claim, the court or a jury will have to interpret the text of the Club Handbook and

other materials, and, where ambiguous, take into account any evidence that sheds light on

the parties' mutual understanding.  Held's experience with prior litigation may have

provoked a suspicion that AAA SNE might backdate his membership; on the other hand,

he may have felt assured that AAA SNE would have disclosed any backdating policy in

order to avoid litigation.[3]   In other words, the fact that Held knew of these claims

generally has no bearing on whether Held knew of AAA SNE's policy in this specific

case.[4]

### 4.   Adequacy of Representation

To adequately represent a class, a plaintiff must "have an interest in vigorously

pursuing the claims of the class, and . . . have no interests antagonistic to the interests of

other class members." *Denney v. Deutshce Bank AG*, 443 F.3d 253, 268 (2d Cir. 2008).

A class representative must also have qualified counsel, someone who is "experienced

---

[3] When AAA SNE deposed Held, he testified that his prior experience supported the latter expectation: "I'm a little shocked that there are companies still out there doing this practice when they see that other companies were quite unsuccessful in doing it." *Plain. Memo., Ex. 1 Held Depo at 67.*

[4] AAA SNE asserts in one sentence that there will be two defenses that will require individualized determination-- the voluntary payment doctrine and statute of limitations.  They do not explain why these defenses require individual trials. Neither appears prohibitive.  Classes are routinely limited to only those members whose claims fall within the statute of limitations.  It is not clear why this class would differ.

And plaintiffs have not submitted evidence that demonstrates that any plaintiff voluntarily paid for renewal knowing full well that his membership would be backdated. "The voluntary payment doctrine precludes a plaintiff from recovering payments 'made with full knowledge of the facts' and with a 'lack of diligence' in determining his contractual rights and obligations."  *Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009).  Held has testified he had no idea his membership would be backdated.  As stated above, call logs in this case indicate that customers complained that they did not know of the retroactive renewal policy. *See supra note 2.*  Even if Held or certain other plaintiffs were shown to have known of the policy, the defense is not so inextricably intertwined with the merits to make class adjudication impossible.  As the Second Circuit has noted, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, [class] requirements [are] usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *see also In re Visa Check/Master Money Antitrust Litig.*, 280 F. 3d 124, 138-40 (2d Cir. 2001) (noting that courts have "usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses").

and generally able to conduct litigation." *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).  Held submits that he is deeply invested in this suit; he, for example, attended the class certification hearing in person, and willingly submitted to a day-long deposition. *Transcript of Oral Argument* at 2:8, Doc. 62; *Plain. Memo., Ex. 1 Held Depo.*

The defendant does not challenge the Meiselman's firm's ability to litigate the case. *Transcript of Oral Argument* at 4:17, Doc. 62.  But it does, at least by implication, challenge Held's ability to defend the class members' interests.  AAA SNE's argument is essentially that Held is a ringer.  He knew he could bring a claim like this as a class action.  He had worked as a lawyer on similar cases.  He had helped his sister bring an almost identical suit in the past.  Rather than stumble upon his claim, he went looking for it.  He cannot credibly cast himself as a victim, and this will hinder his ability to put forward a persuasive case.

Though Held may not be an innocent, he is not conflicted.  As district courts in New York have noted, "the touchstone for denial of class action status [is] whether the plaintiff had an interest in the attorney's fee." *Malchman v. Davis*, 588 F. Supp. 1047, 1058 (S.D.N.Y. 1984).  Here, Held has no financial stake in litigating this case as a class action.  He is no longer at the firm, and will not benefit from any contingency fee the firm receives.  Absent some evidence of a conflict, plaintiffs have adequately shown that Held will vigorously pursue his claims.

5.  <u>Ascertainability</u>

Plaintiffs must demonstrate that a class is "readily identifiable so that the court can determine who is in the class, and thus, who is bound by the ruling." *McBean v. City*

*of New York*, 228 F.R.D. at 492. The Club was able to produce a tally of the number of people that renewed late. *See Plain. Memo., Ex. 17 Numbers of Late Renewals*.  There is no reason to believe the company has no record of who those members are.

    B.  Rule 23(b)(3) Factors

      1.  Predominance

Like the test for commonality, the standard for predominance requires that "resolution of some of the legal or factual questions … can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  Though the predominance inquiry mirrors the commonality question, predominance "is a more demanding criterion than the commonality inquiry under Rule 23(a)." *Dupler*, 249 F.R.D. at 43.

Here, defendant's challenges to predominance are identical to its attack on commonality. And even under a "more stringent standard," they still fail. 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1763 (2005).  AAA SNE has not proven that members of the proposed class had materially different experiences in negotiating their renewals.  The company subjected all to the same policy. All received identical written materials.  Some may have received different advice from customer service representatives, but AAA SNE had provided no proof at this stage that representatives provided different advice to different customers.  On this record, common questions of law are not only shared, they predominate.

      2.  Superiority of Class Action

Rule 23(b)(3) lists four factors to consider when assessing the utility of a class action: (1) the class members' interests in individually controlling litigation (2) the extent and nature of any litigation already begun (3) desirability of concentrating litigation in this forum, and (4) likely difficulties in managing a class action.

AAA SNE repeats its arguments about commonality and typicality to cast this litigation as unwieldy and unmanageable. As described above, none of those arguments are supported by the record. In addition, this case seems ripe for class-wide adjudication: Each individual member suffered such a small loss (generally between 8 and 24 dollars) that none has an incentive to litigate the action on their own. Every member was subject to the same policy, and would present nearly identical evidence proving his or her claim. The court will expend far fewer resources by reviewing their claims together.

IV.    Conclusion

For the reasons set forth, plaintiffs' motion for class certification (doc. #36) is hereby granted. The class shall be defined as:

> All persons who, at any time on or after January 19, 2005, purchased and paid for a new term of AAA SNE membership after their prior membership term expired, and whose new membership term was deemed by AAA SNE to have begun on or about the prior expiration date. Excluded from the Class are AAA SNE; any parent, subsidiary, or affiliate of AAA SNE; any entity in which AAA SNE has or had a controlling interest, or which AAA SNE otherwise controls or controlled; and any officer, director, employee, predecessor, successor, or assignee of AAA SNE. AAA SNE includes any predecessor or successor entities, including the Connecticut Motor Club which merged with AAA SNE on July 1, 2008.

Plaintiffs shall send a notice and consent documents to members of this class. The parties shall confer regarding the proper form of the notice to be sent to the potential plaintiffs,

15

in light of this Ruling, and shall submit to the court their agreed-upon notice, or if no agreement their respective proposed forms of notice, by October, 12, 2012.

It is so ordered.

Dated at Bridgeport, Connecticut, this 11th day of September 2012.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge