UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------x
LINDSAY HELD, on behalf of himself and  :     Civil Action No. 3:11-cv 00105-SRU
all others similarly situated,            :
                                      :
                     Plaintiff,  :
                                        :
       against  -              :
                                        :
AAA SOUTHERN NEW ENGLAND,    :
                                        :
                    Defendant.  :
------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND EXPENSES, AND INCENTIVE AWARD

DENLEA & CARTON LLP
Jeffrey I. Carton
Robert J. Berg
One N. Broadway, 5th Floor
White Plains, NY 10601
(914) 920-7400
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

I.    DESCRIPTION OF THE LITIGATION ....................................................... 3

      Factual Background ............................................................................ 3

      Class Representative Lindsay Held .................................................... 4

      Procedural History .............................................................................. 5

      Settlement Class Certification and Definition ...................................... 7

II.   THE SETTLEMENT ................................................................................. 7

      Counsel Conducted Intense Arm's-Length Negotiations ..................... 7

      Terms of the Proposed Settlement ..................................................... 8

            1.    Economic Consideration ........................................... 9

            2.    Non-Economic Relief ............................................... 13

            3.    Incentive Award ....................................................... 13

            4.    Attorneys' Fees, Costs, and Expenses .................... 14

            5.    Considerations Underlying the Settlement ............... 14

      Class Notice and Responses ............................................................ 16

ARGUMENT ..................................................................................................... 17

I.    THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE
      IT IS FAIR, REASONABLE, AND ADEQUATE ....................................... 17

## TABLE OF CONTENTS
### (Cont'd)

**Page**

  A. Public Policy Strongly Favors Class Action Settlements ...........................17

  B. The Settlement Is Procedurally Fair ...........................................19

  C. The Settlement Is Substantively Fair.......................................23

    1. The Complexity, Expense and Likely Duration of the
     Litigation Supports Approval of the Settlement..............................24

    2. The Reaction of the Class to the Settlement
     Is Overwhelmingly Favorable ...........................................26

    3. The State of the Proceedings and the Amount
     Of Discovery Completed...............................................28

    4, 5 & 6. Litigation Risks ...........................................30

      a. Liability Risk .............................................30

      b. Damages Risk...........................................31

      c. Risk of Maintaining the Class...............................33

    7. The Defendant's Ability to Withstand a Greater Judgment ...........33

    8 & 9. The Range of Reasonableness...................................34

II. CLASS CERTIFICATION...................................................38

III. THE COURT SHOULD APPROVE THE REQUESTED AWARD OF
  ATTORNEYS' FEES TO BE PAID BY AAA SNE TO CLASS COUNSEL...........38

  A. Class Counsel Are Entitled To Compensation..........................38

  B. The Second Circuit Has Approved Both the Percentage
   Method and the Lodestar Method, but the Percentage
   Method is Preferred ...................................................41

# TABLE OF CONTENTS
(Cont'd)

**Page**

    C.    AAA SNE Will Pay Class Counsel's Fees At No
           Cost to the Class ....................................................................43

    D.    The Requested Fee Is Justified Under the Percentage Method ...............45

           1.  The Full Value of the Settlement Should Be Considered ...................46

           2.  The Fee Award Is Supported by the Goldberger Factors...................48

                  a.    The Time and Labor Expended Counsel ..............................48

                  b.    The Magnitude and Complexity of the Litigation...................50

                  c.    The Risk of the Litigation .......................................................53

                  d.    The Quality of Representation ...............................................55

                  e.    The Requested Fee in Relation to the Settlement ................56

                  f.    Public Policy Considerations .................................................58

    E.    The Fee Is Justified Under the Lodestar/Multiplier Method .....................58

    F.    The Reaction of the Class Is Overwhelmingly Favorable .........................62

IV.    INCENTIVE AWARD..........................................................................63

V.    THE SINGLE OBJECTION IS BASELESS AND DOES NOT JUSTIFY
    SCUTTLING A FAIR AND REASONABLE SETTLEMENT NEGOTIATED
    AT ARM'S LENGTH...........................................................................66

CONCLUSION.................................................................................68

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page**

*Adair v. Bristol Technology Sys.*,
   No. 97 Civ. 1037878 Dist. LEXIS 17627(S.D.N.Y. Nov. 16, 1999) ......................56, 57

*Ahlquist v. Bimbo Foods Bakeries Distrib., Inc.*,
   No. 3:12-cv-1272 (SRU),
   2013 U.S. Dist. LEXIS 87919 (D. Conn. June 24, 2013) ...........................................20

*Ayzelman v. Statewide Credit Servs. Corp.*,
   242 F.R.D. 23 (E.D.N.Y. 2007) ....................................................................20, 26, 33

*Banyai v. Mazur*,
   *00 Civ. 9806,* 2008 WL 5110912 (S.D.N.Y. Dec. 2, 2008).............................31, 32, 40

*Becher v. Long Island Lighting Co.*,
   64 Supp. 2d 174 (E.D.N.Y. 1999)...............................................................................20

*Bezio v. Gen. Elec. Co.*,
   No. 06cv381 (GLS/DRH) 2009 WL 2426003 (N.D.N.Y. Aug. 6, 2009)....................46

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ...................................................................................................38

*Bourlas v. Davis Law Assocs.*,
   237 F.R.D. 345 (E.D.N.Y. 2006)................................................................................18

*Breiterman v. Roper Corp.*,
   No. 88 Civ. 2138(JMC) 1990 WL 15535 (S.D.N.Y. Jan. 12, 1990). ..........................43

*Caldor, Inc. v. Heslin*,
   215 Conn. 590, 577 A.2d 1009 (1990) ......................................................................35

*Cavalieri v. Gen. Elec. Co.*,
   No. 06cv315 (GLS/DRH) 2009 WL 2426001
   (N.D.N.Y. Aug. 6, 2009)......................................................................................44, 46

*Chemi v. Champion Mortgage*,
   No. 2:05-cv-1238 (WHW) 2009 WL 1470429 (D.N.J. May 26, 2009). ....................62

*Cinelli v. MCS Claim Servs., Inc.*,
   236 F.R.D.118 (E.D.N.Y. 2006).......................................................................... 28-29

**TABLE OF AUTHORITIES**
(Cont'd)

**Cases**                                                                                                     **Page**

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ............................................................................ *passim*

*Cohen v. Apache Corp.,*
  No. 89 Civ. 0076 (PNL), 1993 U.S. Dist. LEXIS 5211 (S.D.N.Y. Apr. 21, 1993) ........56

*Cohn v. Nelson,*
  375 Supp. 2d 844 (E.D. Mo. 2005) ..........................................................................45

*Cosgrove v. Sullivan,*
  759 F. Supp. 166 (S.D.N.Y. 1991) ......................................................................47, 61

*D'Amato v. Deutsche Bank,*
  235 F.2d 78 (2d Cir. 2001) ............................................................................. *passim*

*Denney v. Jenkins Gilchrist,*
  230 F.R.D. 317 (S.D.N.Y. 2005),
  aff'd in part and vacated in part on other grounds,
  443 F. 3d 253 (2nd Cir. 2006). ..................................................................................18

*DiGiacomo v. Plains All Am. Pipeline,*
  2001 WL 34633373 (S.D. Fla. Dec. 19, 2001) ..........................................................61

*Dornberger v. Metropolitan Life Ins. Co.*
  203 F.R.D. 118 S.D.N.Y. 2001) ....................................................................63, 65, 66

*Eltman v. Grandma Lee's Inc.,*
  1986 WL 53400 (E.D.N.Y. May 28, 1986) ................................................................56

*Farinella v. PayPal, Inc.,*
  611 F. Supp. 2d 250 (E.D.N.Y. 2009) .......................................................................43

*Fears v. Wilhelmina Modeling Agency, Inc.,*
  No. 02 Civ. 491(HB), 2005 WL 1041134 (S.D.N.Y. May 5, 2005) .............................66

*Feerer v. Amoco Prod. Co.,*
  No. 95-0012 JCIWWD, 1998 U.S. Dist. LEXIS 22248
  (D.N.M. May 28, 1998) ..............................................................................................64

*Frank v. Eastman Kodak Co.,*
  228 F.R.D. 174 (W.D.N.Y. 2005) ..............................................................................64

## TABLE OF AUTHORITIES
(Cont'd)

**Cases**                                                                                                     **Page**

*Gilliam v. Addicts Rehabilitation Ctr. Fund,*
   05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016
   (S.D.N.Y. Mar. 24, 2008) ............................................................................56

*Goldberger v. Integrated Resources, Inc.,*
   209 F.3d 43 (2d Cir. 2000) ................................................................. *passim*

*Greene v. Emersons Ltd.,*
   1987 WL 11558 (S.D.N.Y. May 20, 1987) .................................................57

*Hall v. Cole,*
   412 U.S. 1 (1973) .......................................................................................38

*Hanrahan v. Britt,*
   174 F.R.D. 356 (E.D. Pa. 1997) ................................................................47

*Held v. AAA Southern New England,*
   No. 11 Civ. 00105 (SRU) 2012 WL 4023367 (D. Conn. Sept. 12, 2012) .....................6

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ...................................................................................45

*Hicks v. Stanley,*
   No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............42, 57

*In re Apple Computer, Inc. Deriv. Litig.,*
   No. C 06-4128 JF (HRL), 2008 WL 4820784
   (N.D. Cal. Nov. 5, 2008) ............................................................................45

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................26, 27, 54

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
   No.02 Civ. 5575, 2006 U.S. Dist LEXIS 78101
   (S.D.N.Y. Sept 28, 2006) ............................................................26, 42, 63

*In re APA Teleservices Inc. Sec. Litig.,*
   No. 97 Civ. 9145 (S.D.N.Y. Dec.10, 2001) ..............................................57

*In re Aquila ERISA Litig.,*
   No. 04-00865-CV-DW, 2007 WL 4244994 (W.D. Mo. Nov. 29, 2007)......................65

## TABLE OF AUTHORITIES
(Cont'd)

**Cases**     **Page**

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000) .........................................................29

*In re Blech Sec. Litig.,*
No. 94 Civ. 7696 (RWS), 2002 U.S. Dist. LEXIS 23170
(S.D.N.Y. Dec. 4, 2002) ...............................................................................56

*In re Brown Co. Sec. Litig.,*
355 F. Supp. 574 (S.D.N.Y.1973) ...............................................................53

*In re Charter Comms., Inc. Sec. Litig.,*
No. MDL 1506, 2005 WL 4045741 (ED. Mo. 2005) ...................................61

*In re Crayfish Co. Sec. Litig.,*
No. 00 6766 (S.D.N.Y. July 28, 2004) .........................................................57

*In re Doral Fin. Corp. Sec. Litig.,*
No. 05-1706 (S.D.N.Y. July 1, 2007).........................................................61

*In re Emerson S'holder Litig.,*
1992 U.S. Dist. LEXIS 20934 (E.D.N.Y. April 16, 1992) .............................57

*In re EVCI Career Colleges Holding Corp. Sec. Litig.,*
No. 05 Civ. 10240 (CM) 2007 U.S. Dist.
LEXIS 57928 (S.D.N.Y. July 27, 2007) .......................................................20

*In re Franklin Nat'l Bank Sec. Litig.,*
[1980 Transfer Binder] Fed. Sec. L.Rep. (CCH)
¶97,571 (E.D.N.Y. June 24, 1980) ............................................................57

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004)............................................22, 24, 26, 59

*In re Gulf Oil/Cities Serv. Tender Offer Litig.,*
142 F.R.D. 588 (S.D.N.Y. 1992) .................................................................37

*In re Luxottica Group S.p.A. Sec. Litig.,*
233 F.R.D.306 (E.D.N.Y. 2006) ..................................................................18

*In re NASDAQ Market-Makers Antitrust Litig.,*
187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................28, 59, 60

## TABLE OF AUTHORITIES
(Cont'd)

**Cases**                                                              **Page**

*In re New York City Mun. Sec. Litig.,*
1984 WL 2411 (S.D.N.Y. March 28, 1984) .................................................56

*In re Nortel Networks Corp. Sec. Litig.,*
539 F.3d 129 (2d Cir. 2008) ......................................................................41

*In re PaineWebber Ltd. P'ships Litig.,*
147 F.3d 132 (2d Cir. 1998) ......................................................................17

*In re PaineWebber Ltd. P'ships Litig.,*
171 F.RD. 104 (S.D.N.Y. 1997) ...........................................................27, 34

*In re Plug Power, Inc. Sec. Litig.,*
No. 00-5553 (E.D.N.Y. Apr. 29, 2005) .....................................................57

*In re Prudential Sec. P'ships Litig.,*
163 F.RD. 200 (S.D.N.Y. 1995) ...............................................................18

*In re Publ'n Paper Antitrust Litig.,*
Docket No. 3:04 MD 1631 (SRU)
2009 U.S. Dist. LEXIS 66654 (D. Conn. Jul. 30, 2009) ......................38, 65

*In re RJR Nabisco Sec. Litig.,*
No. 88 Civ. 7905 (MBM) 1992 WL 210138
(S.D.N.Y. Aug. 24,1992) ...........................................................................61

*In re Sony SXRD Rear Projection Television Class Action Litig.,*
No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ............... *passim*

*In re Telik, Inc. Sec. Litig.,*
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................. *passim*

*In re Top Tankers, Inc. Sec. Litig.,*
No. 06 Civ. 13761(CM) 2008 WL 2944620
(S.D.N.Y. July 31, 2008) ............................................................... *passim*

*In re Veeco Instruments Sec. Litig.,*
No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629
(S.D.N.Y. Nov. 7, 2007) .............................................................................20

# TABLE OF AUTHORITIES
(Cont'd)

**Cases**                                                                    **Page**

*In re Visa Check/Mastermoney Antitrust Litig.,*
297 F. Supp. 2d 503 (E.D.N.Y. 2003) ........................................................28

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.,*
364 F. Supp. 2d 980 (D. Minn. Apr. 8, 2005). ........................................61, 62

*Ingram v. Coca-Cola Co.,*
200 F.R.D. 685 (N.D. Ga. 2001) ..........................................................45, 47

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
671 F. Supp. 819 (D. Mass. 1987) ...........................................................45

*Macedon. Church v. Lancaster Hotel, LP,*
Case No. 05-0153 (TLM), 2011 U.S. Dist. LEXIS 62063
(D. Conn. June 9, 2011) ......................................................................17

*Maley v. Del Global Techs. Corp.,*
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................. *passim*

*Masters v. Wilhelmina Modeling Agency, Inc.,*
473 F.3d 423 (2d Cir. 2007) .................................................................66

*McBean v. City of New York,*
233 F.R.D. 377 (S.D.N.Y. 2006) ...................................................... *passim*

*Mentor v. Imperial Parking Sys.,*
05 Civ 7993 (WHP), 2010 U.S. Dist. LEXIS 132831
(S.D.N.Y. Dec. 15, 2010) .....................................................................63

*Mills v. Electric Auto Lite Co.,*
396 U.S. 375 (1970) ...........................................................................38

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899
(S.D.N.Y. Mar. 31, 2009) .....................................................................56

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.,*
No. 05-11148, 2009 WL 2408560 (D. Mass. August 3, 2009). ....................61

*Newman v. Carabiner Inn, Inc.,*
No. 99 Civ 2271 (S.D.N.Y. Oct. 19, 2001) ..............................................61

ix

## TABLE OF AUTHORITIES
(Cont'd)

**Cases**                                                                                           **Page**

*Newman v. Stein,*
    464 F.2d 689 (2d Cir.1972) ........................................................................ 19, 34

*Parker v. Time Warner Ent't Co., LP.,*
    No. 98-CV-04265 (ILG) (JMA), 2009 WL 1940791
    (E.D.N.Y. July 6, 2009) ....................................................................................... 19

*Rabin v. Concord Assets Group, Inc.,*
    No. 89 Civ. 6130 (LBS), 1991 WL 275757
    (S.D.N.Y. Dec. 19, 1991) ................................................................................... 61

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,*
    No. 94 Civ. 5587(PKL), 2003 WL 21136726 (S.D.N.Y. May 15, 2003) .............. 57, 66

*Roberts v. Texaco, Inc.,*
    979 F. Supp. 185 (S.D.N.Y. 1976) ............................................................. 61, 64, 65

*Savoie v. Merchants Bank,*
    166 F.3d 456 (2d. Cir. 1999) .............................................................................. 59

*Schnall v. Annuity & Life Re (Holdings), Ltd.,*
    No. 02-2133 (D. Conn. Jan. 21, 2005) ................................................................ 57

*Sheppard v. Consolidated Edison Co. of N.Y.,*
    No. 94-CV-0403 (JG), 2002 WL 2003206
    (E.D.N.Y. Aug. 1, 2002) .................................................................................... 66

*Spann v. AOL Time Warner, Inc.,*
    No. 02 Civ. 8238DLC, 2005 WL1330937 (June 7, 2005) ........................................ 63

*Steinberg v. Nationwide Mut. Ins. Co.,*
    612 F. Supp. 2d 219 (E.D.N.Y. 2009) ................................................................. 44

*Steiner v. Williams,*
    No. 99 CIV 101186(JSM), 2001 WL 604035 (S.D.N.Y. May 31, 2001) .................... 39

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................. 56

## TABLE OF AUTHORITIES
(Cont'd)

**Cases**                                                                **Page**

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.,*
   No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608
   (S.D.N.Y. May 14, 2004) .........................................................................54

*Trustees v. Greenough,*
   105 U.S. 527 (1881)............................................................................38

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005)................................................................. *passim*

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982) ...................................................................18

*Williams v. National Sec. Ins. Co.,*
   237 F.R.D. 685 (M.D. Ala. 2006)............................................................47

*Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.,*
   No. 76 Civ. 2125, 2005 U.S. Dist LEXIS 5200
   (S.D.N.Y. Mar. 31, 2005) .....................................................................60

**Other Authorities**

Attorney Fee Awards § 2.06 (2d ed.1993)....................................................61

Richard Posner, Economic Analysis of Law (2d ed. 1984).........................................40

Stuart T. Rossman & Charles Delbaum,
Consumer Class Actions (6th ed. 2006). ...................................................39

**Rules**

Fed. R. Civ. P. 23(h).............................................................................43

Fed. R. Civ. P. 23(e)(2)..........................................................................19

Plaintiff and Class Representative Lindsay Held, on behalf of the Settlement Class (the "Class"[1]), respectfully submits this Memorandum of Law in Support of his Motion for Final Approval of Class Action Settlement, Attorneys' Fees, and Incentive Award.

## PRELIMINARY STATEMENT

This class action settlement provides tangible economic benefits to over one million members of AAA Southern New England ("AAA SNE") and ensures a clear and conspicuous disclosure of AAA SNE's membership renewal policy to millions of current and prospective AAA SNE members. The Settlement is now ripe for final approval. After more than two years of hard-fought and, at times, contentious litigation, a settlement was reached in which (i) AAA SNE will clarify its disclosure, (ii) more than $6 million in extended membership benefits will be provided to Class Members, and (iii) Class Counsel will be compensated by AAA SNE for counsel's skillful and energetic prosecution of the case without in any way diminishing or eroding the recovery that has otherwise been obtained for the Class ("the Settlement").

The Settlement has received the overwhelming approval of more than two million Class Members to whom notice of the Settlement was distributed. Notice was sent pursuant to the Class Action Fairness Act, and no objection was received from the Attorneys General or appropriate governmental agencies. Because the Settlement readily satisfies all applicable legal standards, the Court's final approval should be granted and the parties should be allowed to consummate their resolution

---

[1] Capitalized terms used in this memorandum, not otherwise defined, refer to defined terms in the Settlement Agreement.

of this action.

The crux of this dispute concerns whether AAA SNE adequately disclosed its policy of using a member's prior expiration date as the commencement date for the renewal membership term for those members who paid the renewal membership dues late during the ninety (90) day period after such member's prior expiration date. After discovery, the Court certified this matter to proceed on behalf of a Class of AAA SNE members.  The Defendant petitioned for interlocutory review under Rule 23(f), which the Second Circuit Court of Appeals denied.

At that point, as the parties and the Court were addressing a program for disseminating a notice of the action to the Class, the parties initiated settlement discussions.  These settlement discussions eventually proved fruitful, and the parties negotiated a Settlement, which provides, among other things, in excess of $6 million in benefits to Class Members, and grants finality and releases to AAA SNE.

On April 29, 2013, the Court granted preliminary approval of the Settlement and directed that notice be disseminated to the more than two million Class Members whose interests are affected by the proposed resolution.  *Of the more than two million Class Members who received notice of the proposed settlement, only one Class member has objected to the Settlement, and just 166 individuals elected to opt out.*[2]  As set forth below, the Settlement is both procedurally and substantively fair,

---

[2]  A review of the opt out notices (which are not properly before the Court as these AAA SNE members are no longer Class Members and have not filed objections) does not suggest dissatisfaction with the terms and conditions of the proposed settlement or otherwise indicate a belief that the settlement is somehow unfair to Class Members.  Rather, to the extent any unifying theme can be gleaned from the opt out notices, it is that certain Class Members are satisfied with their AAA SNE membership and do not take issue with the membership renewal policy at issue in this case.

as demonstrated by the reaction of the Class, and as measured against the backdrop of numerous other class actions, reasonable and adequate. The Settlement conveys meaningful benefits to the Class. Accordingly, Plaintiff respectfully submits that the Settlement should receive final approval and that the terms of the Settlement should be enforced without further delay.

## DESCRIPTION OF THE LITIGATION

### Factual Background

AAA SNE is a not-for-profit Delaware corporation, with its headquarters located in Providence, Rhode Island. AAA SNE is one of the regional motor club affiliates of the American Automobile Association, Inc. AAA SNE serves over three million members in Rhode Island and Massachusetts, including Greater Boston, Worcester, Berkshire County, and Cape Cod, and in the following counties in Connecticut: New Haven, Fairfield, and Litchfield, as well as the following counties in New Jersey: Morris, Essex, and Union. In addition to its roadside assistance programs, AAA SNE makes available to its members an array of travel, insurance, and financial products and services, as well as discount programs.

AAA SNE offers three levels of paid memberships: Basic Membership, Plus Membership, and Premier Membership. The Basic Membership provides members with all the standard privileges, benefits, and services offered by AAA SNE. Plus Membership, which provides upgraded privileges, benefits, and services, is available for an additional fee to a member in good standing. Premier Membership, the highest level of membership, is available for a larger fee to a person who has been a Plus Member for at least one year and who has not incurred more than four service

calls for the last two consecutive years.  An Associate Membership is available to other persons of driving age living in the same residence as the Basic, Plus, or Premier Member.  There must be at least a Basic Membership in the household before an Associate Member may enroll, and an Associate Member receives a separate membership card and is entitled to all the privileges, benefits, and services available, but at a reduced rate.  Memberships, regardless of level, are for one year, and become active once payment is received.  A new member enrollment fee of $15 is charged to new Basic Members, and a new member enrollment fee of $5 is charged to new Associate Members.

Plaintiff alleged that AAA SNE did not adequately disclose its policy of using a member's prior expiration date as the commencement date for the renewal membership term for those members who paid the renewal membership dues late during the ninety (90) day period after such members' prior expiration date.  The Plaintiff further alleged that such actions breached members' contracts with AAA SNE, violated consumer protection laws, and resulted in AAA SNE's unjust enrichment.  AAA SNE denies that it did anything wrong, and has vigorously defended against Plaintiff's allegations.

### Class Representative Lindsay Held

Lindsay Held, a resident of Ridgefield, Connecticut, first joined AAA SNE in or about 2004, and he renewed his membership late periodically until 2011.  Mr. Held purchased an Associate membership for his wife in or about 2008, and renewed that membership late periodically as well.  On or about February 7, 2010, Mr. Held paid AAA SNE the full annual renewal fee for both himself and his wife, expecting that

their memberships would remain active for twelve (12) months following the date of his renewal.  Unbeknownst to Mr. Held, however, instead of providing twelve full months of membership commencing on the transaction date, AAA SNE used his prior expiration date as the commencement date for their renewal membership term.  Mr. Held's new period of membership provided Mr. Held and his wife with twelve (12) months of membership from January 1, 2010, which was the date when their memberships had expired, rather than twelve (12) months of membership from the renewal date of February 7, 2010.

## Procedural History

Mr. Held filed this action as a class action on January 19, 2011.  AAA SNE filed its Answer and Affirmative Defenses on March 4, 2011. The Parties then engaged in discovery relating to both Class certification and the merits.  Initial disclosures were exchanged pursuant to Rule 26(a)(1); documents were requested and produced; and interrogatories were propounded and answered.  AAA SNE's counsel deposed Mr. Held on June 17, 2011 for a full day.

After reviewing more than 100,000 pages of documents produced by AAA SNE and after reviewing AAA SNE's substantive responses to interrogatories, Plaintiff's counsel deposed five AAA SNE witnesses in Providence, Rhode Island. AAA SNE's Senior Vice President, Marketing, was deposed for three full days. Plaintiff's counsel also deposed AAA SNE's Chief Financial Officer, and three other AAA SNE employees.  At that point, fact discovery was closed.  Only limited expert discovery related to damages issues remained.

On February 15, 2012, Mr. Held filed his Motion for Class Certification and

Appointment of Class Counsel, with a supporting brief, certifications, and exhibits. After vigorous and lengthy opposition by AAA SNE, and a reply by Mr. Held, the Court held a hearing on Plaintiff's Class certification motion on August 17, 2012.  On September 12, 2012, the Court issued its Ruling and Order on Motion for Class Certification, *Held v. AAA Southern New England*, No. 3:11-cv 00105(SRU), 2012 WL 4023367 (D. Conn. Sept. 12, 2012).  The Court certified the proposed Class, approved Mr. Held as Class representative, and appointed Class Counsel.

On September 26, 2012, AAA SNE moved in the Second Circuit Court of Appeals for leave to appeal the Court's decision certifying the action as a class action pursuant to Rule 23(f).  Thereafter, on October 1, 2012, Defendant moved this Court for a stay pending appellate resolution of Defendant's petition to appeal.  On October 11, 2012, this Court denied Defendant's motion for a stay.  On January 30, 2013, the Second Circuit Court of Appeals denied Defendant's motion for leave to appeal the Class certification order.

On February 1, 2013, this Court held a lengthy telephonic hearing to discuss a plan to notify the Class of the pendency of the certified class action and to address Defendant's effort to reopen fact discovery.  The Court directed the parties to submit a proposed notice of pendency and scheduling order.  The Court issued a Memorandum of its rulings on February 4, 2013.

Following the February 1, 2013 Court conference, the parties began serious settlement discussions.  After two lengthy, in-person negotiating sessions held in New York, which included the in-person participation of Defendant's General Counsel, the parties agreed on a Term Sheet for settling the action.  The parties then

negotiated the full terms of the Stipulation of Settlement.  The parties presented the

proposed Settlement to the Court at a hearing on April 26, 2013, and the Court

entered the Order of Preliminary Approval on April 29, 2013.

**Settlement Class Certification and Definition**

The Parties have agreed to settle this action on behalf of present and former

members of AAA SNE, affording relief to more than one million present and former

AAA SNE members (and precluding future claims by Class Members against AAA

SNE on the same causes of action).  Accordingly, Mr. Held requests, and AAA SNE

consents to, the certification of a Settlement Class defined as:

> All Persons who, at any time on or after January 19, 2005, renewed
> their AAA SNE membership and paid their renewal membership
> dues after expiration of their prior membership expiration date, and
> whose new membership term was deemed by AAA SNE to have
> begun on or about the prior expiration date.  Subject to the
> foregoing, the Class includes persons who were members of
> Connecticut Motor Club or AAA Merrimack Valley, Inc., and who
> otherwise fall within the definition of a Class Member.  The Class
> does not include persons who were members of New Jersey
> Automobile Club.  All federal judges and members of their families
> within the first degree of consanguinity, and current and former
> employees, officers and directors of AAA SNE are excluded from
> the Class.

**II.      THE SETTLEMENT**

**Counsel Conducted Intense Arm's-Length Negotiations**

Following the Court conference on February 1, 2013, counsel for the parties

began settlement discussions.  Class Counsel Denlea & Carton LLP ("D&C") and

AAA SNE's counsel held exploratory telephonic settlement discussions, which were

followed by an all-day, in-person meeting in New York on February 28, 2013 in which

AAA SNE's General Counsel participated.  At that meeting, D&C outlined its view of

the merits of the case and made an initial settlement demand.  AAA SNE's counsel

discussed their view of the case, and made a counter-proposal.  Contentious but

constructive discussions continued well into the afternoon, and the parties adjourned

so that AAA SNE could gather additional factual information requested by D&C.

Because the settlement discussions were productive, the parties agreed to re-

convene and continue discussions the following week.

Counsel for the parties met again in New York on March 6, 2013 for another

round of contentious settlement discussions.  By the end of the day, after the

exchange of numerous proposals and counterproposals, counsel were able to agree

upon the terms of a proposed Settlement.  Upon the signing of a Term Sheet, the

parties notified the Court of the proposed Settlement.  Thereafter, the parties

negotiated the terms of the Settlement Agreement and exhibits.

As described more fully below, the Settlement includes tangible economic

benefits to Settlement Class Members whose memberships were affected by the

Renewal Policy during the Class Period, and provides a revised and conspicuous

disclosure of AAA SNE's Renewal Policy.

**Terms of the Proposed Settlement**

The complete terms of the Settlement are set forth in the Settlement

Agreement.  In summary, pursuant to the Settlement, AAA SNE will provide the

substantial economic benefits to the Settlement Class outlined below.  Many Class

Members who are currently AAA SNE members will receive thirty (30) or sixty (60)

membership days added to the end of their next renewal membership.  Many Class

Members who are former AAA SNE members will be able to rejoin AAA SNE without

paying the new member enrollment fee and will receive thirty (30) or sixty (60) membership days added to the end of their new memberships.  The economic benefits of the Settlement are reasonably calculated to be worth in excess of $6 million.

The Settlement also provides for substantial non-economic benefits. Importantly, AAA SNE will clarify its Renewal Policy in its Member Handbook (or other AAA SNE equivalent literature which sets forth membership terms and conditions), on its website, and in the first reminder mailing sent to members whose memberships have just expired.  AAA SNE commits to maintaining these new disclosures for not less than three years.  (As a practical matter, Class Counsel expects that once these new disclosures have been implemented, it is unlikely that AAA SNE will revert to the disclosures (or lack thereof) that led to this lawsuit even after the three year period has expired).

In return for the benefits provided to Class Members under the Settlement, AAA SNE will receive a release of all claims relating to its Renewal Policy on behalf of the Settlement Class.

## 1.  Economic Consideration

Under the Settlement, AAA SNE will provide in excess of $6 million worth of extended membership terms to more than one million members of the Settlement Class.  Eligible Class Members will receive either thirty (30) or sixty (60) days of additional membership privileges, depending on how long a period of membership they allegedly lost as a result of the Renewal Policy.  The economic relief a Class Member receives will be determined by the number of days a Class Member paid his

or her membership dues past the expiration date during the Class Period.  If a Class

Member has renewed late multiple times, an average of the Class Member's Days

Late will be used ("Average Days Late").  Once a Class Member's Days Late or

Average Days Late has been determined, Class Members will be placed in the

following categories and receive the corresponding additional membership days:

> Current and former AAA SNE members who renewed late between zero (0) and fifteen (15) days will receive zero (0) additional membership days.

> Current and former AAA SNE members who renewed late between sixteen (16) and forty-five (45) days will receive thirty (30) additional membership days.[3]

> Current and former AAA SNE members who renewed late forty-six (46) or more days will receive sixty (60) membership days.

> Current AAA SNE members will have their additional membership days added to the end of their next membership renewal period.

> Former AAA SNE members will have their additional membership days added to the end of their new membership period once they rejoin as part of this Settlement, and will not be charged an enrollment fee.

Importantly, qualifying current AAA SNE members will automatically be

provided with their additional membership days at the end of their current

memberships when they next renew.  *Unlike in most class action settlements, those*

*qualifying current Class Members will not have to file a claim form in order to obtain*

*their additional membership days.  Rather, the settlement benefits will be self-*

*effectuating, restoring valuable membership days to Class Members who were*

*allegedly previously deprived of periods of their membership.*

Qualifying former AAA SNE members will receive their additional membership

---

[3]     There are certain former AAA SNE members who were members of the Connecticut Motor Club for whom AAA SNE does not have complete information regarding the numbers of days late that he or she paid.  In those instances, AAA SNE will provide thirty (30) additional membership days.

days when they rejoin, and those days will be added to the end of their new twelve-month membership.  Moreover, former AAA SNE members who rejoin pursuant to this Settlement will have the normal $15 enrollment fee (or $5 enrollment fee for Associate members) waived by AAA SNE.

Class Members who renewed between zero (0) and fifteen (15) days late receive no additional membership days for three reasons.  *First*, when a person joins AAA SNE as a new member, he or she is given an expiration date twelve (12) months from either the 15th of the month or the last day of the month he or she joins, depending upon the calendar day the new member joins.  Thus, in their first year of membership, new members may receive up to fifteen (15) days of additional membership beyond the twelve-month membership for which he or she paid. *Second*, AAA SNE provides a grace period during the first fifteen (15) days post-membership expiration.  During that fifteen-day grace period, AAA SNE members whose memberships have expired are provided with free roadside assistance, regardless of whether or not they ever renew.  They are also provided with all of the other privileges and benefits of membership. *Third*, many Class Members who renew "late" during the zero (0) to fifteen (15) day post-membership expiration window may well have not, in fact, renewed late.  They may have mailed their renewals in a timely fashion, but those renewals may not have been received by AAA SNE until several days or more after their membership expiration date.  Moreover, AAA SNE processes mailed-in renewals by hand.  Several additional days may pass before such renewals have been manually processed and entered into AAA SNE's database.

The following tables show the number of Settlement Class Members who will qualify for extended periods of AAA SNE membership as a result of the Settlement, and the aggregate value of this component of the economic consideration to be provided:

### Current AAA SNE Members

| Time Between Expiration Post-Expiration Renewal Date | Number of Members | Approximate Remedy Value | Aggregate Value |
|---|---|---|---|
| 16-45 days | 697,812 | 30 days additional membership $4.26 | $1,346,250 |
| 46 days or more | 162,652 | 60 days additional membership $8.28 | $1,346,250 |
| | 860,464 | **Subtotal** | **$4,316,967** |

### Former  AAA SNE Members

| Time Between Expiration Post-Expiration Renewal Date | Number of Members | Approximate Remedy Value | Aggregate Value |
|---|---|---|---|
| 16-45 days | 241,456 | 30 days additional membership: $3.93 | $949,335 |
| 46 days or more | 100,537 | 60 days additional membership: $7.77 | $781,540 |
| | 341,993 | **Subtotal** | $1,730,875 |
| Waiver of $15 enrollment | 341,993 | $15/former member | $5,129,895 |
| | | **TOTAL VALUE:** | **$11,177,737** |

In total, the economic relief provided directly to Settlement Class Members in the form of additional membership days is in excess of $6 million, and will be offered to more than one million current and former AAA SNE members.

### 2.   Non-Economic Relief

The Class Representative's goal in filing the Complaint was not solely to recover damages on behalf of the Settlement Class Members.  An equally important goal was to obtain clear and specific disclosure of AAA SNE's Renewal Policy.  Through the Settlement, the Parties have agreed on a course of action that achieves that goal.  AAA SNE has agreed to include specific language describing the Renewal Policy in its Member Handbook (or equivalent literature) which is provided to all new members upon enrollment and on its website where the Member Handbook (or equivalent) can be readily found online.  Moreover, AAA SNE will include clarifying language about its Renewal Policy in the first communication mailed to members whose membership has just expired.  AAA SNE will maintain these "curative" disclosures for not less than three (3) years.  These disclosures ensure that AAA SNE is not committing a deceptive trade practice as alleged in the Complaint, and also make clear that AAA SNE has specific contractual authorization to apply the Renewal Policy.  Thus, AAA SNE members going forward will receive specific notice, in unambiguous terms, of AAA SNE's Renewal Policy.

### 3.   Incentive Award

AAA SNE has agreed not to oppose an application to the Court for an Incentive Award to Mr. Held in the amount of $25,000 in recognition of his substantial time, effort, and leadership in directing the course of the litigation, conferring with Class Counsel, reviewing pleadings and briefs, participating in discovery, preparing

for his deposition, testifying at his full day deposition taken by AAA SNE's counsel, and appearing at the Class certification hearing.  Further, AAA SNE has agreed to pay the Incentive Award from its own resources, so that the award will not reduce or erode the benefits conferred upon the Settlement Class.

### 4.   **Attorneys' Fees, Costs, and Expenses**

Pursuant to the Settlement, Class Counsel will move for an award of attorneys' fees, costs, and expenses in the amount of $1.8 million.  AAA SNE has agreed not to oppose, and to pay an award of up to $1.8 million in attorneys' fees, costs, and expenses to Class Counsel in recognition of its energetic and skillful prosecution of the action. AAA SNE will pay the attorneys' fees, costs, and expenses awarded by the Court from its own resources, so that the award will not reduce the benefits conferred upon the Settlement Class.

### 5.   **Considerations Underlying the Settlement**

Mr. Held and D&C have determined that the proposed settlement is fair, reasonable, and adequate, and is in the best interests of the Settlement Class.  That conclusion is based on an investigation into the claims and underlying events and transactions alleged in the Complaint, legal research, evidence obtained in discovery, which was virtually complete before settlement negotiations began, consultations with experts, and arguments made by both Parties relating to the merits of the action. Mr. Held and D&C have a thorough understanding of the case. While they strongly believe that the claims asserted in the Complaint have merit, they also recognize the uncertainties in any litigation.  There is no certainty that the Settlement Class would prevail at trial, despite Mr. Held's and D&C's belief in the strength of their position.

Throughout the litigation, AAA SNE has consistently denied any wrongdoing, and has maintained that its actions were lawful in all respects.  Moreover, AAA SNE's opposition to Class certification raised a number of defenses that, if accepted by the Court or a jury at trial, could limit the extent of a recovery by the Class or prevent any recovery altogether.  Although Mr. Held and D&C believe that AAA SNE's arguments lack merit, their decision to settle the action takes account of the risks that the fact-finders may conclude otherwise.  Additionally, even if Mr. Held and the Settlement Class were to prevail, litigating the case through trial and possible appeal would take a considerable amount of time, perhaps years, in a case that has already been pending since January 2011.

By contrast, the proposed Settlement has none of these drawbacks, and confers substantial and immediate benefits on the Settlement Class.  If the Court approves the proposed Settlement, compensation to Settlement Class Members, and changes in AAA SNE's disclosure language about its Renewal Policy are assured rather than uncertain.  In particular, as noted above, the Settlement provides more than $6 million in direct economic benefits.  Specifically, Settlement Class Members will receive up to sixty (60) days of additional AAA SNE membership - appropriate consideration for a settlement of their claim that they were allegedly wrongly denied a portion of their membership renewal terms.  The Settlement also provides for non-economic consideration:  specific and clear disclosure of AAA SNE's Renewal Policy.  Further, the agreed-upon benefits can be implemented promptly after Final Approval of the Settlement - much more rapidly than if the Parties were to proceed to expert discovery, summary judgment motions, a trial and

possible appeal, and the post-judgment processing of claims that would be necessary for any award of damages in a contested Class action.

In sum, in agreeing to settle the action, Mr. Held and Class Counsel have taken into account the substantial benefits available to the Settlement Class through settlement, the considerable expense and length of time that would likely be necessary to continue to prosecute the claims through trial, post-trial motions, and likely appeals, and the significant uncertainties in predicting the outcome of this litigation. Considering all of these factors, and balancing them against the certain, substantial, and immediate benefits of the Settlement, they have concluded that the Settlement is fair, reasonable, adequate, and superior to the risks and delays associated with further litigation.

### <u>Class Notice and Responses</u>

Pursuant to the Preliminary Approval Order, on April 29, 2013, Epiq Class Action and Claims Solutions ("Epiq"), the Court-approved Class action administrator for this Settlement, received a list from AAA SNE of 2,049,292 Class Members, complete with their last known addresses. Epiq cross-referenced the addresses with addresses found in the National Change of Address cards filed with the U.S. Postal Service to obtain more current addresses where available. Then, on May 13 and May 14, 2013, Epiq mailed the short-form Court-approved Summary Notice to the 2,049,292 Class Members by first Class U.S. mail. As of June 28, 2013, Summary Notices were undeliverable to only 1,789 potential Class Members. *See* Declaration of Christine E. Thelen ("Thelen Decl."), Epiq Project Manager, at ¶¶ 4-6, filed with the Court on July 10, 2013.

The summary notice advised Class Members that the full-length Class Notice

and further information were available on-line on the Settlement website maintained by Epiq, www.MembershipRenewalSettlement.com, or by calling 866-287-3696, a toll-free telephone number monitored by Epiq.  Both the content of the Class Notice and the means of disseminating it to the Class were approved by the Court in its Preliminary Order of Approval issued on April 29, 2013.

Remarkably, only a single member of the Class, out of 2,049,292 potential Class Members (.000049%) objected to the Settlement; as discussed below, this single objection is meritless and cannot derail the overwhelming approval with which the Settlement has been met.

Further, notice was sent to the U.S. Attorney General and appropriate state Attorneys General pursuant to the Class Action Fairness  Act.  No objection was received from any Attorney General or other appropriate governmental agency.

**ARGUMENT**

I.    **THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE.**

A.    **Public Policy Strongly Favors Class action Settlements.**

"Federal courts strongly favor and encourage settlements, particularly in Class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the Class could hope to obtain." *Macedon. Church v. Lancaster Hotel,* LP, Case No. 05-0153 (TLM), 2011 U.S. Dist. LEXIS 62063, at *24 (D. Conn. June 9, 2011).  *In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132, 138 (2d Cir. 1998) ("There is a strong judicial policy in favor of settlements, particularly in the Class action context.") (internal citations omitted).  *See also In re Top Tankers, Inc. Sec. Litig.,* No. 06 Civ. 13761 (CM), 2008

WL 2944620, at *3 (S.D.N.Y. July 31, 2008) ("Courts observe a general policy

favoring the settlement of disputed claims, especially with respect to Class actions.");

*Denney v. Jenkins Gilchrist,* 230 F.R.D. 317, 328 (S.D.N.Y. 2005), *aff'd in part and*

*vacated in part on other grounds,* 443 F. 3d 253 (2nd Cir. 2006).

As the Second Circuit has held, "The settlement of complex Class action

litigations [is] clearly favored by the courts." *Weinberger v. Kendrick,* 698 F.2d 61,

73 (2d Cir. 1982). *See also Denney,* 230 F.RD. at 328 ("The compromise of

complex litigation is encouraged by the courts and favored by public policy.").  While

the decision to approve a Class action settlement is within the sound discretion of the

court, the court should give due regard to the strong public policy favoring

settlement. *See Bourlas v. Davis Law As*socs., 237 F.R.D. 345, 354 (E.D.N.Y. 2006)

(evaluating settlement in light of the "Second Circuit's recognition that public policy

favors the settlement of Class actions").

As the courts within this Circuit have repeatedly explained:

> Class action suits readily lend themselves to compromise because of the
> difficulties of proof, the uncertainties of the outcome, and the typical length of
> the litigation.  There is a strong public interest in quieting any litigation; this is
> particularly true in Class actions.

*Bourlas,* 237 F.R.D. at 355 (quoting *In re Luxottica Group S.p.A. Sec. Litig.,* 233

F.R.D.306, 310 (E.D.N.Y. 2006) (internal citations omitted)).  In sum, "It is well

established that there is an ***overriding public interest*** in settling and quieting

litigation, and this is particularly true in Class actions." *In re Prudential Sec. P'ships*

*Litig.,* 163 F.RD. 200, 209 (S.D.N.Y. 1995) (emphasis added)).

Moreover, "while a court should not give 'rubber stamp approval' to a

proposed settlement, it must 'stop short of the detailed and thorough investigation

that it would undertake if it were actually trying the case.'" *In re Top Tankers,* 2008 WL 2944620, at \*3 (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448,462 (2d Cir. 1974)).   Indeed, "since 'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation,' the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial.'" *Id.* (quoting *Newman v. Stein,* 464 F.2d 689, 691-92 (2d Cir.1972) (citation omitted)).

Here, the proposed Settlement is overwhelmingly fair and supported by the vast majority of Class Members. Accordingly, the Court should grant final approval to the Settlement.

**B.**     **The Settlement Is Procedurally Fair.**

Rule 23 of the Federal Rules of Civil Procedure authorizes the Court to approve a Class action settlement that is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In evaluating a settlement, the Court considers "the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank,* 235 F.2d 78, 85 (2d Cir. 2001).  *Accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *Parker v. Time Warner Ent't Co., LP.,* No. 98-CV-04265 (ILG) (JMA), 2009 WL 1940791, at \*9 (E.D.N.Y. July 6, 2009).

"To decide whether a Class action settlement is procedurally fair, a Court 'must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's length negotiations and that plaintiffs' counsel … possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the Class's interests,'" *Maced. Church,* 2011 U.S. Dist. LEXIS

62063, at *26, *quoting D'Amato,* 236 F.3d at 85.  *See, e.g., Ahlquist v. Bimbo Foods Bakeries Distrib., Inc.*, No. 3:12-cv-1272 (SRU), 2013 U.S. Dist. LEXIS 87919, at *3 (D. Conn. June 24, 2013) ("The Court finds that the proposed settlement is the result of extensive, arms-length negotiations by counsel experienced in employment-related Class actions."). *Accord, Ayzelman  v. Statewide Credit Servs. Corp.,* 242 F.R.D. 23, 26 (E.D.N.Y. 2007) *(*"With regard to procedural fairness, it is well established that the court's inquiry hinges on whether "the settlement was 'achieved through arm's-length negotiations by counsel with the experience and ability to effectively represent the Class's interests.'") (quoting *Becher  v. Long Island Lighting Co.,* 64  Supp. 2d 174, 178 (E.D.N.Y. 1999)).

Indeed, courts apply a "presumption of fairness" when the proposed settlement is "the product of arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Sony SXRD Rear Projection Television Class action Litig.,* No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *5 (S.D.N.Y. May 1, 2008) (quoting *Wal-Mart Stores, Inc.,* 396 F.3d at 116).  *See also In re Top Tankers,* 2008 WL 2944620, at *3 (quoting *In re Veeco Instruments Sec. Litig.,*  No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *17 (S.D.N.Y. Nov. 7, 2007)). "Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement. *In re EVCI Career Colleges Holding Corp. Sec. Litig.,* No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57928, at *12 (S.D.N.Y. July 27, 2007).  "Moreover, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 576 (S.D.N.Y.

2008) (*quoting Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) (internal citation and quotation marks omitted)). *Accord, Maced. Church*, 2011 U.S. Dist. LEXIS 62063, at *30 ("[T]he Court gives weight to the Parties' judgment that the settlement is fair and reasonable, as well as to the Class's favorable reaction to the settlement") (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 118).

There can be no serious debate about whether the Settlement was the result of intensive and hard-fought negotiations.  Settlement negotiations only began after more than two years of strenuous litigation; fact discovery, including review of more than 100,000 pages of documents and depositions of all the key witnesses, was complete; the Second Circuit had denied Defendant's petition for interlocutory review of this Court's decision granting Class certification; and the parties were finalizing sending notice of pendency of the Class action to the Class.

The parties held two in-person, intensive negotiating sessions that took place between experienced, capable counsel, each resolute in zealously advocating and defending their respective client's position.  AAA SNE's General Counsel participated in both of these in-person negotiations, alongside her outside counsel.  Thus, the Settlement is entitled to the presumption of fairness.

Initially, it is undisputed that "[a]ll parties were represented throughout the [s]ettlement negotiations by able counsel experienced in Class actions ...." *In re Telik,* 576 F. Supp. 2d at 576.   As described more fully in the accompanying Carton Affirmation, Denlea & Carton and its attorneys handling the instant action have extensive experience litigating (and settling) consumer Class actions in federal and state courts across the nation.  (Carton Affidavit at ¶ 36).  The individual Denlea &

Carton attorneys with primary responsibility for this action are highly experienced Class action practitioners, fully familiar with all facets of complex commercial litigation, including consumer Class actions.   And AAA SNE's counsel, Seyfarth Shaw LLP and DLA Piper LLP, are prominent national law firms with extensive experience defending consumer Class actions.   The fact that capable counsel on both sides have agreed to the Settlement "strongly militates in favor of approving" it. *In re Telik,* 576 F. Supp. 2d at 576-77 (citing *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (finding that settlement was procedurally fair because the parties were well represented by counsel who "possessed the requisite expertise to negotiate a fair settlement"); I*n re* Sony *SXRD,* 2008 WL 1956267, at *5 (holding that "the quality of attorneys for both sides and the extent of the discovery they undertook demonstrate[d] the procedural  fairness of the Settlement").

Moreover, the negotiations were conducted at arm's length, with Class Counsel vigorously advocating for the interests of the Class.  The negotiations did not even begin until after the Class had been certified, the Second Circuit had denied Defendant's petition for interlocutory review, and fact discovery had been completed. The very advanced stage of litigation which had been reached before settlement discussions began supports judicial deference to the recommendations of counsel. *See Wal-Mart Stores, Inc.*, 396 F.3d at 118; *D'Amato,* 235 F.2d 78.

Counsel met in person and communicated by telephone and email on numerous occasions, exchanging demands and counter-offers based on their respective views of the facts developed in discovery and the legal theories available

to each side.  Once an agreement in principle was reached, counsel negotiated a Term Sheet.  Thereafter, counsel advised the Court that a settlement had been preliminarily reached.  Counsel then negotiated the Settlement Agreement, exchanging several draft settlement agreements and finalizing the precise wording of the Settlement Agreement.  (Carton Aff. at ¶ 42).

Significantly, Class Counsel continually kept Mr. Held informed of the status of the negotiations and requested his advice and, ultimately, his approval.  Moreover, it was only after negotiating all material terms of the Settlement affecting the parties that counsel negotiated the proposed attorneys' fee award and Plaintiff's incentive award.

Further, the single objecting Class member has not challenged the Settlement's procedural fairness; there is no basis to rebut or even question the presumption of procedural fairness.  In sum, the Settlement was the result of vigorous arm's-length negotiations, conducted by Class Counsel in the best interests of the Class.   The Settlement is entitled to a presumption of fairness, and in fact, is procedurally fair in all respects.

C.     **The Settlement Is Substantively Fair.**

The Settlement easily surpasses the test of substantive fairness established by the Second Circuit. The Second Circuit has identified nine factors for the courts to consider in evaluating the substantive fairness of a Class action settlement: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the Class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

(6) the risks of maintaining the Class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement  fund to a possible recovery in light of all the attendant  risks of litigation[.]" *Wal-Mart Stores, Inc.,* 396 F.3d at 117 (citing *Grinnell Corp.,* 495 F.2d at 463).

A court need not find that every factor "weigh[s] in favor of the settlement, but 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Telik,* 575 F. Supp. 2d at 575 (quoting *In re Global Crossing,* 225 F.R.D. at 456).  *Accord In re Top Tankers,* 2008 WL 2944620, at *4. Here, as set forth below, each of these factors weighs heavily in support of the substantive fairness of the Settlement.

**1.    The Complexity, Expense and Likely Duration of the Litigation Supports Approval of the Settlement.**

This Class action litigation involves a number of complex legal and factual questions.  Some are inherent in the Class's claims; many others were injected into the case by AAA SNE in discovery and in its opposition to Class certification, and would undoubtedly become focal points at the summary judgment stage and at trial. These issues include:

- The correct interpretation of the privileges and conditions of membership in the AAA SNE.

- Whether AAA SNE adequately disclosed its membership renewal policy.

- Whether AAA SNE's alleged disclosure is ineffective because it is not prominently displayed.

- Whether AAA SNE's alleged failure to disclose its membership renewal policy

is a deceptive consumer-oriented practice prohibited by CUTPA and the substantially similar unfair and deceptive trade practice statutes of Massachusetts and Rhode Island.

- Whether AAA SNE breached its membership contract or was unjustly enriched when it allegedly granted less than twelve (12) months of prospective membership privileges in exchange for a full annual fee.

- Whether the Class Members are entitled to damages. AAA SNE's witnesses have asserted that AAA SNE members did not suffer any harm because their memberships continued between their expiration date and subsequent "late renewal" and therefore, they were entitled to the privileges and benefits of membership during that time period.

- Whether the voluntary payment doctrine precludes multiple recoveries (or any recovery) on the part of each Class member.

- Whether the Class Members' damages should be offset by the value of any membership benefits they received during the period post-expiration and prior to renewal.

The complexity of the case (as well as its uncertainty, *see infra)* would be compounded by the need to present expert testimony as to damages to the jury. That, combined with the need to resolve the disputed meaning of the contract between AAA SNE and its members, would increase the complexity, expense, and duration of the litigation.

In addition, both parties expressed their intentions to file motions for summary judgment prior to trial. If not for the Settlement, the need to research, brief, and develop factual submissions on summary judgment would undoubtedly increase the expense, complexity, and duration of the litigation. In this case, as in many others, the Settlement will save the parties the time and money that would otherwise be expended "conducting expert discovery, litigating a motion for summary judgment, preparing for trial, conducting the trial itself, filing post-trial motions, and pursuing any appeals that would vastly exceed the substantial time and money already spent." *In*

*re Telik,* 576 F. Supp. 2d at 577 (internal citation omitted).  Indeed, even if the Class were to prevail at trial, a judgment against AAA SNE would likely be appealed. Judging by its opposition to Plaintiff's Class certification motion, AAA SNE would undoubtedly have left no stone unturned in seeking to oppose and minimize any judgment in favor of the Class.  "Not only would Plaintiffs spend substantial sums in litigating this case through trial and appeals, it could be years before Class Members saw any recovery, if at all."  *In re Sony SXRD*, 2008 WL 1956267, at *6.  *See also Ayzelman,* 242 F.R.D. at 27 (explaining that even if plaintiffs survived pretrial motion practice "and were able to establish defendants' liability at trial, there is always the potential for an appeal, which would inevitably produce delay").

In sum, the Settlement not only provides concrete and valuable benefits to the Class Members, but also avoids the expense and delay of further litigation. It will "grant relief to all Class Members without subjecting them to the risks, complexity, duration and expense of continuing litigation."  *In re AOL Time Warner, Inc. Sec. & ERISA Litig.,* No.02 Civ. 5575, 2006 U.S. Dist LEXIS 78101, at *24 (S.D.N.Y. Sept 28, 2006) (report and recommendation) (quoting *In re Global Crossing,* 225 F.R.D. at 456-57), *adopted by* 2006 U.S. Dist. LEXIS 77926 (S.D.N.Y. Oct. 25, 2006). Accordingly, this factor weighs strongly in favor of the Settlement.

**2.    The Reaction of the Class to the
        Settlement Is Overwhelmingly Favorable.**

"It is well-settled that the reaction of the Class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."' *Maley,* 186 F. Supp. 2d at 362 (citing *In re Am. Bank Note Holographics, Inc. Sec. Litig.,* 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)).  "The favorable reaction of the Class is strong

evidence that the Settlement is fair, reasonable, and adequate."  *Id. See also Alquist v. Bimbo Foods*, 2013 U.S. Dist. LEXIS 87919, at *4 ("Among other considerations, the Court finds that the positive response of the Class supports approval of the settlement."), *citing Maley*, 186 F. Supp.2d at 362-363.  *In re PaineWebber Ltd. P'ships Litig.,* 171 F.RD. 104, 126 (S.D.N.Y. 1997) (citations omitted).  Moreover, the silence of a majority of Class Members supports the fairness of the Settlement.   See *In re Am. Bank Note Holographics,* 127 F. Supp. 2d at 425 (lack of objections "may well evidence the fairness of the Settlement").

Here, the reaction of the Class has been overwhelmingly positive.  Only 166 requests for exclusion were received by the close of business on July 8, 2013 by Epiq, the claims administrator.  Thelen Decl. at ¶15.  One of those opt out persons also voiced objection to the Settlement, but because he has opted out of the Class, he no longer has standing to lodge an objection.

As this Court noted in *Maced. Church,* "It is well-established that a settlement can be fair notwithstanding a large number of objections."  2011 U.S. Dist. LEXIS 62063, at * 33.  Inevitably, in virtually every significant Class action settlement, some Class Members file purported objections to the Settlement.  Remarkably, in the instant Class action, just *one Class Member* has objected to the Settlement – one out of more than 2,049,292 Class Members to whom the Summary Notice was mailed by U.S. first Class mail. Statistically, this single objector represents a needle in a haystack, and is so insignificant in number as to represent just .000049% of the Class.  As courts have explained, "[t]he small number of objections necessarily must be evaluated relative to the size of this Class of over 1.0 million members.  In

litigation involving a large Class it would be 'extremely unusual' not to encounter objections." *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 478 (S.D.N.Y. 1998) (internal quotation marks and citation omitted). These infinitesimally small numbers of objectors and opt outs offer substantial additional support for the Settlement.  As courts have observed:

> [A] certain number of objections are to be expected in a Class action with an extensive notice campaign and a potentially large number of Class Members.  If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.

*In re Visa Check/Mastermoney Antitrust Litig.,* 297 Supp. 2d 503, 511 (E.D.N.Y. 2003) (citation omitted).   *Accord Wal-Mart Stores, Inc.,* 396 F.3d at 118 (finding 18 objections out of 5 million Class Members was evidence of "overwhelming approval"); *D'Amato,* 236 F.3d at 86-87 (affirming settlement where only 18 of 27,883 Class Members objected); *McBean v. City of New York,* 233 F.R.D. 377, 386 (S.D.N.Y. 2006) (holding that Class reaction supported settlement where four of 40,352 objected).

The single objection to the Settlement here is far too insignificant to weigh against final approval.  In addition, the objection is meritless, as addressed in Section VI, *infra.*

**3.**     **The State of the Proceedings and the Amount of Discovery Completed.**

In evaluating a settlement, courts consider the progress made in the litigation prior to the settlement. *Grinnell,* 495 F.2d at 463.  "This factor relates to whether the plaintiffs had sufficient information on the merits of the case to enter into a settlement ...." *Parker,* 2009 WL 1940791, at *13 (citing *Cinelli v. MCS Claim Servs., Inc.,* 236

F.R.D. 118, 121 (E.D.N.Y. 2006)).  The crucial question is "whether the parties have a thorough understanding of their case[.]"  *McBean,* 233 F.RD. at 386 (citation omitted).

The parties need not even have taken substantial discovery, so long as "they have investigated the facts sufficiently to permit an 'intelligent appraisal of [the] case.'" *In re Top Tankers,* 2008 WL 2944620, at *7 (citing *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000)).  *See also In re Sony SXRD,* 2008 WL 1956267, at *7 (no requirement of formal discovery). Moreover, courts give additional deference to Class action settlements that are negotiated *after* Class certification. *See D'Amato,* 236 F.3d at 85 (explaining that settlements negotiated before Class certification are "subject to a higher degree of scrutiny" by the courts); *McBean,* 233 F.R.D. 377 (citation omitted).

The Settlement easily surpasses these standards.  Settlement negotiations did not begin until long after the close of extensive fact discovery, including production by AAA SNE of more than 100,000 pages of documents, the exchange of interrogatories, and the depositions of the Plaintiff and five key employees of AAA SNE; after the Court had certified the Class; after the Second Circuit denied AAA SNE's petition for interlocutory appeal under Rule 23(f); after the Court denied AAA SNE's motion to reopen fact discovery; and after the parties and the Court addressed a plan for disseminating notice of pendency to the Class and other case management issues.  (Carton Aff. ¶ 34).

By February 2013, when the parties agreed to begin settlement negotiations, they had conducted extensive fact discovery, with only limited expert discovery as to

damages remaining, and the parties were actively working with their experts to develop their analyses and reports. Accordingly, Mr. Held and Class Counsel had a stranglehold on the facts of the case, the applicable law, and the strengths and weaknesses of each party's position. As a result, this factor weighs overwhelmingly in support of approving the Settlement.

### 4, 5, & 6. Litigation Risks

In evaluating a Class action settlement, "the Court should balance the benefits afforded to the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *In re Top Tankers,* 2008 WL 2944620, at *4 (emphasis in original) (citing *Grinnell,* 495 F.2d at 463). *See also Parker,* 2009 WL 1940791, at *13. The relevant risks include those relating to establishing liability, establishing damages, and maintaining the Class through final judgment and appeal.

a.  *Liability Risk*

Even in cases where establishing liability appears to be a near certainty, the courts recognize the inherent risks of submitting any claim to a jury. *See, e.g., McBean,* 233 F.RD. at 387 (noting that "there are no guarantees in life, and while it appears likely that plaintiffs would be able to establish liability at trial, things change"). Here, while Class Counsel and Mr. Held are confident that their position is correct, there is no assurance that a jury would agree. There are simply too many variables that could affect the outcome of a trial to provide any guarantee of establishing AAA SNE's liability.

AAA SNE's opposition to Class certification previewed several arguments that it would undoubtedly renew at summary judgment and trial. Foremost among these was the assertion that AAA SNE adequately disclosed its membership renewal policy

because renewal notices sent to members requesting that they renew their memberships, as well as the enclosed new membership cards, state the renewal date for continued membership, which is one year from the current expiration date. AAA SNE also argued that its membership materials, available in the Member Handbook and on the AAA SNE website, adequately described the renewal policy. There is no guarantee that a jury would agree with the Class on this crucial issue of liability.  It is well settled that an alleged ambiguity in contract documents can give rise to "substantial uncertainty" in Class litigation.  See *Banyai v. Mazur,* 00 Civ. 9806, 2008 WL 5110912, at *4 (S.D.N.Y. Dec. 2, 2008).

Moreover, the inquiry is not limited to a scholarly parsing of the contract language; it also encompasses the practical realities of trial practice.  As the Court observed in *In re Sony SXRD:*

> Plaintiffs face the more practical risks of uncertain witness testimony, the strength of [Defendant's] expert testimony against Plaintiffs' own expert's testimony, and a jury's unfavorable determinations  of fact should this case survive to the trial stage.  All of these risks make the fairness of the settlement all the more evident.

2008 WL 1956267, at *8.  AAA SNE also likely would have attacked, at summary judgment and trial, the elements of the alleged unfair or deceptive practices act claim, and the unjust enrichment claim.  Taking these risks into account, the certain benefits of the Settlement are preferable to the risks of a trial.

    b. *Damages Risk*

Proving the Class Members' right to damages and non-monetary relief would entail considerable risk.  Although Class Counsel and Mr. Held believe the mathematical calculation of damages is straightforward, AAA SNE would argue that

the Class Members were not harmed at all as a result of its Renewal Policy. Specifically, AAA SNE would claim that its members are interested in the continuity of membership its renewal policy provides.  Moreover, AAA SNE would note that it provides all the privileges and benefits of membership during the 90-day period post-expiration, including providing free roadside service in the first 15 days post-expiration even if the member never renews.  There is no assurance that a jury would have rejected AAA SNE's reasoning.

Additionally, AAA SNE undoubtedly would have renewed its "voluntary payment doctrine" argument in an attempt to defeat the claims of the Class Members who renewed their membership late, year after year, while receiving renewal notices and membership cards that continued to maintain the same, consistent renewal date, year after year.  Further, AAA SNE would probably seek to offset the Class Members' damages for any services or benefits they used during the period post-expiration. In light of AAA SNE's arguments, there is no assurance that the Class would prevail on its damages theory or recover anywhere near the benefits provided by the Settlement.

Finally, the Settlement provides for prospective relief, including AAA SNE's adoption of revised disclosures of its Renewal Policy in membership materials, on the AAA SNE website, and in the first letter members receive post-expiration requesting that they renew their memberships.  It is not merely a "risk" but a certainty that this relief could not be obtained as the result of a trial.  *See Banyai,* 2008 WL 5110912, at *4 (noting, as a component of the risk involved, that continued litigation could not have brought about the benefits obtained by settlement).

c. *Risk of Maintaining the Class*

The Court certified the Class in September 2012, and the Second Circuit rejected Defendant's petition for interlocutory review under Rule 23(f).  Thus, the likelihood that the Class would be maintained through trial was high.  But AAA SNE advanced several arguments against Class certification before the trial court and in the Second Circuit and Defendant still had the right to move to decertify the Class at any point should circumstances or the law change.  So some risk on the Class certification front remained.  *See, e.g., Maced. Church*, 2011 U.S. Dist. LEXIS 62063, at *30-31, quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 119 n.24 ("decertification is always possible as a case progresses and additional facts are developed").  In short, it is only the Settlement, and not the prospect of continued litigation, that offers the certainty of relief for AAA SNE Class Members and complete repose for AAA SNE.

### 7.   The Defendant's Ability to Withstand a Greater Judgment

AAA SNE is a not-for-profit corporation which provides a wide array of services, including road side assistance, driver's education, and travel guides, to its members, while promoting driver safety and improved highway conditions.  AAA SNE may be able to withstand a judgment requiring it to provide more than $6 million of extended membership terms and up to $5 million in waived new enrollment fees.  But in the circumstances, particularly given AAA SNE's not-for-profit status, "this is not a significant factor."  *See Ayzelman,* 242 F.R.D. at 28.  Where the other *Grinnell* factors weigh in favor of approval, "this factor alone does not suggest the settlement is unfair."  *D'Amato,* 236 F.3d at 86.  "The fact that a defendant is able to pay more

tha[n] it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate." *Parker,* 2009 WL1940791, at *14 (quoting *In re PaineWebber,* 171 F.RD. at 129). It is well established that "a defendant is not required to 'empty its coffers' before a settlement can be found adequate." *In re Sony SXRD,* 2008 WL1956267, at *8 (citing *McBean,* 233 F.R.D. at 388).

### 8 & 9.    The Range of Reasonableness

A Class action settlement need not bring about a utopian solution to the wrongdoing alleged in the complaint. Class Members need not receive 100 cents on the dollar for their injuries. To the contrary, "[t]here is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in ... any litigation." *Wal-Mart Stores, Inc.,* 396 F.3d at 96 (quoting *Newman,* 464 F.2d at 693). "The final two *Grinnell* factors require that this Court determine whether the instant settlement falls within this 'range of reasonableness.'" *McBean,* 233 F.R.D. at 388. The eighth factor considers the reasonableness of the Settlement compared with the best possible recovery; the ninth considers the reasonableness of the Settlement in light of all the risks of proceeding with the litigation. *Grinnell,* 95 F.2d at 463. Applying these factors to the Settlement in this case provides ample support for final approval. The Settlement is not only reasonable, but superior, to any realistic outcome at trial. *First,* the Settlement provides relief to consumers residing in three different states, including more than $6 million in direct financial relief. *Second,* the revisions to AAA SNE's disclosures about its renewal policy could not have been forced on AAA SNE at trial.

The sole purported Class member who objects to the Settlement is Mr. Joseph Levy of Cambridge, Massachusetts.[4] He says he objects "because I believe AAA SNE has done nothing wrong.  I find it perfectly acceptable that AAA SNE counted a membership renewal from the expiration date of the previous membership, regardless of when I actually paid for or requested the renewal.  I believe I received reasonable notification of the renewal date."  Mr. Levy adds: "Actual members of the Class, even those who disagree with me and believe the Settlement is warranted, will receive no significant benefit from the Settlement."

With all due respect to Mr. Levy, his objection is meritless, and should not stand in the way of the final approval of the Settlement.  The fact that Mr. Levy personally finds AAA SNE's membership renewal policy to be "perfectly acceptable" does not address the alleged inadequacies of AAA SNE's *disclosure* (or lack thereof) of this policy to AAA SNE members.  The appropriate inquiry is whether a reasonable consumer would find AAA SNE's disclosures or non-disclosure of the renewal policy to be misleading or inadequate.  Indeed, under CUTPA and the substantially similar unfair trade practice laws of Rhode Island and Massachusetts, a "reasonable man" standard is used.  *See, e.g., Caldor, Inc. v. Heslin*, 215 Conn. 590, 577 A.2d 1009 (1990) (an act or practice is deceptive where there is a representation, omission or other practice likely to mislead consumers; consumers must interpret the message reasonably under the circumstances; and the misleading representation, omission, or practice must be material). The Settlement resolves this alleged problem for all Class Members by making crystal clear in various membership materials how the renewal

---

[4] The objection of Mr. Joseph Levy, dated May 22, 2013, was filed with the Court on May 28, 2013 (Doc. 97).

policy works when a member renews late.  Consumers going forward necessarily will not be confused or misled about AAA SNE's renewal policy.

Mr. Levy's assertion that Class Members will receive "no significant benefit from the Settlement" is simply incorrect.  This Class action lawsuit is about late-renewing Class Members allegedly being deprived of a full twelve (12) months of prospective membership when they renew.  The Settlement provides more than one million Class Members with either thirty (30) or sixty (60) days of additional membership upon their next renewal of their AAA SNE memberships, and offers Class Members who are former AAA SNE members the same thirty (30) or sixty (60) days of additional membership if they rejoin the AAA SNE, and further, waives the standard new enrollment fee of $15 ($5 for Associate members) who rejoin pursuant to the Settlement.  The economic value of the Settlement to Class Members exceeds $6 million.

Finally, Mr. Levy's objection to the proposed payment of $1.8 million in attorneys' fees and expenses is similarly baseless.  Class counsel have vigorously litigated this action for more than two years without any compensation or reimbursement of expenses before achieving this excellent settlement on behalf of the Class.  AAA SNE has agreed not to oppose the proposed $1.8 million payment, and that payment will not detract in any way from the substantial economic and non-economic benefits the Settlement provides to the Class.

Notwithstanding the excellent benefits the Settlement provides to the Class, the Settlement is, of course, a negotiated compromise.  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of

itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Maley,* 186 F. Supp. 2d at 366 (quoting *Grinnell,* 495 F.2d at 455). Indeed, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount a hundredth or even a thousandth part of a single percent of the potential recovery." Id. (citing *Grinnell,* 495 F.2d at 455 n.2). See also *id.* (citing *In re Gulf Oil/Cities Serv. Tender Offer Litig.,* 142 F.R.D. 588, 590 (S.D.N.Y.1992) (approving settlement providing for $0.48 of each potential $30.00 recovery).

Here, the Settlement easily falls within the range of reasonableness. The benefits to the Class Members are not just reasonable, they are excellent. Additionally, the Settlement is reasonable in light of the risks of proceeding to trial. "The enormous risks of litigation are why settlement is frequently preferred.  Settling avoids delay as well as uncertain outcome at summary judgment, trial and on appeal." *Maley,* 186 F. Supp. 2d at 366. Here, as in *Maley* and hundreds of other cases, "[t]he legal and factual difficulties inherent  in this case, as described above, coupled with the unpredictability  of a lengthy and complex trial, and the appellate process that would follow, with the risk of reversal, make the fairness of this substantial settlement readily apparent." *Id.*

The Settlement far surpasses the test of procedural and substantive fairness. The Settlement is the product of extensive arm's-length negotiation between capable and experienced counsel, who had ample information to evaluate the case and represent the best interests of the Class.  Moreover, the Settlement passes the *Grinnell* test with flying colors.  "Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to

recovery for the Class." *In re Prudential,* 163 F.RD. at 210.

## II.   CLASS CERTIFICATION

The Settlement Class was certified for preliminary approval by Order of the Court dated April 29, 2013.  Previously, on September 12, 2012, the Court had certified a litigation Class.  Defendant unsuccessfully petitioned the Second Circuit to review the Court's September 12, 2012 Class certification order, and the Second Circuit denied that petition on January 30, 2013.  While AAA SNE continues to believe that it had valid arguments against certification, there is presently no basis to depart from the Court's September 12, 2012 ruling finding that the Class readily meets the requirements for Class certification under Rule 23 of the Federal Rules of Civil Procedure.

## III.   THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS' FEES TO BE PAID BY AAA SNE TO CLASS COUNSEL.

### A.   <u>Class Counsel Are Entitled To Compensation.</u>

For more than a century, the Supreme Court has held that "where an attorney succeeds in creating a common fund from which members of a Class are compensated for a common injury," the attorney is entitled to a reasonable fee. *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 47 (2d Cir. 2000) (citing *Trustees v. Greenough,* 105 U.S. 527 (1881); *Boeing* Co. *v. Van Gemert,* 444 U.S. 472 (1980)). *See also Mills v. Electric Auto Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing counsel's right to compensation for obtaining *a* common benefit on behalf of the Class); *Hall v. Cole,* 412 U.S. 1 (1973).  "An attorney whose work creates a common fund is 'entitled to a reasonable fee…taken from the fund.'" *In re Publ'n Paper Antitrust Litig.*, Docket No. 3:04 MD 1631, 2009 U.S. Dist. LEXIS 6654,

at *21 (D. Conn. Jul. 30, 2009); *Steiner v. Williams,* No. 99 CIV 101186(JSM), 2001

WL 604035, at *1 (S.D.N.Y. May 31, 2001) ("The equitable fund doctrine provides

that a court may award fees to attorneys who have created a common fund or

conferred some other substantial benefit on a Class of plaintiffs.").

Awarding Class counsel fees "serves the salutary purpose of encouraging

counsel to pursue meritorious claims on behalf of a Class of individuals who could

not afford to litigate their individual claims." *Steiner,* 2001 WL 604035, at *1 (citation

omitted). "Courts have also recognized that, in addition to providing just

compensation, awards of attorneys' fees from a common fund serve to encourage

skilled counsel to represent those who seek redress for damages inflicted on entire

Classes of persons, and to discourage future misconduct of a similar nature." *In re*

*Telik,* 576 F. Supp. 2d at 585 (citing *Maley,* 186 F. Supp. 2d at 369).

In economic terms, "[t]he attorney fee award is the compensation for the *effort*

expended to benefit the Class.  Counsel will not undertake actions of this nature

unless they can receive adequate compensation for (i) their time, (ii) the risk of not

prevailing, (iii) the delay in receipt of fees, [and] (iv) the investment (money as well as

time) that must be made in a case." Stuart T. Rossman & Charles Delbaum,

*Consumer Class actions* § 15.2.1 (6th ed. 2006).  Indeed, the contingency fee

awarded to Class counsel must be greater than the fees that the same attorneys

would charge their clients in non-contingency cases.  As Judge Posner has

explained:

> A contingent fee must be higher than a fee for the same legal
> services paid as they are performed.  The contingent fee
> compensates the lawyer not only for the legal services he
> renders but for the loan of those services.  The interest rate on

> such a loan is high because the risk of default (the loss of the
> case, which cancels the debt of the client to the lawyer) is so
> much higher than that of conventional loans.

Richard Posner, *Economic Analysis of Law* § 21.9 (2d ed. 1984).  Federal courts

have adopted similar reasoning in approving fee awards for Class counsel.  *See*

*Banyai,* 2008 WL 5110912, at *4 ("A lawyer whose compensation is contingent on

services can be expected to receive more than she would receive if she were

charging an hourly rate.") (citations omitted); *Parker,* 2009 WL 1940791, at *25.

As set forth more fully below, district courts in the Second Circuit are permitted

to award attorneys' fees to prevailing Class counsel using either of two methods:  the

preferred "percentage method" or the "lodestar/multiplier method."  Under either

method, Class Counsel's proposed $1,800,000 award for fees and expenses merits

approval.  Class Counsel has expended significant and substantial time vigorously

litigating the Class claims for more than two years against fierce opposition by AAA

SNE.  Prior to initiating suit, Class Counsel investigated AAA SNE's membership

renewal policy, developed a theory of the case to vindicate consumers' rights, and

spent more than two years prosecuting the action, until Class Counsel were able to

negotiate the highly favorable settlement, as described above.  The requested fee is

appropriate in light of the time, effort, and risk incurred, and the results achieved by

Class Counsel, and it falls well within the range of Class counsel fees approved in

comparable cases using either method.  Indeed, the fee is the equivalent of just 16%

of the total economic benefit of the Settlement, or taking the most conservative view

possible, 30% of the more than  $6 million in direct compensation provided to the

Class (or just 23% if the $1.8 million in fees and expenses is added to the $6 million

in direct compensation summing to a $7.8 million common fund). Moreover, AAA

SNE has agreed to pay Class Counsel's fee from its own resources, so the fee will

not diminish or erode any of the benefits provided to the Class Members.

**B.      The Second Circuit Has Approved Both the Percentage Method and
the Lodestar Method, but the Percentage Method is Preferred.**

Courts have developed two distinct methods for awarding attorneys' fees in

successful Class actions: the percentage method and the lodestar/multiplier method.

*Maley,* 186 F. Supp. 2d at 369. A court applying the percentage method "sets some

percentage of the recovery as a fee." *Goldberger,* 209 F.3d at 47 (citation omitted). In

doing so, the court considers six factors:

> (1)      the time and labor expended by counsel;
>
> (2)      the magnitude and complexity of the litigation;
>
> (3)      the risk of the litigation;
>
> (4)      the quality of representation;
>
> (5)      the requested fee in relation to the settlement; and
>
> (6)      public policy considerations.

*Goldberger,* 209 F.3d at 50 (internal citations and quotation marks omitted). *Accord*

*In re Nortel Networks Corp. Sec. Litig.,* 539 F.3d 129, 134 (2d Cir. 2008) ("In

determining reasonable attorneys' fees in common fund cases, a district court should

be guided by the six *Goldberger* factors."); *Wal-Mart Stores, Inc.,* 396 F.3d at 121

(same).

Courts consider the same factors in applying the "lodestar" method, but the

analysis is more elaborate and the courts' experience with the lodestar method has

proved "vexing." *Goldberger,* 209 F.3d at 48. First, the court must derive the

"lodestar" figure by multiplying the attorney's hourly rate by the hours reasonably spent on the case. *Id.* at 47. Next, the court may "increase the lodestar by applying a multiplier based on other less objective factors," such as the *Goldberger* factors listed above. *Id.*

The Second Circuit has held that a district court may use either method. *Goldberger,* 209 F.3d at 50. However, the Second Circuit disfavors the lodestar method because it "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart,* 396 F.3d at 122 (internal citation omitted); *see also In re AOL Time Warner, Inc.,* 2006 U.S. Dist. LEXIS 78101, at *24 (noting that "every significant Southern District opinion facing the issue since *Goldberger* has embraced the percentage approach"). The percentage method is considered preferable "because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition." *Hicks v. Stanley,* No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (citation omitted).

Accordingly, the clear trend in the Second Circuit favors the percentage method because it "directly aligns the interests of the Class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc.,* 396 F.3d at 121 (internal citation omitted). *Accord Maced. Church,* 2011 U.S. Dist. LEXIS 62063, at *35 ("using the percentage-of-recovery method…is consistent with the 'trend in this Circuit.'") (quoting *Wal-Mart*

*Stores, Inc.*, 396 F.3d at 121).  In sum, the percentage method is preferred because it "reward[s] results rather than hours spent." *Farinella v. PayPal, Inc.,* 611 F. Supp. 2d 250, 269 (E.D.N.Y. 2009).  By contrast, the lodestar method has been criticized for "promot[ing] inefficiency and impos[ing] unnecessary burdens on the court." *Breiterman v. Roper Corp.,* No. 88 CIV. 2138(JMC), 1990 WL15535 (S.D.N.Y. Jan. 12, 1990).

Here, the fee requested on behalf of Class Counsel is clearly justified under the percentage method.  Indeed, it is toward the low end of percentage fees approved in previous cases.  The fee is also justified under the lodestar/multiplier method, based on the time reasonably incurred by Class Counsel and a multiplier that falls well within the range approved by courts in this Circuit.

## C.   AAA SNE Will Pay Class Counsel's Fees At No Cost to the Class

Before applying either method, it is important to recognize that AAA SNE has agreed to pay Class Counsel's fees from its own resources.  As a result, the fee award will have no impact whatsoever on the benefit afforded to the Class Members. The Federal Rules of Civil Procedure expressly authorize the court to "award reasonable attorney's fees and nontaxable costs that are authorized by law *or by the parties' agreement.*" Fed. R Civ. P. 23(h) (emphasis added).  When the settling defendant agrees to pay Class counsel's fees from its corporate treasury, independent of the benefit obtained for the Class, "the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and Class Members." *McBean,* 233 F.RD. at 392.

Here, AAA SNE has agreed to pay Class Counsel's fees and expenses in an

amount not to exceed $1,800,000.  As a result, the fee award will not diminish or
erode the benefits provided to the Class Members.  "Thus regardless of the size of
the fee award, Class Members ...  will receive the same benefit; the fee award does
not reduce the recovery to the Class.  Under these circumstances, the danger of
conflicts of interest between attorneys and Class Members is diminished."  *In re
Sony SXRD,* 2008 WL 1956267, at *15.  Thus, courts routinely have approved the
payment of Class counsel fee awards by the defendant, rather than the Class
Members. *See Steinberg v. Nationwide Mut. Ins. Co.,* 612 F. Supp. 2d 219, 224
(E.D.N.Y. 2009) (noting "with approval that the fee award will not be drawn from the
common fund but will be paid directly by [defendant].  In this regard, the fee award,
however substantial, will have no effect on the monetary relief afforded to Class
Members."); *Cavalieri v. General Elec. Co.,* No. 06cv315(GLS/DRH), 2009 WL
2426001, at *3 (same).

Moreover, courts give considerable deference to fee agreements negotiated
at arm's length by the parties, especially when the fee is to be paid by the defendant
rather than the prevailing Class Members.  That is particularly true when the parties
agreed on the material settlement terms affecting the parties before negotiating the
fee award.   Here, counsel did not negotiate concerning an award of fees to Class
Counsel until after agreement was reached on all material terms affecting the Class
Members and AAA SNE.  (Carton Aff. at ¶ 47.)  *See also* Part IV.D.2.e, *infra.*
Moreover, the agreed amount of attorneys' fees was negotiated by sophisticated
counsel familiar with complex Class action litigation.  There is no need for judicial
intervention to simulate the workings of a free market for counsel's services.  Rather,

a free market was in full force, as experienced counsel negotiated at arm's length to arrive at a proposed fee award that is appropriate, and that AAA SNE is willing to pay.  See *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving "substantial weight to a negotiated fee amount"); *In re Apple Computer, Inc. Deriv. Litig., No.* C 06-4128  JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement"); *Cohn v. Nelson,* 375 Supp. 2d 844, 861 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys'  fees and expenses, courts give the parties' agreement substantial deference.") (citation omitted).

The Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues as the ideal toward which litigants should strive.  In *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983), the Supreme Court stated:  "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."  *See also M. Berenson* Co. *v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 829 (D. Mass. 1987) (noting that in Class actions, "ideally the parties will settle the amount of the fee between themselves").

Here, the fee arrangement was negotiated at arm's length, by experienced counsel, and AAA SNE agreed to pay Class Counsel's fees and expenses from its own resources.  Judicial deference to the parties' agreement is warranted in this case.

**D.**   **The Requested Fee Is Justified Under the Percentage Method.**

Class Counsel seeks the Court's approval of attorneys' fees and expenses in the aggregate amount of $1,800,000 as compensation for its zealous and skillful

prosecution of the action, the outstanding result achieved, and the risk incurred in litigating the case without any assurance of payment.  The requested fee represents a mere 16% of the total Settlement value of more than $11 million and 30% of the value of the more than $6 million worth of extended membership  terms provided to aggrieved Class Members.   Using either figure, the fee award is toward the low end of the spectrum of fee awards that courts have approved under the percentage method.

### 1.   The Full Value of the Settlement Should Be Considered.

In evaluating Class counsel fees, courts do not limit their analysis to the immediate cash value of the settlement obtained for the Class.  Instead, courts evaluate fee proposals in light of the total benefit obtained, including the prospective value of changes in corporate policy.  For example, a recent settlement required General Electric to pay $10.15 million to Class Members and implement an additional $30 million worth of "structural changes" in the administration of its pension funds.  The court approved attorneys' fees of $10 million, to be paid by General Electric to Class counsel, and expressly based that decision on the entire $40.15 million settlement package. *See Cavalieri v. Gen. Elec.* Co., No. 06cv315 (GLS/DRH), 2009 WL 2426001, at *4 (N.D.N.Y. Aug. 6, 2009).  *Accord Bezio v. Gen. Elec. Co.,* No. 06cv381 (GLS/DRH), 2009 WL 2426003, at *4 (N.D.N.Y. Aug. 6, 2009).[5]

Similarly, in a Class action that forced the government to adjust the method for

---

[5]     If the Court had limited its analysis to the $10.15 million cash outlay, the requested $10 million fee would have equaled 98.5% of the common fund.  It is unlikely that a fee representing such a large percentage would have won approval.  However, considering the $10 million fee as 24.9% of the total value of the settlement, the fee was well within the range approved in other cases.

awarding Medicare benefits, the Court approved attorneys' fees based on the settlement's anticipated future value to Medicare recipients. *Cosgrove v. Sullivan,* 759 F. Supp. 166 (S.D.N.Y. 1991). The Court noted that in cases against both corporate and governmental defendants, "it is not unusual in common fund cases to have the amount of the fund fluid or unfixed." *Id.* at 168. *See also McBean,* 233 F.R.D. at 392-393 (basing 18% award on projected value of future payments to Class Members, despite absence of discrete "common fund"); *Parker,* 2009 WL 1940791, at *21 (basing percentage award on total settlement value); *Williams v. National* Sec. *Ins. Co.,* 237 F.R.D. 685, 697 (M.D. Ala. 2006) (basing fee award on present *and future* benefits to Class of insurance policy holders); *Ingram,* 200 F.RD. at 695, n.11 (N.D. Ga. 2001) (noting that "[w]hile attorneys' fees constitute 20% of current cash payments, the fee percentage becomes much smaller as additional, future relief to the Class is factored in"); *Hanrahan v. Britt,* 174 F.R.D. 356, 369 (E.D. Pa. 1997) (approving fee based on the entire settlement, including stipulated changes in defendants' business practices).

Here, in addition to more than $6 million in immediate benefits to AAA SNE members allegedly damaged by the inadequate disclosure of the membership renewal policy from 2005 to 2013, the Settlement requires AAA SNE to provide clear, Court-approved disclosures about its membership renewal policy in the Member Handbook (or equivalent literature) provided to all new AAA SNE members, to provide those clear disclosures on the AAA SNE website, and to provide disclosure in the first letter sent to AAA SNE members following their expiration date. These policies are to remain in effect for a minimum of three years (and common sense

suggests that AAA SNE will have no incentive to change back those disclosures in the future).  As discussed *supra*, these improved disclosures are a benefit that the Class could not have obtained at trial; these clear disclosures constitute a specific and concrete benefit of the Settlement that should prevent AAA SNE members from any confusion as to how the renewal policy works with respect to memberships that are renewed within 90 days of expiration.

### 2.    The Fee Award Is Supported by the *Goldberger* Factors.

Whether viewed as 16% of the total Settlement value or 30% of the extended membership benefits provided to the Class Members, the fee award being sought is at the low end of the spectrum of fee awards repeatedly approved by the courts of this Circuit, many of which range from 25% to 33.3% of the settlement value.  *See* Part IV.D.2.e, *infra.* Moreover, the requested fee is eminently reasonable in light of the quality of the representation, the risk incurred by Class Counsel, and the other *Goldberger*  factors.

a. *The Time and Labor Expended by Counsel*

The time and labor expended by Class Counsel in this action are set forth in detail in the Carton Affirmation and attached exhibits.  In general, Class Counsel devoted nearly 1,800 hours over a period of two and one-half years to prosecuting the action.  Class Counsel conducted an extensive investigation of the issues involved in this case, including analyzing the terms of AAA SNE membership and those of other AAA regional affiliate clubs, reviewed AAA SNE's disclosures about its renewal policy and compared them with the disclosures made by other AAA regional affiliate clubs, and consulted with an expert regarding the injuries to consumers

resulting from AAA SNE's alleged inadequate disclosure of its membership renewal policy and the Class Members' potential damages.  Class Counsel engaged in extensive and complete fact discovery: producing documents and interrogatory responses responsive to AAA SNE's discovery requests; preparing Mr. Held for his deposition; defending Mr. Held in a full day deposition conducted by AAA SNE's counsel; reviewing more than 100,000 pages of documents produced by AAA SNE; reviewing AAA SNE's interrogatory responses and negotiating for supplemental responses and then reviewing same; deposing five key employees of AAA SNE, including deposing AAA SNE's Senior Vice President, Marketing, for three separate full days; briefing and then successfully moving for Class certification following a lengthy Court hearing on the motion; briefing and successfully opposing AAA SNE's motion to stay proceedings pending appellate review of its petition for interlocutory review of the Class certification order by the Second Circuit; and briefing and successfully opposing AAA SNE's petition for interlocutory review under Rule 23(f). Class Counsel also engaged in vigorous and sometimes contentious arm's-length negotiations with AAA SNE's counsel, and reached agreement on all material terms of the Settlement before negotiating the proposed fee award.

Significantly, D&C is a small firm comprised of six (6) attorneys.  The Meiselman, Denlea, Packman, Carton & Eberz P.C. firm ("Meiselman Denlea"), with which Class Counsel were affiliated prior to the formation of D&C in late 2012, was also a relatively small firm with under twenty (20) attorneys.  (Carton Aff. at ¶ 49).  As a result, the time spent on this action in the hope of eventually obtaining a substantial verdict or settlement for the Class, and a fee for Class Counsel, was a significant

commitment of the firms' resources. *Id.* While D&C (and Messrs. Carton and Berg while at Meiselman Denlea) carefully screens its Class action contingency matters to enhance its likelihood of success, there was absolutely no assurance that the extraordinary commitment of time and effort devoted to this action would result in the payment of any fee at all. *Id.* Moreover, the action was leanly staffed and efficiently managed, with two attorneys, Mr. Carton and Mr. Berg, accounting for the majority of time devoted to the case. *Id.* Class Counsel should be amply compensated for the substantial time and labor invested to obtain this outstanding Settlement on behalf of the Class.

> b. *The Magnitude and Complexity of the Litigation*

The magnitude and complexity of this action support the fee award sought by Class Counsel. The Class itself is quite large, comprising more than two million current and former AAA SNE members.  In dollar terms, moreover, the magnitude of the litigation is likewise substantial. AAA SNE members allegedly have lost millions of dollars as a result of AAA SNE's inadequate disclosure of its membership renewal policy; the Settlement substantially addresses this issue by providing more than $6 million in extended membership benefits to the Class Members, as well as a substantial clarification in AAA SNE's disclosures of its post-expiration renewal policy. By any measure, the magnitude of the case is substantial, fully justifies Class Counsel's investment of time and labor, and fully merits the requested fee award.

In addition, the litigation involved a number of complex legal and factual issues, many of them raised by AAA SNE as substantive defenses or grounds to deny Class certification. As described above, these include the interpretation of the contract

between AAA SNE and its members, the damages incurred by the Class Members, and AAA SNE's voluntary payment defense. Moreover, AAA SNE injected several additional layers of complexity through its no-holds-barred defense strategy.

The magnitude and complexity of this action were even greater because of several challenging issues that arose when Mr. Held moved for Class certification. It is widely recognized that Class certification can be the single most crucial juncture in a Class action. If certification is granted, settlement negotiations often follow in short order. If certification is denied, the case is over. Well aware of this dynamic, AAA SNE's experienced Class action defense team pulled out all the stops to try to prevent the Court from certifying the Class. Class Counsel were forced to rebut each of AAA SNE's arguments in order to prevail on the motion for Class certification:

- AAA SNE argued that no common questions of law and fact existed, precluding Class certification.

- AAA SNE challenged the "typicality" of Mr. Held's claims based on the purportedly unique circumstances of his multiple instances of late membership renewal, his susceptibility to the "voluntary payment" defense, and among other things, AAA SNE asserted that Mr. Held was aware of the renewal policy before his renewal transactions because of his prior involvement, while a practicing attorney at Meiselman Denlea, in the *Costco* Class action litigation.

- AAA SNE challenged Mr. Held's credibility (and thus his adequacy as a Class representative), citing his prior involvement in the *Costco* Class action litigation.

- AAA SNE argued that any common questions did not predominate over individual questions. For example, AAA SNE asserted that causation and injury were individualized questions, since a Class Member who was aware of the renewal policy would not have been injured as a result of AAA SNE's non-disclosure or inadequate disclosure.

- AAA SNE argued that the application of the voluntary payment doctrine required individual inquiries into each Class Member's circumstances.  AAA SNE also argued that because of the myriad different ways members can learn about AAA SNE's renewal policy – e.g., the Member Handbook, website, calls to customer service representatives, and conversations with customer service representatives at AAA SNE branches – individual inquiries are required to determine what each member knew about the renewal policy.

- AAA SNE argued that individual inquiries were required to determine each member's use of any of the benefits or privileges of AAA SNE membership during the period post-expiration of membership and prior to membership renewal on the ground that such usage would mitigate or eliminate the Class Members' damages.

- AAA SNE asserted that a Class action was not a superior method of adjudicating this action, in light of what it called the "fact specific nature of plaintiff's claims."

***Mr. Held and Class Counsel prevailed on each and every* one *of these issues.  But these issues added immeasurably to the magnitude, complexity, and risk of the litigation, and should be taken into account in setting Class Counsel's fee.***

If not for the Settlement, the need to research, brief, and develop factual submissions on summary judgment—which both parties advised the Court they intended to submit—would have increased the expense, complexity, and duration of the litigation.  Assuming that Plaintiff's claims survived AAA SNE's dispositive motion, moreover, trial preparation would have required countless hours of additional work, including preparing fact and expert witnesses, identifying exhibits, preparing proposed jury instructions, preparing *in limine* motions, and preparing cross-examination outlines.  The jury trial itself would consume significant judicial resources—likely lasting more than one week—and would engender additional

motion practice (including evidentiary motions and any dispositive motions filed during or at the close of trial). Further, as described above, an appeal would have added to the complexity of the litigation. This is especially likely in view of the experience of defense counsel in litigating consumer Class actions. *See In re Brown Co. Sec. Litig.,* 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (prestige of opposing counsel highlights complexity of litigation and challenges faced by Class counsel). The magnitude and complexity of the litigation weigh heavily in favor of the requested fee award.

    c.  *The Risk of the Litigation*

The Second Circuit has recognized that the risk involved in prosecuting a Class action is an important consideration in determining an appropriate fee award. *See, e.g., Grinnell,* 495 F.2d at 470. *See also In re Prudential,* 985 F. Supp. at 41. This factor is intended to recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys that prosecute them, and it embodies an assumption that contingency work is entitled to greater compensation than non-contingency work.

The risks of a Class action should not be viewed in retrospect, from the standpoint of a settlement, but as it existed at the outset of the litigation. In bringing this action, Class Counsel faced substantial litigation risks: the risk of not obtaining Class certification (or having the Class subsequently decertified); the risk of not prevailing on the merits; and the risk of not establishing damages on behalf of the Class. In light of similar uncertainties, courts have observed that "[l]ittle about litigation is risk-free, and Class actions confront even more substantial risks than other forms of litigation." *In re Top Tankers,* 2008 WL 2944620, at *15 (quoting

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.,* No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004)); *see also In re Am. Bank Note Holographics,* 127 F. Supp.2d at 432-433 (concluding that it is "appropriate to take this [contingent fee] risk into account in determining the appropriate to award").

Viewed from the outset of the litigation, Class Counsel faced weighty litigation risks, including the risk of not prevailing on Class certification, summary judgment, trial, or appeal. The specific risks, as summarized above, include those associated with proving that AAA SNE's renewal policy was deceptive and establishing damages.

In addition, the litigation risks increased exponentially when Mr. Held moved for Class certification. Unlike settlements reached prior to Class certification, this action was subjected to the substantial risk of Class certification being denied, which would have effectively terminated the litigation. As set forth in the previous section, the Class certification motion involved consideration of numerous thorny legal and factual questions, any one of which could have proved fatal if resolved in AAA SNE's favor.

Of course, Class Counsel received no compensation while incurring the risks of the litigation. Moreover, there was no way to know whether Class Counsel would ever be compensated for its substantial commitment to this action. In fact, the case law is littered with unsuccessful Class actions that provided no relief to the putative Class and no fee for Class counsel.[6] Class Counsel incurred 100% of the risk,

---

[6]     In numerous class actions, counsel were awarded no fee despite investing thousands of hours in the litigation. *See, e.g., In re Apollo Group, Inc.* Sec. *Litig.,* No. 04-2147, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (setting aside jury verdict of $277 million based on insufficient evidence); *In re JDS Uniphase Corp. Sec. Litig.,* No. 02-1486, slip op.

devoting their time and labor to identifying AAA SNE's alleged wrongdoing, evaluating AAA SNE's potential liability, analyzing potential legal theories, drafting the complaint, engaging in several rounds of document discovery, interrogatories, and depositions, moving for Class certification, replying to AAA SNE's  extensive brief in opposition, working with experts to develop an analysis of the Class Members' damages, and negotiating the Settlement.   Throughout, there was no assurance of success or compensation. The requested fee award is entirely reasonable in light of the risks incurred by Class Counsel.

> d.    *The Quality of Representation*

The quality of Class Counsel's representation is reflected in the reputation and the experience of the attorneys principally involved in this case; and above all, the manner in which they prosecuted this case from the pleadings, through discovery and Class certification, to the settlement negotiations  and the instant motion for final approval. The Settlement negotiated with AAA SNE is a highly favorable outcome for the Class, and is the direct result of the creativity, diligence, hard work, and skill brought to bear by Class Counsel at every stage of the proceedings. Moreover, this result was achieved without the assistance of any governmental enforcement action. Throughout the litigation, moreover, Class Counsel put the best interests of the Class ahead of their own, negotiating the most favorable settlement terms possible before turning to the question of attorneys' fees, and then negotiating a fee to be paid by AAA SNE, rather than the Class, and which in no way diminishes or erodes the

---

(N.D. Cal. Nov. 27, 2007); *Robbins  v. Koger Props.,* 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million and entering judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.,* F.3d 1215 (10th Cir. 1996) (overturning verdict in favor of plaintiff class based on subsequent  change in law).

benefits received by Class Members.   Class Counsel's exemplary prosecution of

this Class action weighs strongly in favor of the proposed fee award.

  e.   T*he Requested Fee in Relation to the Settlement*

   Numerous decisions establish that in common fund cases (which this case is

not), Courts in this Circuit have frequently concluded that 33 1/3% is typical for fee

awards in Class actions. *See Maced. Church*, 2011 U.S. Dist. LEXIS 62063, at *35

("Class Counsel's request for 33-1/3% of the Settlement Fund is typical in Class

action settlements in the Second Circuit.") (citing *Gilliam v. Addicts Rehabilitation Ctr.*

*Fund*, 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *8 (S.D.N.Y. Mar. 24,

2008)); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 06 Civ. 4270

(PAC), 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009) (noting that a

request for one-third of the Settlement Fund is "typical in Class action settlements in

the Second Circuit" and collecting cases); *Strougo ex rel. Brazilian Equity Fund, Inc.*

*v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (33% approved); *In re Blech*

*Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2002 U.S. Dist. LEXIS 23170, at *5 (S.D.N.Y.

Dec. 4, 2002) (33 1/3% of settlement fund approved for attorneys' fees, plus costs);

*Adair v. Bristol Technology Sys.,* No. 97 Civ. 5874, 1999 U.S. Dist. LEXIS 17627, at

*8-9 (S.D.N.Y. Nov. 16, 1999) (33% of settlement fund approved for attorneys' fees,

plus costs); *Cohen v. Apache Corp.,* No. 89 Civ. 0076 (PNL), 1993 U.S. Dist. LEXIS

5211, at *1 (S.D.N.Y.  Apr. 21, 1993) (33 1/3% of settlement fund approved for

attorneys' fees); *Eltman v. Grandma Lee's Inc.,* 1986 WL 53400, at *9 (E.D.N.Y. May

28, 1986) (slightly less than 30%); *In re New York City Mun. Sec. Litig.,* 1984 WL

2411, at *2 (S.D.N.Y. March 28, 1984) (almost 33%); *In re Franklin Nat'l Bank* Sec.

*Litig.*, [1980 Transfer Binder] Fed. Sec. L Rep. (CCH) ¶97,571 at 97,988 (E.D.N.Y. June 24, 1980) (34%); *In re Emerson S'holder Litig.,* 1992 U.S. Dist. LEXIS 20934 (E.D.N.Y. April 16, 1992) (37.08%); *Greene v. Emersons Ltd.,* 1987 WL 11558 (S.D.N.Y. May 20, 1987) (46.2%).  See *also In re Telik,* 576 F. Supp. 2d at 587, n.8 (citing *In re Crayfish* Co. *Sec. Litig.,* No. 00 6766, slip op. at 7 (S.D.N.Y. July 28, 2004) (awarding 30% of $9 million settlement, plus expenses)); *Hicks,* 2005 WL 27257792, at *9 (awarding 30% of $10 million settlement, plus expenditures); *In re Plug Power, Inc.* Sec. *Litig.,* No. 00-5553,  slip op. at 7 (E.D.N.Y. Apr. 29, 2005) (awarding  30% of $5 million  settlement, plus expenses); *Schnall v. Annuity & Life Re (Holdings), Ltd.,* No. 02-2133, slip op. at 8 (D. Conn. Jan. 21, 2005) (awarding 33 1/3% of $16.5 million settlement, plus expenses); *RMED Int'l, Inc. v. Sloan's Supermarkets,  Inc.,* No. 94 Civ 5587(PKL), 2003 WL 21136726, at *2 (S.D.N.Y. May 15, 2003) (awarding 33 1/3% of $975,000 settlement plus expenses); *Maley,* 186  F. Supp. 2d at 367-68 (33 1/3% of $1.25 million settlement); *In re APA Teleservices Inc. Sec. Litig.,* No. 97 Civ. 9145, at *2 (S.D.N.Y. Dec. 10, 2001) (33 1/3% of $21 million settlement); *Adair v. Bristol Tech. Sys., Inc.,* No. 97 Civ. 1037878, at *3 (S.D.N.Y. Nov. 16, 1999) (33% of $975,000 settlement)).  *See also In re Telik,* 576 F. Supp. at 587-88 (citing numerous Class action fee awards in excess of 25% from other jurisdictions across the United States).

The same is true of the fee requested here.  The $1,800,000 award for fees and expenses that Class Counsel has requested, and that AAA SNE has agreed to pay, is a substantially lower percentage of the value of the settlement than many of the foregoing authorities. That is true whether the Court bases the calculation on the

$6 million in immediate benefits or the full $11 million value of the Settlement.

      f.    *Public Policy Considerations*

The Settlement provides substantial benefits to the public as well as the individual AAA SNE members who will receive direct financial benefits. First and foremost, the Settlement serves public policy - as embodied in state consumer fraud statues and the common law of contract- by compensating consumers and requiring AAA SNE to fully and completely disclose its membership renewal policy. AAA SNE's clarifying disclosure of its renewal policy is obviously in the public interest. The disclosure agreed upon by the parties through the Settlement not only eliminates the alleged confusion that gave rise to this Class action, but will empower consumers to make a fully informed judgment as to whether the benefits of membership are worth the annual fee should they renew their memberships late within the first ninety (90) days after their memberships expire. Class Counsel deserve substantial credit for bringing about these benefits to the public, as well as obtaining direct financial redress for aggrieved Class Members.

*   *   *

Taking into account all the *Goldberger* factors, the $1,800,000 award to Class Counsel comprises a reasonable percentage of the benefit bestowed on the Class, and it should be approved.

**E.    The Fee Is Justified Under the Lodestar/Multiplier Method**

Despite its criticism of the lodestar method, the Second Circuit has advised that it remains potentially useful as a "cross-check" against the percentage method. *Goldberger,* 209 F.3d at 50. "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized." *Id.* (citation

omitted). "The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case." *In re Xeel Energy, Inc.,* Sec., *Deriv.* & *"ERISA" Litig.,* 364 F. Supp. 2d 980, 999 (D. Minn. Apr. 8, 2005). The lodestar method is a two-step process. First, the court determines the lodestar by multiplying the number of hours each attorney spent on the case by the attorney's reasonable hourly rate. Second, the court adjusts the lodestar by applying a multiplier to reflect the 'the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Global Crossing,* 225 F.RD. at 467-68 (citing *Goldberger,* 209 F.3d at 47; *Savoie v. Merchants Bank,* 166 F.3d 456,460 (2d. Cir. 1999)). *See also Maley,* 186 F. Supp. 2d at 370 (explaining that the lodestar "is typically enhanced by a multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work") (citation omitted).

The fee requested in this case is more than justified under the lodestar method. Class Counsel reasonably devoted nearly 1,800 hours to this action, including time spent researching the facts and the law, drafting the complaint, conducting document and interrogatory discovery, taking and defending depositions, motion practice including, most notably, successfully moving for Class certification, negotiating the settlement, and responding to Class Members' inquiries. Applying Class Counsel's typical hourly rates ($525 to $575),[7] which are reasonable and well

---

[7] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds. *Missouri v. Jenkins,* 491 U.S. 274, 284 (1989). See *also In re Union Carbide Corp. Consumer Prods. Bus.* Sec. *Litig.,* 724 F. Supp. 160, 163 64 (S.D.N.Y. 1989) (citing cases); *In re NASDAQ Market-Makers,* 187 F.RD. at 489, n.25.

within the range typically charged by similarly well qualified counsel in the District of Connecticut and the Southern District of New York, yields a lodestar of $1,004,966.25. (Carton Aff. ¶ 59.)  Class Counsel's contingency risk, the quality of representation, the outstanding result achieved, and other relevant factors support the application of a modest 1.8 multiplier to confirm that the requested $1,800,000 award (inclusive of $38,603.76 in disbursements) is reasonable and should be approved.  *(Id.)*

There is no question that Class Counsel's time was spent efficiently.  *(Id.* at ¶ 59.)  Moreover, the hourly rates charged by Class Counsel are reasonable, indeed modest, by comparison with other firms in the Southern District, where Class Counsel's offices are located. *See also Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.,* No. 76 Civ. 2125, 2005 U.S. Dist LEXIS 5200, at *35 (S.D.N.Y. Mar. 31, 2005) (observing that "a recent billing survey made by the National Law Journal shows that senior partners in New York City charge as much as $750 per hour and junior partners charge as much as $490 per hour") (citing In Focus:  Billing; A Firm-by-Firm Sampling of Billing Rates Nationwide, Nat'l Law Journal, at 22 (Dec. 6, 2004).

Comparing the lodestar with the requested fee of $1,761,396.30 ($1,800,000 less $38,603.76 in expenses) yields a multiplier of 1.75. That multiplier is unquestionably within the range of multipliers found reasonable by courts in this Circuit, and is fully justified in light of the effort undertaken by Class Counsel, the recovery achieved, and risks involved.  "In recent years, multipliers of between 3 and 4.5 have become common." *In re NASDAQ Market-Makers,* 187 F.RD. at 489

(approving 3.97 multiplier).  *See also Wal-Mart Stores, Inc.,* 396 F.3d at 123

(affirming 3.5 multiplier); *In re Telik,* 576 F. Supp. 2d at 590 ("In contingent litigation,

lodestar multiples of over 4 are routinely awarded by courts, including this Court.")

(citations omitted).  *See also In re Doral Fin. Corp. Sec. Litig.,* No. 05-1706 (S.D.N.Y.

July 1, 2007) (awarding multiplier of 10.26 on $130 million settlement); *Maley,* 186 F.

Supp. 2d at 371 (4.65 multiplier); *Newman v. Carabiner Inn, Inc.,* No. 99 Civ. 2271

(S.D.N.Y. Oct  19, 2001) (7.7 multiplier); *Roberts v. Texaco, Inc.,* 979 F.Supp. at 197

(5.5 multiplier); *In re RJR Nabisco Sec. Litig.,* (S.D.N.Y. Aug. 24,1992) (6.0

multiplier); *Cosgrove,*  n.1 (8.94 multiplier); *Rabin v. Concord Assets Group, Inc.,* No.

89 Civ. 6130 (LBS), 1991 WL 275757, at *1-2 (S.D.N.Y. Dec. 19, 1991) (applying

multiplier of 4.4); *In re Xcel Energy,* 364 F. Supp. 2d at 999 (awarding 25% of $80

million settlement, resulting in multiplier of 4.7); *DiGiacomo v. Plains All Am. Pipeline,*

2001 WL 34633373, at *10-11 (S.D. Fla. Dec. 19, 2001) (awarding percentage fee

that resulted in multiplier of 5.3); *In re Charter* Comms., *Inc. Sec. Litig.,* No. MDL

1506, 2005 WL 4045741, at *18 (E.D. Mo. 2005) (approving 20% fee yielding 5.61

lodestar multiplier as "within the range of multipliers found reasonable for cross-

check purposes") (citations  omitted); 1 Alba Conte, *Attorney Fee Awards* § 2.06, at

39 (2d ed.1993) ("When a large common fund has been recovered and the hours are

relatively small, some courts reach a reasonable fee determination based on large

multiples of 5 or 10 times the lodestar.").

      In one recent case, the district court approved a 20% fee award and, using the

lodestar method as a cross-check approved a multiplier of approximately 8.3.  *New*

*England Carpenters Health Benefits Fund v. First DataBank, Inc.,* C.A. No. 05-11148-

PBS, 2009 WL 2408560, at *2.  In reaching that decision, the court relied heavily on counsel's success in "the contentious battle over Class certification."  *Id.*

In sum, the 1.8 multiplier sought here is reasonable and within the range approved in past cases.  Moreover, as many courts have held, "the lodestar cross-check does not trump the court's primary reliance on the percentage of common fund method." *In re Xcel Energy,* 364 F. Supp. 2d at 999 (citations omitted).  *Accord Chemi v. Champion Mortgage,* No. 2:05-cv-1238 (WHW), 2009 WL 1470429, at *12 (D.N.J. May 26, 2009).  That is particularly true here, as AAA SNE will pay Class Counsel's fees and the multiplier is well within the range of those approved by the courts in the past.

## F.   The Reaction of the Class Is Overwhelmingly Favorable.

Courts give "great weight" to the reaction by members of the Class to a Class action settlement. *Maley,* 186 F. Supp. 2d at 374 (citation omitted).  Here, the Class Notice approved by the Court informed the Class Members that Class Counsel would seek court approval of fees and expenses in an amount up to $1,800,000, and that AAA SNE had agreed to pay such fees and expenses separate and apart from the relief provided to the Class.  The summary Class Notice was mailed by first Class U.S. Mail to 2,049,292 Class Members (with 1,789 remaining undeliverable as of June 28, 2013).  Only a single Class Member, Mr. Levy, objected to Class Counsel's fee request.  Moreover, Mr. Levy referred to no applicable legal standards to support his objection to the fee request.  Simply because he personally did not find AAA SNE's renewal policy misleading or inappropriate and because he wrongly believes that the Settlement does not provide any value to Class Members, he "object[s]

vehemently" to Class Counsel's request to get paid. As such, his objection is meritless, and should have no bearing on the Settlement's approval or Class Counsel's request for attorneys' fees and expenses.

## IV.    INCENTIVE AWARDS

Class Counsel respectfully requests that the Court approve the payment of an incentive award of $25,000 to Mr. Held in recognition of his substantial efforts on behalf of the Class.   Pursuant to the Settlement Agreement, AAA SNE has agreed to pay this award using its own resources, which means this payment will not reduce the benefits provided to the Class Members.   The requested payment is well deserved and falls well within the range of incentive awards approved in prior cases.

As this Court held in *Maced. Church*, 2011 U.S. Dist. LEXIS 62063, at *34, "[t]he amount of the service compensation for Class Representatives 'is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit.'" Quoting *Mentor v. Imperial Parking Sys.*, 05 Civ. 7993 (WHP), 2010 U.S. Dist. LEXIS 132831, at *6 (S.D.N.Y. Dec. 15, 2010) (approving incentive awards of $50,000 each to the four representative plaintiffs). "An incentive award is meant to compensate the named plaintiff for any personal risk incurred ... or any additional effort expended ... for the benefit of the lawsuit." *Dornberger,* 203 F.R.D. at 124 (citation omitted); *accord Spann v. AOL Time Warner, Inc.,* No. 02 Civ. 8238DLC, 2005 WL1330937, at *8 (June 7, 2005).  "Numerous courts have recognized that named plaintiffs in Class actions are entitled to individual awards as compensation for their time and effort in asserting the interests of the Class, meeting discovery and other litigation responsibilities, and working with

counsel to advance the interests of the Class." *Feerer v. Amoco Prod. Co.,* No. 95-0012 JCIWWD, 1998 U.S. Dist. LEXIS 22248, at *45 (D.N.M. May 28, 1998) (citations omitted) (approving awards up to $20,000). *See also Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in Class action cases and are within the discretion of the court.") (citation omitted).

In determining an appropriate incentive award, courts typically consider the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself *or* herself to the prosecution of the claim, and, of course, the ultimate recovery. *Roberts,* 979 F. Supp. at 200. Mr. Held, a non-practicing attorney and businessman, shouldered considerable burdens in representing the Class. He reviewed, and discussed with Class Counsel, the pleadings, discovery demands, discovery responses, and memoranda of law on Class certification. He shared his knowledge of the facts, including his renewal transactions, and his understanding of AAA SNE's membership contract and its disclosures of its renewal policy. He met with Class Counsel to prepare for his deposition, was deposed (and endured highly aggressive questioning by AAA SNE's counsel), and reviewed his deposition transcript. Mr. Held personally attended the Court hearing on his Class certification motion to demonstrate his unwavering support for the prosecution of the action. He conferred with Class Counsel regarding the settlement negotiations, at all

times encouraging D&C to obtain the best possible result for the absent Class

Members. *See Dornberger,* 203 F.RD. at 124-25 (approving $10,000 incentive award

for representative who communicated regularly with counsel and was deposed);

*Roberts,* 979 F. Supp. at 187-188 (approving incentive award for plaintiff who

"provided valuable assistance to counsel in prosecuting the litigation").

In the process, AAA SNE's counsel opposed Class certification by attacking

the veracity, credibility, and consistency of Mr. Held's testimony; accused him of

bringing this action alleging a deceptive practice despite his purported prior

knowledge of AAA SNE's  renewal policy and because he was familiar with purported

"backdating" generally because of his involvement, when he was practicing law, in

the *Costco* Class action. These attacks imposed an additional burden on Mr. Held,

not only because he had to cooperate with Class Counsel to refute AAA SNE's

attacks, but also because Mr. Held, an attorney and officer of the Court, was

challenged in these proceedings. This provides further justification for the requested

incentive award.

Finally, Mr. Held's efforts were essential in obtaining an extraordinary victory

for the Class. In the circumstances, a $25,000 incentive award, to be paid by AAA

SNE, is entirely reasonable. *See In re Publ'n Paper Antitrust Litig.,* Docket No. 3:04

MD 1631 (SRU), 2009 U.S. Dist. LEXIS 66654, at 21-22 (D. Conn. Jul. 30, 2009)

(approving $20,000 incentive award to be distributed to Class representatives); *In re*

*Aquila ERISA Litig.,* No. 04-00865-CV-DW, 2007 WL 4244994, at *3 (W.D. Mo. Nov.

29, 2007) (approving $25,000  incentive award to one representative plaintiff and

$5,000 to others in connection with $10.5 million settlement because "[w]ithout their

participation, there would have been no case and no settlement"); *RMED Int'l,* 2003 WL 21136726, at * 2 (approving $25,000 incentive award because "the named plaintiff was intimately involved in the litigation throughout its pendency); *Dornberger,* 203 F.RD. at 125 (approving $10,000 incentive award as "small" compared with $13 million recovery); *McBean,* 233 F.R.D. at 391 (approving incentive awards ranging from $25,000 to $30,000 as "fall[ing] solidly in the middle range" of those approved "across a variety of Class actions") (citation omitted); *Fears v. Wilhelmina Modeling Agency, Inc.,* No. 02 Civ. 491(HB), 2005 WL 1041134, at *3 (S.D.N.Y. May 5, 2005) (approving $25,000 incentive awards for each named plaintiff who was deposed), *vacated on other grounds sub nom. Masters v. Wilhelmina Modeling Agency, Inc.,* 473 F.3d 423 (2d Cir. 2007); *Spann,* 2005 WL 1330937, at *9 (approving $10,000 incentive award in connection with $2.9 million settlement). *See also Sheppard v. Consolidated Edison* Co. *of N.Y.,* No. 94-CV-0403 (JG), 2002 WL 2003206, at *6 (E.D.N.Y. Aug. 1, 2002) (approving incentive awards from $8,333 to $29,167, in reliance on prior cases approving awards as high as $303,000, with most awards ranging from $10,000 to $50,000).

## V. THE SINGLE OBJECTION IS BASELESS AND DOES NOT JUSTIFY SCUTTLING A FAIR AND REASONABLE SETTLEMENT NEGOTIATED AT ARM'S LENGTH

As demonstrated above, only one (1) of the more than two million Class Members has objected to the Settlement- a microscopic .000049% of the Class. That single naysayer is far too few to veto a Settlement that substantially benefits millions of current and future AAA SNE members, and that brings litigation repose to AAA SNE. Moreover, the objection is groundless.

Mr. Levy "object[s] vehemently to the proposed payment of up to $1,800,000 in attorneys' fees to the plaintiffs lawyers." He complains that AAA SNE has done nothing wrong and that Class Members will receive no significant benefit from the Settlement. As explained above, Mr. Levy is simply incorrect, and his objection to both the Settlement and to the attorneys' fees is unsupported by any analysis. The fee request is amply justified as a percentage of the value of the Settlement or under the lodestar method, and in light of all the *Goldberger* factors. Mr. Levy makes no effort to demonstrate the contrary. The Court should not permit Mr. Levy to hold up the Settlement (including the award of attorneys' fees and expenses).

## CONCLUSION

For all the foregoing reasons, Plaintiff Lindsay Held, the Class, and Class Counsel respectfully request that the Court should grant final approval of the Settlement; enter the accompanying proposed Final Approval Order; and approve the requested attorneys' fees and incentive awards to be paid by AAA SNE.

Dated:    White Plains, New York
         July 24, 2013

Respectfully submitted,


s/  Jeffrey I. Carton
Jeffrey I. Carton
Robert J. Berg
DENLEA & CARTON LLP
One North Broadway, Suite 509
White Plains, New York  10601
Telephone: (914) 920-7400
Facsimile: (914) 761-1900
jcarton@denleacarton.com
rberg@denleacarton.com

*Class Counsel and Attorneys for
Plaintiff Lindsay Held*